UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLOR KINETICS INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>TIR SYSTEMS LTD,<br><br>Defendant. | Civil Action No. 1:03-cv-12491-MEL |

## TIR SYSTEMS LTD.'S FIRST MOTON TO COMPEL

### INTRODUCTION

TIR Systems Ltd. ("TIR") hereby moves for an order compelling plaintiff Color Kinetics Incorporated ("CK") to provide full and complete responses to certain document requests it served on June 27, 2005, as well as one of the interrogatories also served on that date. Those document requests, among other things, requested production of documents concerning the conception and reduction to practice of the alleged inventions claimed in the various patents-in-suit, as well as documents concerning CK products allegedly embodying the patent claims. The interrogatory in question asked CK to detail its conception and reduction to practice dates. The documents requested, and the interrogatory posed, are undeniably relevant to the issues of the validity of the patents-in-suit and damages. CK has, however, refused discovery without justification, forcing TIR to bring this motion to compel.

## BACKGROUND[1]

CK has brought this patent infringement suit alleging that TIR infringes claims of four CK patents through sales of an LED lighting system called the ColorWash. There are four named inventors on the four patents-in-suit, all of whom are still employed by CK. CK has stated in its Complaint and in interrogatory responses that it seeks injunctive relief, as well as compensatory damages in the form of reasonable royalties and/or lost profits. TIR has answered CK's complaint by, among other things, pleading affirmative defenses and counterclaims of non-infringement and invalidity of the patents-in-suit.

## DISCOVERY REQUESTS

### 1.    CONCEPTION/REDUCTION TO PRACTICE

TIR served its first set of document requests and interrogatories on June 27, 2005 (Exhibits A and B attached hereto). TIR's Interrogatory No. 1, and Document Request Nos. 2, 5, and 11, sought information and documents concerning the conception and reduction to practice of the alleged inventions in CK's four patents-in-suit:

> **Interrogatory No. 1**
>
> With regard to the subject matter disclosed and claimed in the Patents-in-Suit, please provide all facts concerning the inventors' conception and reduction to practice of the alleged invention. For each asserted patent, Color Kinetics' response should include the date and location of the first conception of the alleged invention for each claim of the patent, the date and location of the events leading to the first written representation or documentation of the alleged invention of each claim of the patent, the date and location of the first disclosure to any other person of the alleged invention of each claim of the patent by any of the named inventors (and the identity of each person to which such disclosure was made), the date and location of the first reduction to practice of the alleged invention of each claim of the patent, the date(s) and location(s) of the first public demonstration, disclosure, sale, offer for sale or other commercialization of the alleged invention of each claim of the patent, the date(s), location(s), and circumstances concerning any alleged experimental use of the alleged invention of each claim of the

---

[1] The factual statements in this brief are made on representation of the undersigned counsel. In the event that CK disputes the asserted facts or objects to their submission without an affidavit, TIR will request leave to submit an affidavit from counsel supporting the factual statements contained in this motion.

patent, and the identity of all documents concerning, and all person(s) knowledgeable of, this requested information.

**Document Request No. 2**

With respect to the subject matter of each claim of the Patents-in-Suit, all documents and things concerning:

   a. any aspect of its conception and reduction to practice;
   b. diligence toward its reduction to practice;
   c. its actual reduction to practice, including samples of the physical manifestation of any actual reduction to practice;
   d. its first documentation or other written representation;
   e. its first disclosure to any person not employed by or counsel to Color Kinetics;
   f. its first public demonstration, disclosure, sale, offer for sale or other commercialization;
   g. any alleged experimental use of the subject matter of each of the Patents-in-Suit; and the identity of each person who has knowledge relating to the documents responsive to parts (a) through (g) preceding.

**Document Request No. 5**

All documents and things concerning the research, development, testing, analysis and/or evaluation of the subject matter described and claimed in the Patents-in-Suit, including but not limited to laboratory notebooks, research reports, development proposals, project approvals, and research agreements.

**Document Request No. 11**

All documents and things from the files of the named inventors of any of the Patents-in-Suit relating to the subject matter disclosed in any of the Patents-in-Suit or any Counterparts (in whole or in part) to any of the Patents-in-Suit, including but not limited to personal files and the files of non-inventors who inherited the files of any inventor no longer employed by Color Kinetics.

