# UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLOR KINETICS INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:03-cv-12491-MEL |
| ) | |
| TIR SYSTEMS LTD, ) | |
| ) | |
| Defendant. ) | |

**TIR'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR A PROTECTIVE ORDER**

**I.    Introduction**

As this Court is well aware, the parties have had prior discovery disputes in this case. With the Court's assistance, many of those disputes have been resolved by agreement. In violation of one of those agreements, Color Kinetics, Inc. ("CK") has now sought to obtain discovery from one of TIR's customers so extensive that CK has not even sought such discovery from TIR itself – indeed, it includes discovery that CK agreed that even TIR did not have to produce. The discovery that CK seeks from this third party is also far broader than any products at issue in this case, far broader than CK's own statements to the Court about the appropriate bounds of discovery in this case, and indeed far broader than any third party should be subject to in litigation. The only conceivable reason for CK's conduct is to harass a company which recently has entered into a strategic relationship with TIR. CK's conduct is at odds with the cooperative discovery process that this Court has sought to encourage.

Accordingly, TIR moves for a protective order, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, that discovery in violation of the parties' prior discovery agreement,

and discovery on products and technology not involved in this case, not be had. Pursuant to L.R. 7.1(a)(2) and 37.1(b), TIR has made a reasonable and good faith effort to resolve this issue with CK without the Court's intervention, without success. TIR respectfully requests that the Court enter the proposed Protective Order attached to this motion as Exhibit 1.

## II.   STATEMENT OF FACTS[1]

CK's discovery requests to TIR in this case originally sought production of all documents pertaining to every one of TIR's products that use color-changing LEDs. Because CK had accused only one TIR product – the Destiny ColorWash – of infringement, TIR opposed that broad request. CK moved to compel TIR to produce information about all of the remaining Destiny-series products. In order to resolve that dispute, the Court suggested that the parties undertake a limited Rule 30(b)(6) deposition of a TIR employee about the other Destiny products.

That deposition did occur, and CK inquired about all of TIR's Destiny-line products. In addition, CK sought to inquire about an additional TIR technology called LEXEL™ that is *not* part of the Destiny line, is based on entirely different technology, and was not the subject of CK's motion to compel. Nevertheless, TIR permitted CK to make limited inquiries about a prototype incorporating that technology, even though LEXEL™ is a new technology developed by TIR, used primarily to produce white light, not color-changing light.[2]

---

[1]   The factual statements in this brief are made on representation of the undersigned counsel. In the event that CK disputes the asserted facts or objects to their submission without an affidavit, TIR will request leave to submit an affidavit from counsel supporting the factual statements contained in this motion.

[2]   At the September 2005 hearing on CK's motion to compel, CK conceded that while it sought discovery relating to all color-changing LEDs, that was broader than the scope of its

2

Following the deposition, CK claimed that a number of TIR's Destiny line products infringe some of the claims of the patents asserted in this case (but not all Destiny products, not all patents, and not all claims). CK then sought additional discovery from TIR about those additional Destiny products, and TIR has produced it as agreed. CK also sought additional discovery about a LEXEL™ prototype that was shown at a lighting trade show in April 2005. TIR agreed to provide all of the information CK requested about that LEXEL™ prototype, and produced it, as agreed. The parties explicitly agreed about the scope of this additional discovery, and set forth that understanding in writing:

> "On LEXEL, we ask that TIR …produce documents showing the construction and operation of the unit that was brought to the New York trade show…."

*Email from Aaron Moore, counsel for Plaintiffs, to Calvin Walden, counsel for Defendants.* Exhibit 3.

> "Also included are documents related to the Lexel prototype shown at a tradeshow in April 2005."

*Letter from Joseph Baldwin, counsel for Defendants, to Aaron Moore, producing requested documents.* Exhibit 4.

In sum, the parties agreed that the only documents relating to the LEXEL™ that TIR would produce would be those relating to the prototype device displayed at the Lightfair International 2005 tradeshow. TIR complied with that agreement in every respect.

On January 27, 2006, CK served a subpoena duces tecum on Lighting Services, Inc. ("LSI"), a leading specialty lighting system manufacturer that recently entered into a strategic relationship with TIR. Among other things:

---

patents and was meant to ensure that its discovery was sufficiently comprehensive. *See Transcript of Motion Hearing*, Exhibit 2 at 9-12. LEXEL™ technology is primarily designed for a single-color (white).

3

- Despite the parties' clear agreement regarding LEXEL™ discovery, CK's subpoena requests virtually every piece of information that LSI has about LEXEL™ technology.

- The subpoena requests extensive information about future products not at issue in this case and indeed, which do not even exist, and therefore could not infringe any patent.

- Despite CK's admission that its patents do not even cover all color-changing LED systems, the subpoena also seeks documents about any "LED device capable of producing light of more than one color of light and/or light of more than one color temperature." CK's reference to "temperature changing" LEDs completely contradicts its earlier statements to this Court about the scope of its patents, and simply seeks to broaden its claims to cover devices that essentially dim and brighten white light – a far cry from the "color changing" LEDs that are already – admittedly – not all within the scope of CK's patents.

