IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLOR KINETICS INCORPORATED,<br><br>   Plaintiff<br><br>v.<br><br>TIR SYSTEMS LTD.,<br><br>   Defendant. | Civil Action No.:  03-cv-12491 (MEL) |

**COLOR KINETICS INCORPORATED'S OPPOSITION TO
TIR SYSTEMS LTD.'S MOTION FOR PROTECTIVE ORDER**

Color Kinetics Incorporated ("Color Kinetics") hereby opposes the motion by TIR Systems Ltd. ("TIR") for a protective order.

This is just the latest of TIR's ongoing and extensive efforts to keep its infringing products out of this case.  As explained in more detail below, TIR fought (unsuccessfully) to avoid producing <u>any</u> documents at the outset of the case, by feigning ignorance of what products were being accused; fought (unsuccessfully) to avoid producing documents concerning members of TIR infringing Destiny line of products other than the Destiny CW, where it turned out that those other members actually infringed the patents-in-suit <u>plus</u> four more that have now been added; and fought (unsuccessfully) to avoid producing documents concerning the infringing LEXEL product that was used at a trade show in New York on April 12, 2005.  The motion for a protective order is just another attempt by TIR to keep the evidence of its infringement hidden.  Enough is enough.  The motion should be denied and TIR should (finally) make a full and complete production.

- 2 -

TIR's claim that there is some agreement in which Color Kinetics agreed to not seek information about ongoing acts of infringement by TIR in the United States is demonstrably false, not to mention illogical. In the "agreement" on which TIR relies, TIR agreed to produce documents concerning the use of an infringing product called "LEXEL" at a trade show in New York in the face of a threat of a motion to compel. At that time, Color Kinetics agreed to accept the documents concerning the New York show <u>because that was the only use in the United States of which Color Kinetics was then aware</u>. Color Kinetics most certainly did not "agree" to never seek documents concerning any future infringements in the United States and there is not even a colorable argument that it did. The quotations from e-mails cited in TIR's brief are twisted out of context and, even then, do not support TIR's claims.

TIR's complaints that the subpoena is overly broad should be disregarded because (i) TIR does not have standing to raise these types of arguments; (ii) the subpoena plainly is not overly broad or unduly burdensome; and (iii) neither TIR, nor the subject of the subpoena, LSI, have even been willing to discuss a compromise that would address any such concerns, were they legitimate. TIR can hardly claim to have met and conferred, as required by Local Rule 7.1 in an effort to narrow this issue. LSI's attorneys have even not returned a phone call regarding its objections.

The only "refusal to cooperate on this issue" (TIR Brief[1], at 9) was on the part of TIR. TIR's unproductive hyperbole that "CK's conduct is at odds with the cooperative discovery process that this Court has sought to encourage" (TIR Brief, at 1) is inaccurate and, indeed, very

---

[1] TIR Brief refers to TIR's Memorandum of Law in Support of Its Motion for a Protective Order (Docket No. 55.).

hypocritical when viewed in the light of the parties' actual conduct.[2]

## BACKGROUND

*Nature and Parties*

This is a suit for infringement of eight Color Kinetics patents directed to various aspect of LED lighting. Color Kinetics, which has its principal place of business in Boston, offers LED-based lighting products to lighting professionals, original equipment manufacturers, and end consumers. TIR, which competes with Color Kinetics in some markets, is based in Burnaby, British Columbia, Canada, and also sells LED lighting fixtures in the United States.

*Procedural History*

Color Kinetics filed suit in December of 2003 and served its initial discovery requests on August 25, 2004. Rather than respond to the discovery requests, TIR took the position that it was unable to determine what products were being accused of infringement and moved to stay discovery and impose a schedule under which the parties would exchange contentions. Color Kinetics opposed, and the TIR motion was denied.

In denying the TIR motion, the Court ordered that the "first subject of discovery" was to be Color Kinetics' infringement contentions. (See Docket No. 26.) After some confusion about who was to take the next step in the case, Color Kinetics provided detailed claim charts reading the claims of the patents-in-suit on TIR's "Destiny CW" product. Color Kinetics then sought discovery on all "TIR devices, systems, or products that are capable of generating more than one color of light through the use of light emitting diodes including, without limitation, TIR's 'Destiny Series' line of products." Color Kinetics had not been able to obtain the other products in the Destiny line outside of this litigation, but believed that they infringed as well.

---

[2] TIR's allegations of an "abuse of the discovery process" (TIR Brief, at 7) and of "abusive or unethical litigation

TIR objected on the grounds that the requests were overly broad and that the discovery in this case should be limited to the Destiny CW product only.  In response to a motion to compel filed by Color Kinetics, the Court granted Color Kinetics a deposition concerning the construction and operation of TIR's other color-changing LED products.  (See Docket No. 41.)