In response to Interrogatory No. 1, CK has not claimed *any* prior conception or reduction to practice dates, instead claiming that it is entitled to wait for more detailed invalidity responses from TIR before deciding if it will "seek to rely on an earlier date of conception" than the filing dates of the patents-in-suit. (CK's Responses to TIR's First Set of Document Requests and Interrogatories are attached hereto as Exhibits C and D respectively). In response to TIR's requests for clarification of its Interrogatory response regarding dates for conception and

reduction to practice, CK's counsel stated in a letter that "we are not currently planning to rely on an earlier invention date [than the date of the applications leading to the patents-in-suit]." (See Sept. 8, 2005 letter from Aaron Moore to Michael Oblon, attached hereto as Exhibit E).

CK's responses to TIR's document requests contained objections to Request Nos. 2, 5 and 11, but also stated that responsive, non-privileged[2] documents would be produced. Even though CK has produced documents, none have been produced that would appear to be responsive to Request Nos. 2, 5 and 11. CK has produced no documents evidencing any work performed or thoughts recorded that might give rise to four independent patents with dozens of claims. No notebooks, notes, research reports or memoranda from the named inventors have been produced. Indeed, there is no indication that any documents whatsoever from the files of the named inventors have been produced. CK's counsel has indicated that CK will continue to look for documents relating to conception and reduction to practice, but nearly two years after bringing this litigation, CK should be required to produce them now or be barred from doing so at some unspecified, later date.

### 2.   COLOR KINETICS PRODUCTS

TIR document request Nos. 24-27, 42, 43 and 45 seek documents relating to Color Kinetics Products. TIR sought such documents because they are relevant at a minimum to issues of claim construction, invalidity and damages.

**Document Request No. 24**

All documents and things concerning the design, development, construction, manufacture, operation, performance, use, demonstration, sale, or offer for sale of any current or former Color Kinetics Product.

---

[2] CK has not provided a Privilege Log in this action.

**Document Request No. 25**

All documents and things concerning any technology purchased, acquired, or Licensed by Color Kinetics to develop, test, manufacture and/or sell any Color Kinetics Product.

**Document Request No. 26**

All documents and things concerning the product flow of Color Kinetics Products from manufacturing to end user, including but not limited to distribution agreements and sales agreements.

**Document Request No. 27**

All documents and things concerning analyses, projections, assessments and/or statements relating to Color Kinetics Products, including without limitation, pricing, costs, sales, market shares and/or business plans.

**Document Request No. 42**

All documents and things concerning the production, fabrication, assembly, design, construction, operation, method(s) of making, or use of any Color Kinetics Product, including but not limited to all drawings, files, notes, videotapes, photographs, specifications, standard operating procedures, theory of operation documents, user's manuals, service or repair manuals, assembly and production materials, and testing documents.

**Document Request No. 43**

All documents and things concerning the conception, reduction to practice, research, development, testing, analysis and/or evaluation of all Color Kinetics Products, including but not limited to laboratory notebooks, engineering specifications, internal reports and memoranda.

**Document Request No. 45**

All documents and things concerning any comparison between any Color Kinetics Products and any other product.

"Color Kinetics Products" were defined in TIR's requests as "any product designed, developed, tested, made, used, sold or offered for sale by Color Kinetics which embodies in whole or in part the subject matter or teachings of any of the Patents-in-Suit, or which is covered by any claim of any of the Patents-in-Suit." In response to a TIR Interrogatory, CK identified 82 Color Kinetics products that "are covered by the claims of the patents-in-suit or may be used in

systems or in ways that would be covered by the patents-in-suit." (Exhibit D, CK Response to Int. No. 2).

Beyond a production of publicly available information on the Color Kinetics Products (e.g., web-site materials), CK's production in response to TIR's document requests has been deficient. In response to TIR's request for full and complete responses, CK has indicated that it will *only* produce responsive documents about its products that were created before the filing dates of the patents-in-suit. In other words, CK is refusing to produce documents concerning the products it alleges embody the claims of the patents-in-suit that were created after the filing dates for the patents-in-suit.

## ARGUMENT

Fed. R. Civ. P. 26(b)(1) provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party[.] . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." The United States Supreme Court "has long recognized that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery." *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

### I. CK SHOULD PRODUCE DOCUMENTS CONCERNING THE CONCEPTION AND REDUCTION TO PRACTICE OF THE ALLEGED INVENTIONS.

CK has never set forth any conception or reduction to practice dates for its four patents-in-suit, nor has it produced any such documents. Indeed, it is not apparent that the files of the named inventors of CK's four patents – all of whom still work at CK – have ever been reviewed, as not a single document has been produced that can be identified as originating with the named inventors.