- Despite the special obligation to avoid burdening non-parties, CK's subpoena seeks not only discovery that CK has never sought, or agreed not to seek, from TIR, but also discovery phrased so broadly as to have no obvious relationship to any issue in this case, such as "[a]ll documents that concern Color Kinetics," and documents clearly designed to penalize LSI for entering into a relationship with TIR (e.g., Request No. 10, set forth below).

In its full breadth, the subpoena purports to require that LSI, a third party, produce:

4

1. All documents (including, without limitation, internal and external correspondence; product proposals, descriptions, specifications, or documentation; notes; messages; reports; plans; minutes; agreements; drawings; photos; memoranda; and drafts) that concern any current or future LEXEL system or device.

2. To the extent not already called for in Category No. 1, all documents (including, without limitation, internal and external correspondence; product concepts, designs, proposals, descriptions, specifications, or documentation; notes; messages; reports; plans; minutes; agreements; drawings; photos; memoranda; and drafts) that concern any current or future LED device capable of producing light of more than one color and/or light of more than one color temperature.

3. All documents that concern any product or system competitive with any LEXEL system or device.

4. All documents that concern any legal opinion or other legal analysis, formal or informal, that concerns (a) any actual or proposed LEXEL system or device, (b) any other current or future LED device capable of producing light of more than one color of light and/or light of more than one color temperature, or (c) any Asserted Patent.

5. All documents (including, without limitation, internal and external correspondence; product proposals, descriptions, specifications, or documentation; notes; messages; reports; plans; minutes; agreements; memoranda; and drafts) that concern any Asserted Patent or any litigation between Color Kinetics and TIR.

6. All sales forecasts, sales projections, or business plans that refer or relate to any current or future LEXEL system or device or any other current or future LED device capable of producing light of more than one color and/or light of more than one color temperature.

7. All documents that constitute or concern any agreement regarding any LEXEL system or device or any other LED device capable of producing light of more than one color and/or more than one color temperature.

8. All documents that concern Color Kinetics.

9. All documents that concern any Asserted Patent.

10. All documents and things relating to any decision to acquire, design, develop, test, or offer for sale any LEXEL system or device or any other LED device capable of producing light of more than one color and/or more than one color temperature.

USIDOCS 5500586v2

Further, the timing of the subpoena is designed specifically to disrupt LSI's business. Providing less than three weeks to comply (a party would have 30 days), the subpoena demands that documents be produced on the exact same date that the Architectural Retail Corporate Lighting show, one of the world's most significant shows, is scheduled to begin in London, England.

On February 9, 2006, LSI filed its objections to the subpoena on multiple grounds, including undue burden and privilege. Counsel for TIR held a meet and confer with counsel for CK on February 14, 2006, to discuss the subpoena, but no agreement was reached. TIR now files this motion for a protective order to maintain the integrity of the discovery process in this case by requesting that the Court restrict CK from seeking broad third party discovery from one of TIR's customers, discovery that CK has agreed not to seek from TIR itself.

### III. ARGUMENT

#### A. Applicable Law

While third party discovery is contemplated by the Federal Rules of Civil Procedure, third party status is a factor considered by courts when determining whether the requested discovery is oppressive or unduly burdensome. *Katz v. Batavia*, 984 F.2d 422, 424 (Fed. Cir. 1993). Under Rule 26(b), the need for third party discovery is diminished if the information is available elsewhere, such as from a party to the case. *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993) (citations omitted); *Audiotext Comm. Network, Inc. v. Connections USA, Inc.*, 1994 U.S. Dist. LEXIS 185 at *3-4 (S.D.N.Y. January 11, 1994). Third party discovery may also be limited to avoid disruptions of business relationships between a

party and its customers. *Harris v. Wells*, 1990 U.S. Dist. LEXIS 13215 at *12 (D. Conn. Sept. 5, 1990).

Protective orders such as the one sought here are governed by Rule 26(c), which "generously permits 'for good cause shown' the making of 'any order which justice requires' to protect against annoyance, embarrassment or undue burden occasioned by discovery." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 532 (1st Cir. 1993). This Court has broad discretion to decide when a protective order is appropriate and how it should be framed and administered. *Id.*

### B.   CK Is Seeking Discovery In Contravention To The Parties' Agreement And Outside The Scope Of The Issues In This Case

After extended motion practice and negotiation, the parties agreed to the scope of discovery regarding TIR's LEXEL™ technology, and TIR has complied with that agreement by producing the responsive documents about the LEXEL™ prototype in question. *See* Exhibits 3 and 4. Such agreements between the parties are encouraged to avoid further discovery motion practice and the costs involved to both the parties and to the Court. *See, e.g.*, L.R. 7.1(c); *see also Biedrzycki v. Town of Cicero*, No. 04 C3277, 2005 U.S. Dist. LEXIS 16423 at *6-7 (N.D. Ill., Aug. 8, 2005).