Shortly before the TIR deposition, Color Kinetics learned that TIR had used an LED lighting product named "LEXEL" at a trade show in New York.  Color Kinetics had been aware of the LEXEL product, but had not previously been aware of any use in the United States.  Based on the limited amount of information available on TIR's website, Color Kinetics reached a preliminary conclusion that this new product also infringed the Color Kinetics patents.

At the deposition, the TIR witness confirmed that the LEXEL product had been brought into the United States and used at the trade show in New York.  (See Exhibit A.)  The witness also confirmed that the LEXEL product used red, green, and blue LEDs to produce different colors of light, and that it was a "color changing" device in the same sense as the accused members of the Destiny product line.  (Id.)  The attorney defending the deposition then instructed the witness to not answer any more questions concerning the LEXEL product.  (Id.)

TIR's claim that LEXEL is a "new technology developed by TIR, used primarily to produce white light, not color-changing light" (TIR Brief, at 2) apparently results from a misunderstanding of the technology:  different "temperatures" of white light are whites with the addition of <u>varying levels of blue or red</u>, so as to give the color of the light a "cooler" or "warmer" <u>appearance</u>.  Warm white and cool white are different "colors," and, in the case of the LEXEL product, are produced by LEDs of different colors, which is precisely the arrangement to which many of the Color Kinetics patent claims are directed.

---

practices" (TIR Brief, at 8) are similarly unfounded.

- 5 -

Indeed, TIR's claim that an LED fixture that produces different white lights is not a color-changing fixture is contradicted by TIR's own 30(b)(6) witness. When asked whether it is possible to "change the color of light coming out' in the LEXEL product," TIR's 30(b)(6) witness responded, "I would say yes in the sense that it produces white light. And there can be different shades of white light, if you will." (See Exhibit A.) TIR's assertion in its brief that "temperature changing" products do no more than "essentially dim and brighten white light" (TIR Brief, at 4) is either a fundamental misunderstanding on the part of counsel, or an effort to misled. Either way, it is simply wrong, as TIR's own witness testified.

The result of TIR's refusal to provide documents in advance of a 30(b)(6) deposition, and Color Kinetics being forced to go to Vancouver for a deposition, was that five of the six remaining TIR Destiny products were added to the case, as was the LEXEL product.

Following the deposition, Color Kinetics sought, and TIR could no longer refuse to produce, documents concerning the additional accused members of the Destiny product line. Color Kinetics also asked that TIR produce documents concerning the LEXEL product. Given that the only use in the United States of which Color Kinetics was then aware was the New York trade show, the request was limited to documents concerning the New York device. The limitation was intended to get information concerning the known LEXEL infringement in the United States and to avoid objection by TIR to producing documents concerning devices that had never been used in the United States. Color Kinetics never represented that it would not seek documents concerning other infringing acts in the United States. TIR does not—and cannot— claim otherwise.

**ARGUMENT**

I.  **The Subpoena Is Not In "Violation" of Any Agreement**

There is <u>absolutely</u> no "agreement" that bears <u>in any way</u> on Color Kinetics' ability or right to obtain documents concerning infringement by the LEXEL product in the United States.

Color Kinetics' specific request for TIR to produce documents showing the construction and operation of the LEXEL unit that was brought to the New York trade show was made because that was the only information of which Color Kinetics was aware concerning use of the LEXEL product in the United States <u>at that time</u>. It was intended to avoid anticipated objections about products made and used only in Canada. The request was <u>in no way an agreement to limit the scope of discovery</u>.

The correspondence that TIR identifies—one line of one informal e-mail from counsel—plainly does not evidence any such wide-ranging agreement. (<u>See</u> Exhibit 3 to the TIR Brief.) In fact, it does not address anything other than the issue of the New York documents. The beginning and the end of the agreement was that Color Kinetics would refrain from filing a motion to compel the production of the New York documents if TIR produced them. <u>That's it.</u>

In fact, TIR's argument does not even make sense: Color Kinetics never would have agreed to a limitation that (apparently) would foreclose <u>all</u> discovery on <u>any</u> future infringement by TIR in the United States relating to the LEXEL product in exchange for production of information about once such infringement. To try to tease such a nonsensical position out of the e-mails and turn it into a binding agreement is an exercise in wishful thinking—not the meeting of the minds of two parties creating a binding agreement.

Color Kinetics is fully entitled to take discovery from TIR on the infringing LEXEL product and plans to do so now that the four new patents are in the case and the schedule has

been revised accordingly.  Color Kinetics would never have agreed otherwise.  TIR's contention that there is some agreement barring further discovery borders on the frivolous.