Documents, concerning the conception and reduction to practice are clearly relevant to TIR's defense that the patents-in-suit are invalid. It is hornbook law that in determining whether a reference is prior art to a patent claim, consideration is given to the dates of conception and reduction to practice of the inventions embodied in the claim at issue. *See Burroughs Wellcome Co. v. Barr Labs, Inc.*, 40 F.3d 1223 (Fed. Cir. 1994). A reference may thus predate the filing date of the application leading to the patent, yet nonetheless not qualify as prior art if the patentee can demonstrate an earlier conception of the invention than the date of the reference. TIR is thus entitled to a clear response to Interrogatory No. 1, wherein CK must set forth actual dates of conception and reduction to practice. *See Invacare Corp. v. Sunrise Medical Holdings Inc.*, 2005 WL 1750271 (N.D. Ohio Jan. 21 2005) (in granting motion to compel interrogatory responses seeking conception and reduction to practice dates, the Court held that plaintiff's responses were "essentially non-responses in that they entirely leave open the critical time period, i.e., the earliest date on which the invention was conceived and reduced to practice."). TIR is also entitled to documents responsive to its requests that evidence the conceptions claimed in the patents-in-suit.

CK has implied that it might not seek to establish any earlier conception and reduction to practice dates than the dates of the patent applications themselves (meaning that all references predating the application dates would qualify as prior art), and that it has located no responsive documents. Even if (although it seems unlikely) CK cannot locate *any* conception and reduction to practice documents, it should still be compelled to respond to TIR's Interrogatory No. 1. *Invacare*, 2005 WL 1750271. All four named inventors still work at CK, and should have been consulted by this stage in the litigation. Either they know when they conceived of the inventions claimed in the patents in suit, or they do not. If they do not know, then CK should so state in a

verified interrogatory response, rather than leaving the door open to a possible assertion of different conception dates at a later time in the litigation.

Even if CK were to stipulate that it can identify no conception or reduction to practice dates earlier than the application filing dates, this would not render pre-filing documents from the inventor's files irrelevant. When the CK inventors filed their patent applications, they were under a duty to disclose the "best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. § 112. Under the "best mode" requirement, if the applicant develops specific instrumentalities or techniques that are recognized at the time of filing as the best way of carrying out the invention, then that information must be disclosed to the public in the patent application. *See Eli Lilly and co. v. Barr Labs, Inc.*, 251 F.3d 955 (Fed. Cir. 2001); *Amgen Inc. v. Chugai Pharm. Co.*, 927 F.3d 1200 (Fed. Cir. 1991). TIR is entitled to obtain discovery from CK as to whether the applicants did indeed disclose the best mode for the various alleged inventions claimed in the patents-in-suit. A crucial aspect of that discovery includes the pre-filing date documents from the inventors' files that TIR seeks by this motion.

## II. CK SHOULD PRODUCE DOCUMENTS CONCERNING ITS PRODUCTS ALLEGEDLY EMBODYING THE PATENTS-IN-SUIT.

CK has identified its own products that embody the claims of the patents-in-suit, but refuses to produce post-filing date documents relating to these products. CK has not articulated *any* reason for this arbitrary cut-off, however. CK cannot deny that how it implements the inventions in its products is likely to be contained in documents that post-date the filing dates, and in some cases there may be no documents at all about the product that predate the filing date (indeed, none have been produced yet). Both pre- and post-filing date documents concerning these products are relevant to at least the issues of validity and damages, as well as best mode

- 9 -

and claim construction considerations. TIR's document requests are narrowly tailored, seeking these relevant documents.

*Invalidity Under 35 U.S.C. § 103*

TIR has asserted that the asserted claims of the patents-in-suit are invalid as both being anticipated by the prior art under 35 U.S.C. § 102 and rendered obvious under 35 U.S.C. § 103. The documents that TIR seeks through Document Request Nos. 24-27 and 42, 43 and 45 are relevant to obviousness analysis. When obviousness is at issue in a patent case, the trier of fact must answer inquiries relating to (1) the scope and content of the prior art, (2) the differences between the art and the claims at issue, (3) the level of ordinary skill in the art, and (4) whatever objective evidence may be present. *Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988). Objective evidence may include consideration of the commercial success or nonsuccess of products embodying the invention. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966). Indeed, commercial success must be considered before a conclusion on obviousness is reached. *Kansas Jack Inc. v. Kuhn*, 719 F.2d 1144 (Fed. Cir. 1983). Accordingly, CK is obligated to produce documents relating to the development, operation, marketing and sales of the products that it alleges embody the claims of the patents-in-suit. *See, e.g., Watson Industries, Inc. v. Murata Electronics North America, Inc.*, 2003 WL 23162874 (W.D. Wisc. 2003) (motion to compel interrogatory response on sales of allegedly infringing products granted based on the "commercial success" prong of the obviousness analysis).