Having received everything from TIR about LEXEL™ technology that the parties agreed would be produced, CK now seeks broader additional discovery on LEXEL™ technology from one of TIR's customers. This transparent effort to avoid the effect of CK's own agreement with TIR should be rejected and a protective order granted precluding CK from seeking more than what it previously agreed would be produced with respect to LEXEL™ technology. A protective order is appropriate to prevent such an abuse of the discovery process. *Cf. Wang Labs, Inc. v. CFR Assoc., Inc.*, 125 F.R.D. 10, 12 (D. Mass. 1989) (noting that the Court has

7

authority to "issue appropriate orders to prohibit or remedy abusive or unethical litigation practices").[3]

CK's back-door way of seeking the same LEXEL™ discovery in a different fashion should be similarly treated. That is, as described above, CK purports to seek information about "temperature changing" LEDs explicitly to expand the scope of its requests to cover LEXEL™, even where CK does not actually use the name LEXEL™.

CK's requests for LSI to produce information about its negotiations with TIR and about future products not even made is likewise improper. The reasons why LSI decided to become a TIR customer are not relevant to the issues in this case, and are sought merely to penalize LSI and discourage other customers from working with TIR during the pendency of this case. That effort to use this litigation as a business tool should not be permitted. *See Harris*, 1990 U.S. Dist. LEXIS 13215 at *12. Similarly, CK's effort to find out information about future products not yet made is improper – products not made, much less sold, cannot infringe a patent.

Finally, other requests are equally as broad, if not more so, seeking, *e.g.*, "All documents relating to Color Kinetics" *see* Request No. 8 (*supra* p. 5); "All documents that concern any Asserted Patent" *see* Request No. 9 (*Id.*); and "All documents that concern any product or system competitive with any LEXEL system or device." *See* Request No. 3 (*Id.*). CK even goes so far as to request documents relating to any future device of LSI's that may include LEDs,

---

[3]  Indeed, CK's requests would be objectionable even aside from its agreement, as CK attempts to obtain information from a third party without any effort to obtain it from the other party in the litigation. *See Haworth,* 998 F.2d at 978 (affirming denial of motion to compel documents from third party where defendant did not first seek the documents from the plaintiff); *Graham v. Casey General Stores, Inc.*, 206 F.R.D. 251, 254 (S.D. Ind. 2002) (granting motion to quash subpoena served on plaintiff's employer where information could have been obtained by less intrusive means).

8

seeking, *e.g.*, "All sales forecasts, sales projections, or business plans that refer or relate to any current or future LEXEL system or device or any other current or future LED device." *See* Request No. 6; *see also* Request Nos. 1, 2 and 4 (*supra* p. 5). This is not the forum for a fishing expedition to discover evidence to be used against third parties.

CK's refusal to abide by its prior agreement, its refusal to cooperate on this issue, its determination to force TIR's customer to produce such documents far beyond what CK has even requested from TIR, as well as the timing of CK's request, all point clearly to an intent to disrupt business relations between TIR and LSI. CK has not yet established that even a single claim of a single valid patent has been infringed. The protective order sought by this motion is required to prevent CK from attempting to use the mere existence of this litigation to disrupt and harass customers, to obtain information that CK already has agreed does not need to be produced, and to disrupt the Court's effort to encourage and foster a more cooperative approach to the discovery process.

## IV.   CONCLUSION

For the reasons set forth above, TIR respectfully requests this Court enter the protective order in the form attached as Exhibit 1.

### REQUEST FOR ORAL ARGUMENT

TIR requests a hearing on this motion, to be held as soon as convenient for the Court.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

Dated: February 14, 2006                /s/ Mark Matuschak
                                        Mark G. Matuschak (BBO #543873)

9

USIDOCS 5500586v2

mark.matuschak@wilmerhale.com
Wendy Haller (BBO # 652943)
wendy.haller@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

S. Calvin Walden (admitted pro hac vice)
calvin.walden@wilmerhale.com
399 Park Avenue
New York, NY 10021
Telephone: 212-937-7200

Michael Oblon (BBO #630946)
michael.oblon@wilmerhale.com
1455 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-942-8400

Attorneys for Defendant
TIR SYSTEMS LTD.

US1DOCS 5500586v2

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that I have conferred with opposing counsel and have attempted in good faith, but without success, to resolve or narrow the issues presented in the motion.

Dated February 14, 2006                             ___/s/ Alexandra McTague___

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this motion and the attached Exhibits to be served, by CM/ECF, on the following counsel of record:

>Matthew B. Lowrie
>Aaron W. Moore
>Emily A. Berger
>Lowrie, Lando & Anastasi, LLP
>Riverfront Office Park
>One Main Street
>Cambridge, MA 02142

Dated February 14, 2006                             ___/s/ Alexandra McTague___

US1DOCS 5500586v2