**II.     The Documents Sought by Color Kinetics are Relevant to the Issues in This Case and Are Not Overly Broad or Unduly Burdensome**

As an initial matter, TIR does not have standing to assert objections about the scope or burdensomeness of the subpoena to third-party LSI.  See, e.g., Thomas v. Marina Assocs., 202 F.R.D. 433, 434 (E.D. Pa. 2001) (determining that the defendant did not have standing to challenge a third-party subpoena); Bulkmatic Transp. Co. v. Pappas, No. 99-12070, 2001 U.S. Dist. LEXIS 6062, at *5 (S.D.N.Y. 2001) (same); United States v. Nachamie, 91 F. Supp.2d 552, 558 (S.D.N.Y. 2000) ("A party generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege or a proprietary interest in the subpoenaed matter."); Palumbo v. Shulman, No. 97-4314, 1998 U.S. Dist. LEXIS 16009, 1998 WL 720668, at *1 (S.D.N.Y. Oct. 13, 1998) (denying defendants' motion for a protective order).

A party can only have standing to challenge a subpoena to a third-party where there is a possibility that the subpoena will force an improper disclosure of the party's confidential or privileged information.  See id.  Neither is a concern in this instance, because Color Kinetics and TIR are operating under a draft protective order, which may be used to shield any confidential information (and the parties have already exchanged confidential information under this agreement), and because any documents that TIR had shared with LSI have now lost any privileged status that they may once have had.

Even if TIR did have standing, however, its complaints would be unfounded.  As the party opposing the discovery, TIR has the burden of proof and must meet the heavy burden of establishing that compliance with the subpoena would be "unreasonable and oppressive."  See, e.g., Linder v. Department of Defense,133 F.3d 17, 24 (D.C. Cir. 1998); Vitale v. McAtee, 170

F.R.D. 404, 407 (E.D. Pa. 1997); <u>Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enters., Inc.</u>, 160 F.R.D. 70, 72 (E.D. Pa. 1995)).  TIR clearly cannot meet this burden with its generalized, unsupported, and in many cases inaccurate, complaints.

The LEXEL product was added to the case following the TIR deposition, TIR has not objected to that addition, and TIR itself has produced documents regarding that product.  There can be no argument that LEXEL is not part of this case.

When Color Kinetics became aware that LSI had additional information regarding <u>other</u> infringement in the United States by the LEXEL product, it served a subpoena requesting information from LSI related to that product and to the pending lawsuit.

TIR complains that the subpoena is improper because it seeks "virtually every piece of information that LSI has about LEXEL technology."  This is, of course, deliberate; <u>these documents concern infringement of the patents-in-suit by the product that the parties have already agreed is part of this case</u>.  How can it been objectionable to seek documents that go the heart of the case?

TIR further complains that Color Kinetics has a special obligation to avoid burdening non-parties.  This principle does not apply in full force to TIR's "strategic partner" (<u>see</u> Exhibit B), but even if it did, the subpoena at issue is not unduly burdensome.[3]  As described in more detail below, it is narrowly directed to documents concerning the infringement, the Color Kinetics patents, and this litigation.

---

[3] This special obligation is tempered where there is a close relationship between a party and the subject of the subpoena.  <u>See, e.g.</u>, <u>Schwartz v. New York City Off-Track Betting Corp.</u>, No. 92-1166, 1993 U.S. Dist. LEXIS 1469, 1993 WL 42760, at *3 (S.D.N.Y. Feb. 11, 1993) ("Even if a nonparty is still entitled to some enhanced protection against disclosure of confidential information and from burdensome discovery requests, [the third-party] is so closely allied with the defendants and the information that she possesses is so pertinent that it must be disclosed.").

TIR also complains that the subpoena is improper because the documents being sought are in its possession as well. In general, however, it is entirely appropriate for a non-party subpoena to seek information duplicative of information sought from a party. See, e.g., In re PE Corp. Secs. Litig., 221 F.R.D. 20, 28 (D. Conn. 2003). What is more, Color Kinetics served its document requests on August 25, 2004; TIR is in no position to claim that Color Kinetics should wait longer for TIR to produce its documents.

In addition, there surely are responsive documents that have been generated by LSI and not shared with TIR, such as documents concerning the design and development of LSI's new LEXEL product. It is, thus, almost certain that there are documents in the possession of LSI that are not available from TIR.

If TIR would prefer to produce the responsive documents that it and LSI have in common, in order to save LSI the trouble of doing so, that would be fine with Color Kinetics. No such offer has been made, however.