*Damages*

In addition, documents relating to CK's products are relevant to both reasonable royalty and lost profits considerations. *Rite-Hite Corp. v. Kelley, Co.*, 56 F.3d 1538 (Fed.Cir.1995) presents four factors germane to the lost profits analysis in a patent infringement case: "(1)

demand for the patented product; (2) absence of acceptable noninfringing substitutes; (3) [the alleged infringer's] manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit [patentee] would have made." *Id.* at 1545. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y.1970), *modified and aff'd,* 446 F.2d 295 (2d Cir.1971) sets forth factors for use in evaluating a reasonable royalty when a patent has been violated. Included in the factors to consider are "[t]he established profitability of the product made under the patent, its commercial success; and its current popularity." *Id.* at 1120.

TIR's document requests seek documents and information directly germane to the issues of reasonable royalties and lost profits. CK has for too long withheld relevant, responsive documents in its possession. It should be ordered to produce them immediately. *See Automed Technologies v. Knapp Logistics & Automation, Inc.*, 382 F.Supp.2d 1368 (N.D. Ga. 2005) (motion to compel documents relating to sales offers of alleged patented product granted based on relevance to reasonable royalty and lost profits calculations).

*Best Mode*

As discussed above, the CK patent applicants had a duty to disclose the best mode for carrying out the inventions claimed in their applications at the time of filing. 35 U.S.C. § 112. Post-filing documents evidencing how CK implemented their LED lighting concepts are relevant to the consideration of whether what was actually presented in the patent applications was the applicants' best mode for carrying out the inventions.

*Claim Construction*

The Federal Circuit, in the recent *en banc* decision *Phillips v. AWH Corp.*, 415 F.3d 1303, reconfirmed that courts may rely on extrinsic evidence when construing claim terms (although extrinsic evidence is "less significant than the intrinsic evidence."). *Phillips,* 415 F.3d

at 1317. Extrinsic evidence "consists of all evidence external to the patent and prosecution history." *Id.* (citations omitted). CK has asserted that the products it identified in response to TIR's Interrogatory No. 2 embody the claims of the patents in suit. If this is the case, then the features and operation of these products are relevant to a determination of what the claim terms would have meant to a person of ordinary skill in the art. At the very least, CK should not be asserting claim constructions that contradict its assertion that these products embody the claims. TIR is thus entitled to discovery into these products because they are relevant for claim construction considerations.[3]

## CONCLUSION

For the foregoing reasons, TIR respectfully requests that the Court enter an Order compelling CK to provide full and complete responses to TIR Interrogatory No. 1 and Document Request Nos. 2, 5, 11, 24-27, 42, 43 and 45.

Dated:  October 6, 2005

                              Respectfully submitted,

                              WILMER CUTLER PICKERING
                              HALE AND DORR LLP


                              /s/  Wendy Haller
                              Mark G. Matuschak (BBO #543873)
                              mark.matuschak@wilmerhale.com
                              Wendy Haller (BBO # 652943)
                              wendy.haller@wilmerhale.com
                              60 State Street
                              Boston, MA 02109
                              Telephone: 617-526-6000

---

[3] In addition, CK's products may be relevant to a consideration of whether TIR's products infringe any claims under the doctrine of equivalents. Under the standard "function/way/result" equivalents analysis, TIR's products may be found to infringe even if they do not literally meet asserted claim elements if they contain an apparatus that performs the same function as the claim, in the same way, with the same result. TIR contends that how CK's own products implement the inventions is relevant to a consideration as to whether TIR's implementation is sufficiently equivalent under the function/way/result analysis.

S. Calvin Walden (admitted pro hac vice)
calvin.walden@wilmerhale.com
399 Park Avenue
New York, NY 10021
Telephone: 212-937-7200

Michael Oblon (BBO #630946)
michael.oblon@wilmerhale.com
1455 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-942-8400

Attorneys for Defendant
TIR SYSTEMS LTD.

## LOCAL RULE 7.1(a)(2) CERTIFICATION

I hereby certify that I have conferred with opposing counsel and have attempted in good faith, but without success, to resolve or narrow the issues presented in this motion.

Dated: October 6, 2005                    /s/ S. Calvin Walden
                                          S. Calvin Walden

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this motion and the attached Exhibits to be served, by CM/ECF and First-Class mail, on the following counsel of record:

Matthew B. Lowrie
Aaron Moore
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142

Dated: October 6, 2005                    /s/ S. Calvin Walden
                                          S. Calvin Walden