TIR claims that the subpoena is overly broad because it covers "temperature changing" fixtures. As described above, however, a temperature change is a color change; TIR's own technical witness equated the two (see Exhibit A), and the patent claims specifically cover devices employing TIR's method of changing "temperature," e.g., the use of LEDs of more than one color. TIR's complaints on these grounds appear to be based on a misunderstanding of the meaning of the term "color temperature." In any event, if TIR wishes to take this position to allege that LEXEL does not infringe, it is free to do so (subject to Rule 11, of course). Color Kinetics is confident that, in the end, the Court will agree with Color Kinetics and TIR's 30(b)(6) witness that changing "temperature" is the changing of color. That TIR think it has a noninfringement position hardly means, however, that Color Kinetics is not entitled to take

discovery on the accused infringing product.

TIR also claims that the subpoena is overly broad because it is directed to future products. To the extent there are prototypes being made or operated in the United States, however, these would be acts of infringement regardless of whether or not any product marketed or sold. See 35 U.S.C § 271 (providing that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent" (emphasis added). If LSI has tested a LEXEL prototype or production device in the Untied States, that is infringement. And they apparently have, because they have unveiled a LEXEL product since the subpoena was issued. (See Exhibit B.)

TIR complains that the subpoena includes within its scope products other than those named "LEXEL." This was done deliberately, so as to capture the LEXEL product and/or any product or system re-branded with a different name. Otherwise, LSI might avoid producing documents about infringing uses simply by arguing that, for example, "SUPERLEX" is different from "LEXEL." The subpoena was crafted to capture documents concerning the infringing TIR LEXEL system and any LSI system or product employing that same technology, regardless of whether or not it is called "LEXEL" by LSI.

TIR has once made Color Kinetics travel to Vancouver to take a deposition to confirm that most or all of TIR's lines of color changing products infringe. To require Color Kinetics to do the same with LSI would multiply the needless expenses that are being imposed by TIR in this case, a result hardly consistent with the "just, speedy and inexpensive" resolution of this action. Fed. R. Civ. P. 1.

TIR also complains that the subpoena requests documents concerning Color Kinetics, this litigation, and the patents-in-suit. These requests are also narrow, calculated to reach documents generated in the process of deciding to adopt the infringing technology that relate to the parties, documents concerning the infringing technology itself, and the patents and parties in this case. There really is no question that these requests are directed to information relevant to this suit.

TIR also complains about the timing of the subpoena, arguing that it improperly requested the production of documents on the day of a certain trade show. This is silly. Color Kinetics certainly would have shifted the date of production to accommodate scheduling concerns <u>if asked</u>. The issue was never raised by TIR prior to the filing of its motion. It was <u>never</u> raised by the party that was subpoenaed, LSI.

Finally, TIR argues that Color Kinetics is not entitled to this discovery because "CK has not established that even a single claim of a single valid patent has been infringed." (TIR Brief, at 9.) This too is absurd. Apparently, TIR requires that the case be fully litigated and adjudicated before Color Kinetics can obtain any documents. Color Kinetics has provided TIR with detailed claim charts on the infringement issue, including claim charts directed to the LEXEL product, which is as much as can be expected at this point. TIR cannot be permitted to shield documents during the discovery period on the grounds that the ultimate issue of infringement has not already been decided.

TIR's last objection gets to the heart of TIR's conduct in this case. As outlined in the introduction, TIR's entire litigation strategy has been to try to shield documents in the hopes of preventing Color Kinetics from proving its case or at least avoiding its day of reckoning for as long as possible. This must stop.

**CONCLUSION**

For the reasons set forth above, plaintiff Color Kinetics respectfully requests that TIR's Motion for Protective Order be DENIED.

Respectfully submitted,

COLOR KINETICS INCORPORATED

Dated:  February 28, 2006 /s/ Emily A. Berger
Matthew B. Lowrie, BBO No. 563,414
Aaron W. Moore, BBO No. 638,076
Emily A. Berger, BBO No. 650,841
LOWRIE, LANDO & ANASTASI, LLP
Riverfront Office Park
One Main Street - 11th Floor
Cambridge, MA 02142
Tel: 617-395-7000
Fax: 617-395-7070

**CERTIFICATE OF SERVICE**

I hereby certify that today I caused a true and correct copy of COLOR KINETICS INCORPORATED'S OPPOSITION TO TIR SYSTEMS LTD.'S MOTION FOR PROTECTIVE ORDER to be served on the following counsel of record by CM/ECF:

Mark G. Matuschak
mark.matuschak@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  February 28, 2006         /s/ Emily A. Berger
Emily A. Berger