IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLOR KINETICS INCORPORATED,

        Plaintiff

v.                                                                     Civil Action No.:  03-cv-12491 (MEL)

TIR SYSTEMS LTD.,

        Defendant.

**COLOR KINETICS' MEMORANDUM
IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
ON THE ISSUE OF INEQUITABLE CONDUCT**

790457.3

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

TECHNICAL AND FACTUAL BACKGROUND........................................................ 2

I.   THE PATENTS-IN-SUIT................................................................................. 2

     A.   U.S. Patent No. 6,016,038........................................................... 2

     B.   U.S. Patent No. 6,150,774........................................................... 3

     C.   U.S. Patent No. 6,211,626........................................................... 3

     D.   U.S. Patent No. 6,340,868........................................................... 3

     E.   U.S. Patent No. 6,806,659........................................................... 4

     F.   U.S. Patent No. 6,788,011........................................................... 4

II.  TIR'S INEQUITABLE CONDUCT ARGUMENTS ........................................ 4

     A.   The '774 Patent ............................................................................ 4

     B.   The '868 Patent ............................................................................ 6

     C.   The '011 and '659 Patents ........................................................... 7

ARGUMENT .............................................................................................................. 8

I.   LEGAL BACKGROUND ................................................................................ 8

     A.   Inequitable Conduct..................................................................... 8

     B.   Summary Judgment ................................................................... 13

II.  COLOR KINETICS IS ENTITLED TO SUMMARY JUDGMENT FOR
     EACH PATENT ON THE ISSUE OF INEQUITABLE CONDUCT ............... 13

     A.   TIR's Pleadings Acknowledge That The Patent Office Was
          Informed Of All Material Information Known To Color Kinetics ...................... 14

     B.   TIR Has Not Alleged Anything Sufficient To Prove Intent To Deceive.............. 15

     C.   Any Unenforceability Of The '774 Patent Would Not Affect
          The Enforceability Of The '011 And '659 Patents ............................... 17

CONCLUSION........................................................................................................... 18

## INTRODUCTION

This is a motion, pursuant to Fed. R. Civ. P. 56, for summary judgment in favor of plaintiff Color Kinetics Incorporated ("Color Kinetics") on the defense and counterclaims raised by TIR Systems Ltd. ("TIR") that Color Kinetics committed inequitable conduct before the United States Patent Office.

TIR made a critical legal error in its desire to allege inequitable conduct on the part of Color Kinetics, pleading that Color Kinetics failed to inform the Patent Office of prior art that was of record in earlier Color Kinetics patent applications. What TIR failed to realize is that, by virtue of the later applications claiming priority to the earlier ones, those references are considered by the Examiner and are of record in the later application as well, according to the rules of the Patent Office, and as a matter of law.

In short, when the correct legal standard is applied, TIR pleads that Color Kinetics committed inequitable conduct by not disclosing what was, in fact, disclosed and of record under the Patent Office rules. The defense cannot stand, as a matter of law.

The inequitable conduct defense generally has been characterized as "an absolute plague." See Burlington Industries, Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988) (further case citations are discussed below). Defendants take the intricacies and complexities of the technology involved and the details of patent prosecution and distort them into lurid tales of wrong-doing. See Northern Telecom v. Datapoint, 908 F.2d 931, 939 (Fed. Cir. 1990) (noting the "ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive"); E.I du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1439 (Fed. Cir. 1988) ("Fraud in the PTO has been overplayed, is appearing in nearly every

patent suit, and is cluttering up the patent system."). That is precisely what TIR has attempted to do here.

Here, even assuming that all of the facts pled by TIR in alleging inequitable conduct are true, these facts cannot constitute inequitable conduct. The Patent Office was fully informed of everything, even under the facts as pled by TIR. Inequitable conduct is an issue to be tried to the Court, not to a jury. See Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp., 351 F.3d 1139, 1146 (Fed. Cir. 2003). In this case, however, a trial to the Court is unnecessary, and it would be unfair to put Color Kinetics through discovery (TIR seeks to depose five Color Kinetics attorneys on this subject) and a trial where the allegations are so plainly without merit. Color Kinetics respectfully requests that it be granted summary judgment on this defense.

## TECHNICAL AND FACTUAL BACKGROUND

### I.     THE PATENTS-IN-SUIT

The eight Color Kinetics patents asserted in this case are directed to a variety of inventions in the area of illumination or lighting units and systems that use light emitting diodes ("LEDs") as an illumination source. Each patent is directed generally to different aspects of such systems. The Color Kinetics patents to which the assertions of inequitable conduct apply[1] can be summarized as follows:[2]

### A.     U.S. Patent No. 6,016,038

The '038 patent (see Ex. E of the Second Amended Complaint) includes twenty-five claims directed to lights and lighting assemblies that involve the use of LEDs driven using

---

[1] A number of patents are asserted in this case against which TIR has not asserted inequitable conduct, namely the '919, '038, '626 and '079 patents. For the purposes of this motion, the '919 and '079 patents are not summarized. The '038 and '626 patents, while not having an inequitable conduct charge asserted against them, are summarized due to their relevance to assertions against others of the patents-in-suit.

[2] These summaries are intended as background for the convenience of the Court and are not intended to be statements of fact. In any event, what the patents separately claim as inventions is a legal issue. See, e.g., Omniglow Corp. v. Unique Indus., Inc., 184 F.Supp.2d 105, 115 (D. Mass. 2002) (noting that the task of interpreting the claims is reserved for the court).

current sinks to control the intensity of different colored LEDs.  The claims also include the use of addressable controllers.

### B.    U.S. Patent No. 6,150,774

The '774 patent (see Ex. F of the Second Amended Complaint) is a continuation of the '038 patent.  The '774 patent has eleven claims directed to lights and light bulbs that use LEDs and that are driven using current sinks to control the intensity of different colored LEDs.  The '774 claims specify a "means for programming" the duty cycles of a pulse width modulated ("PWM") signal to control the intensity of the LEDs.  Generally speaking, a PWM signal is a signal that changes the amount of time that the signal is active by changing the width of a pulse of the signal.  The "means for programming" may be an addressable controller (as in the claims of the '038 patent), but may also be one of a variety of other mechanisms to program the intensity of the color (i.e., the duty cycle for PWM), such a potentiometer (a manual switch), a joy stick, and even an inclinometer.

### C.    U.S. Patent No. 6,211,626

The '626 patent (see Ex. B of the Second Amended Complaint) includes eight claims directed to the configuration of an LED illumination unit.  Specifically, the '626 patent deals with a mechanism for dealing with heat in such a unit, namely a heat spreader plate that is in contact with the housing of the unit.  The '626 patent refers to the use of a processor to control current through the LEDs (and change the intensity of the colors), but does not specify using current sinks, switches, or PWM to do so.

### D.    U.S. Patent No. 6,340,868

The '868 patent (see Ex. A of the Second Amended Complaint), a continuation of the '626 patent, includes ten claims that refer to a modular design for an illumination unit, allowing, for example, the "light module" to be "removeably and replaceably" connected to a "power

module." The '868 patent refers to use of a processor (broadly defined in the patent specification) to control current through LEDs (and change the colors), but does not require switches or PWM.

### E.    U.S. Patent No. 6,806,659

The '659 patent (see Ex. G of the Second Amended Complaint) is a continuation of the '774 patent.

### F.    U.S. Patent No. 6,788,011

The '011 patent (see Ex. D of the Second Amended Complaint) is a continuation of the '659 patent.

## II.    TIR'S INEQUITABLE CONDUCT ARGUMENTS

TIR's inequitable conduct allegations are pled in its Amended Answer (Docket No. 67). All of these allegations concern the purported failure of Color Kinetics to identify to the Patent and Trademark Office, in continuation applications, substantially similar claims in earlier applications, rejections of substantially similar claims in earlier applications, and/or prior art identified in the parent applications.

Taking all facts alleged by TIR to be true, the conduct alleged by TIR cannot, as a matter of law, constitute inequitable conduct. By claiming priority to the earlier applications, each of these things were identified and disclosed to the Patent Office in accordance with its rules.

### A.    The '774 Patent

The '774 patent stems from an application that was a continuation of the application that resulted in the '038 patent.[3] A continuation application is a patent application that discloses the same subject matter as an earlier ("parent") application, and which includes a specific "priority

---

[3]  For the purposes of this motion, Color Kinetics, as the movant, accepts all factual allegations made by TIR as true. In so doing, Color Kinetics makes no admissions as to the truth or falsehood of any of the allegations contained in TIR's Amended Answer, Affirmative Defense, and Amended Counterclaims.

claim" to the parent. This priority claim entitles the later application to be treated as though it had been filed on the same date as the parent. See 35 U.S.C. § 120.

During prosecution of the (parent) '038 patent, various claims were rejected over certain prior art identified by the examiner, U.S. Patent No. 5,420,482 to Phares and U.S. Patent No. 5,350,977 to Hamamoto, both of which were cited on October 28, 1998, and U.S. Patent No. 5,406,176 to Sugden, cited on May 12, 1999.

The application that matured into the '774 patent was filed on October 22, 1999, more than five months after the latest citation of these references in the parent application.

In the Amended Answer, TIR alleges that Color Kinetics (a) failed to inform the Patent Office that each claim of the '774 application had been previously presented in the '038 application (Amended Answer, at ¶ 62), (b) failed to inform the Patent Office that claims in the '774 application had been rejected in view of prior art in the '038 application (Amended Answer, at ¶ 75), and (c) had never notified the Patent Office of the Sugden reference (Amended Answer, at ¶ 76). TIR argues that each of these items was material to the patentability of the claims of the '774 application. (Amended Answer, at ¶¶ 77-79.)

TIR then asserts, "on information and belief and in view of the facts and circumstances of the application for the '774 patent," that the above items were intentionally withheld. (Amended Answer, at ¶¶ 80-82.) No evidentiary basis is identified to support this conclusion and TIR (appropriately) does not allege any intent to deceive the Patent Office.

TIR acknowledges that the '774 application was filed as a continuation of the '038 application. (Amended Answer, at ¶¶ 64 and 69.) TIR further acknowledges that Color Kinetics, in an Information Disclosure Statement ("IDS"), notified the Patent Office of the Phares and Hamamoto references. (Amended Answer, at ¶ 70.) Finally, TIR acknowledges that

a number of claims in the '774 application were rejected on the basis of the judicially created doctrine of double patenting over several claims of the issued '038 patent.  (Amended Answer, at ¶¶ 71-72; see also Exhibit A to the Amended Answer, the terminal disclaimer in question, which expressly identifies the '038 patent).

### B.    The '868 Patent

As acknowledged by TIR, the application that matured into the '868 patent was filed as a continuation of the application that matured into the '626 patent.  (Amended Answer, at ¶ 85.)

During prosecution of the parent ('626) application, claim 18 and claim 19 (which depended from claim 18) were rejected over a particular reference (the "Chliwnyj reference"). These claims were cancelled, without prejudice, in a subsequent response.

The applicant then filed the '868 continuation application.  A preliminary amendment was filed, in which claim 18 (which was the same as in the '626 application) was amended to include a limitation that "the color spectrum includes a color selected from green blue and violet."  This amendment was made to overcome the Chliwnyj reference.  (Amended Answer, at ¶ 87.)  Amended claim 18 and claim 19 were subsequently rejected over Chliwnyj in combination with US Patent No. 6,072,280.  (Amended Answer, at ¶ 89.)  An examiner interview followed, which was summarized on April 18, 2000.  In the interview, the examiner agreed that the addition of a limitation ("removability and replaceability of the LED module from the power module") would distinguish claim 18 over the cited references; there is no indication that claim 19 was discussed.  (Amended Answer, at ¶ 90.)

Claims 18 and 19 were cancelled by subsequent amendment, and a new claim (claim 80) was added.  Applicants argued that claim 80 was distinguishable on the basis of the examiner interview.  (Amended Answer, at ¶ 92.)

New claim 80 did not contain the "color spectrum includes a color selected from green blue and violet" limitation, that had been added in the preliminary amendment; it did, however, contain the "removability and replaceability of the LED module from the power module" limitation agreed upon by the applicants and the examiner as overcoming the prior art. (Amended Answer, at ¶¶ 93-94.) Claim 80, as allowed, corresponded to original claim 19 (which depended from claim 18). (Amended Answer, at ¶ 95.)

TIR alleges that Color Kinetics failed to inform the examiner in the '868 continuation application of the rejection of substantially similar claim 19 in the parent '626 application, and that such rejection was material to the patentability of claim 80 in the '868 application. (Amended Answer, at ¶ 100.) Again, TIR alleges that this was done intentionally solely "[u]pon information and belief and in view of the facts and circumstances" of the prosecution of these patents, with no other evidentiary support. (Amended Answer, at ¶ 101.) Also, again, TIR does not allege any intent to deceive the Patent Office.

C.    The '011 and '659 Patents

TIR finally alleges that the '011 and '659 patents are unenforceable based solely on their being related to the '774 patent. (Amended Answer, at ¶¶ 104-105.) As no alternative theory of inequitable conduct is offered with respect to these patents, if the '774 patent is determined to be enforceable, the '011 and '659 patents must also be found to be enforceable.[4]

---

[4] Notably, the converse does not hold true; if the '774 patent is determined to be unenforceable, the '011 and '659 patents are not necessarily unenforceable, as discussed further below.

# ARGUMENT

Summary judgment is appropriate on the issue of inequitable conduct because the factual allegations contained in TIR's pleadings, even if accepted as true, fail as a matter of law to constitute inequitable conduct.

## I.    LEGAL BACKGROUND

### A.    Inequitable Conduct

Inequitable conduct claims (which are claims of fraud) must be pleaded with the same level of specificity required to plead fraud under Rule 9(b).  See, e.g., Systemation, Inc. v. Engel Industries, Inc., 183 F.R.D. 49, 51 (D. Mass. 1998) ("[T]he Court agrees with the clear majority on this issue and holds that Fed.R.Civ.P. 9(b) applies to [the defendant's] claim of inequitable conduct.").  "The requirements of Rule 9(b) are applied strictly; at a minimum, [one alleging inequitable conduct] is required to state the time, place and content of the alleged inequitable conduct."  Id. at 51 (quoting Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997)).

Inequitable conduct cannot be pled generally, with the hope of obtaining the necessary specificity through discovery.  See, e.g., Goss Int'l Ams., Inc. v. MAN Roland, Inc., 2006 U.S. Dist. LEXIS 36386 at *16-17 (D.N.H. 2006) ("While discovery responses may be used to add details to an otherwise sufficient pleading, they may not be used to cure deficient pleadings or to add new claims entirely.") (citations omitted).  Further, once pled, TIR must prove inequitable conduct by clear and convincing evidence.  See, e.g., Union Pac. Resources Co., 236 F.3d at 693.

To establish inequitable conduct, TIR has the burden of proving, by clear and convincing evidence, two things:  (1) that the patent applicant "intended to deceive the PTO," by (2) "failing to disclose material information."  Braun Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 822 (Fed. Cir. 1992).

"The two essential elements of inequitable conduct—materiality and intent to deceive—must both be proven by clear and convincing evidence."  Union Pac. Resources Co., 236 F.3d at 693; see also Braun, 975 F.2d at 822.

The requirement that the two factual predicates, materiality and intent, be proven by clear and convincing evidence, is "an essential safeguard" against unfounded allegations of inequitable conduct, which have plagued the courts in recent years.  Allied Colloids Inc. v. American Cyanamid Co., 64 F.3d 1570, 1578 (Fed. Cir. 1995) (requiring clear and convincing proof of both materiality and specific intent to deceive in response to the "plague" of inequitable conduct charges); Burlington Industries, 849 F.2d at 1422 (describing the "absolute plague"); see also In re Hayes Microcomputer Products Inc. Patent Litig., 982 F.2d 1527, 1546 (Fed. Cir. 1992) (noting that the Federal Circuit "deplore[s]… unfounded accusations of inequitable conduct.").

Under the Patent Rules,

[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
    (1) it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or
    (2) it refutes, or is inconsistent with, a position the applicant takes in:
        (i) opposing an argument of unpatentability relied on by the Office, or
        (ii) asserting an argument of patentability.

35 C.F.R. § 1.56 (2000).

Thus, information is material only if it meets the criteria of (1) or (2) above and is not cumulative of information already of record.  See, e.g., Elk Corporation of Dallas v. GAF Building Materials Corp. et al., 168 F.3d 28, 31 (Fed. Cir. 1999) ("[A]n otherwise material reference need not be disclosed if it is merely cumulative of or less material than other references already disclosed."); Haliburton Co. v. Schlumberger Technology Corp., 925 F.2d 1435 (Fed.

Cir. 1991) ("[A] patentee has no obligation to disclose an otherwise material reference if the reference is cumulative or less material than those already before the examiner.").

References that are of record in a parent application automatically are of record, and need not be cited, in a continuation application filed under 37 C.F.R. § 153(b). See Manual of Patent Examining Procedure ("MPEP") § 609.02(A)(2) (stating that "[t]he examiner will consider information which has been considered by the Office in a parent application when examining (A) a continuation application filed under 37 C.F.R. § 153(b)"); see also MPEP § 707.05 (instructing examiners to review, when examining a continuation application, the parent application for pertinent prior art"); MPEP § 2001.06(b) (informing applicants that examiners will consider prior art cited in the earlier application when examining a continuation, and that "no separate citation of the same prior art need be made in the later application" (emphasis added)); Nintendo of America, Inc. v. Magnavox Co., 707 F.Supp. 717 (S.D.N.Y. 1989) (noting that, even under the MPEP prior to the addition of § 609, it was the patent examiner's responsibility pursuant to § 707.05 to review parent applications for pertinent prior art; finding no inequitable conduct for the applicants' failure to re-cite material or record in the parent case).[5]

As a result, the Federal Circuit has held that, "[i]n view of MPEP § 609, it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application." ATD Corp. v. Lydall, Inc., 159 F.3d 534, 537 (Fed. Cir. 1998); see also Transmatic, Inc. v. Gulton Industries, Inc., 849 F. Supp. 526 (E.D. Mich. 1994, aff'd in pertinent part, rev'd in part, 53 F.3d 1270 (Fed. Cir. 1995) (determining that a material reference that is already of record in parent application need not be resubmitted by the applicant in a continuing application). This is true regardless of the

---

[5]  Copies of the relevant provisions on 37 C.F.R. and the MPEP are attached as Exhibit 1 to this Memorandum.

materiality of the prior art reference to the patentability of the invention.  See, e.g., TM Patents,

L.P. v. IBM, 121 F.Supp.2d 349, 372 (S.D.N.Y. 2000); Transmatic, 849 F.Supp. at 542.

Even if a defendant can succeed in proving materiality by clear and convincing evidence,

intent to deceive cannot be presumed; rather, intent is a separate and essential component of

inequitable conduct.  See Braun, 975 F.2d at 822.  Further, the infringer's burden is to prove,

again by clear and convincing evidence, that the applicant specifically intended to deceive the

Patent Office; negligence, even gross negligence, is not enough.  See Allied Colloids, 64 F.3d at

1578; see also Molins, PLC v. Textron, Inc., 48 F.3d 1172, 1181 (Fed. Cir. 1995) (requiring

"specific intent"); Tol-O-Matic, Inc. v. Proma Produkt-Und Mktg. Gesellschaft m.b.H., 945 F.2d

1546, 1554 (Fed. Cir. 1991); Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867,

872 (Fed. Cir. 1988) ("To be guilty of inequitable conduct, one must have intended to act

inequitably") (relevant portion en banc.).  Finally, when making a determination on the issue of

intent to deceive, a court must weigh all the evidence, including evidence of good faith on the

part of the applicants.  Akron Polymer Container Corp. v. Exxel Container, 148 F.3d 1380, 1384

(Fed. Cir. 1998); see also Gambro Lundia AB v. Baxter Healthcare Corp., 110 F.3d 1573, 1580

(Fed. Cir. 1997).

There can be no inequitable conduct for failure to cite in a continuation a reference of

record in the parent application, even where the continuation application file history contains no

record (e.g., in either an IDS or in a notice of references cited from the examiner) that the

particular reference was considered in the continuation prosecution.  See Transmatic, 849

F.Supp. at 541-542 (determining that the applicant had a good faith basis for believing that the

examiner was on notice of references contained in a parent application by referring to the parent

application in the continuation application, and thus that the applicant lacked the intention to deceive the Patent Office).  As noted in Transmatic:

> any finding of intent to mislead the PTO would have to be premised on the notion that [the applicant] had reason to believe when he filed the continuation application that the PTO itself, despite being advised of the parent application by [the applicant], would not review it and notice the Kalt and Arenberg references. The fact that [the examiner] did not cite Kalt and Arenberg in his initial rejection of the continuation application, and that he did not indicate that he had reviewed the parent application in accordance with § 2001.06(b) of the Manual of Patent Examination procedures, are just not enough, in the Court's opinion, to demonstrate (1) that [the examiner] did in fact fail to review the parent application and/or (2) that [the applicant] had actual knowledge of such a failure.

Id.

Inequitable conduct in a patent application does not automatically render unenforceable all of the claims of all later issued patents in the same chain.  Instead, the inequitable conduct that occurred earlier in the chain "must be related to the targeted claims of the ultimately-issued patent or patents sought to be enforced."  Semiconductor Energy Lab., Inc., v. Samsung Elecs. Co., 24 F. Supp. 2d 537, 543 (E.D. Va. 1998) (citing Baxter, 149 F.3d at 1332 and Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 809-11 (Fed. Cir. 1990)); see also Baxter, 149 F.3d 1321 (Fed. Cir. 1998) (explaining that inequitable conduct with respect to one patent does not render unenforceable claims in related patents directed to different inventions); Truth Hardware Corp. v. Ashland Prods., Inc., No. Civ. A. 02-1541-GMS, 2003 WL 22005839, at * 1 (D. Del. Aug. 19, 2003) (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245-46 (1933)) ("[I]t is well-settled that a patentee's inequitable conduct renders unenforceable all patent claims having 'an immediate and necessary relation' to that conduct, regardless of whether the claims are contained in a single patent or a series of related patents").

Thus, a patent that issues from a divisional or continuation application may be held unenforceable based on inequitable conduct earlier in the chain of applications only where the inequitable conduct relates to the asserted claims of the child.

### B.    Summary Judgment

"[S]ummary judgment is as appropriate in a patent case as in any other." Avia Group Int'l v. L.A. Gear California, Inc., 853 F.2d 1557, 1561 (Fed. Cir. 1988); Spectra Corp. v. Lutz, 839 F.2d 1579, 1581 n.6 (Fed. Cir. 1988). Courts routinely grant motions for summary judgment on the issue of inequitable conduct. See, e.g., Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1331 (Fed. Cir. 2004); Advanced Cardiovascular Sys. v. Medtronic, Inc., 265 F.3d 1294, 1306 (Fed. Cir. 2001).

On summary judgment, the moving party bears the burden of demonstrating the absence of all genuine issues of material fact. See, e.g., Cooper v. Ford Motor Co., 748 F.2d 677, 679 (Fed. Cir. 1984). However, the moving party need not "produce evidence showing the absence of a genuine issue of material fact"; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (emphasis added); see Biotec Biologische Naturverpackengun GmbH & Co. v. Biocorp, Inc., 249 F.3d 1341, 1354 (Fed. Cir. 2001) (rejecting the argument that the patentee moving for summary judgment on the issue of validity was required to present evidence to shift the burden of coming forward to the infringer).

## II.    COLOR KINETICS IS ENTITLED TO SUMMARY JUDGMENT FOR EACH PATENT ON THE ISSUE OF INEQUITABLE CONDUCT

As discussed below, TIR has failed to produce or identify any evidence that would support a judgment of inequitable conduct. All of the factual allegations pled by TIR, if accepted

as true, do not establish either (i) the withholding of material information from the Patent Office; or (ii) an intention to deceive the Patent Office on the part of Color Kinetics.

In fact, the factual allegations made by TIR tend to prove the opposite—that Color Kinetics properly put all of the material information identified by TIR in front of the Patent Office, and that Color Kinetics fully intended that all relevant information be put in front of the Patent Office.

Because TIR's inequitable conduct charges cannot stand, as a matter of law, Color Kinetics respectfully requests that the Court grant summary judgment in its favor.

### A.    TIR's Pleadings Acknowledge That The Patent Office Was Informed Of All Material Information Known To Color Kinetics

Color Kinetics, as acknowledged by TIR, identified the application that resulted in the '774 patent as a continuation of the application that resulted in the '038 patent, and identified the application that resulted in the '868 patent as a continuation of the application that resulted in the '626 patent.  There is no question these were disclosed to the Patent Office.

Without question, and as a matter of law, the identification of the applications continuations put the Patent Office on notice of the parent application and all references that were of record in the parent application.  See MPEP § 609.02(A)(2); ATD Corp. v. Lydall, Inc., 159 F.3d 534, 537 (Fed. Cir. 1998) ("[i]n view of MPEP § 609, it cannot be inequitable conduct for an applicant not to resubmit, in the divisional application, the information that was cited or submitted in the parent application."); Transmatic, 849 F. Supp. 526 (determining that a material reference that is already of record in parent application need not be resubmitted by the applicant in a continuing application).

Indeed, that the Patent Office was made aware of the claims of the '038 patent, its prosecution history, and the references, is evident in the prosecution of the '774 patent itself.[6] The examiner rejected claims in the '774 application for double patenting over claims of the '038 patent, conclusively showing that the Patent Office was aware of substantially similar claims in that case. It is absurd in this circumstance to claim that any material information was withheld from the Patent Office.

Similarly, the Patent Office was aware of the claims of the '626 patent, the prosecution history of that patent, and references raised in the prosecution of the '626 patent during prosecution of the '868 application.

In short, it is <u>impossible</u> to conclude that the existence of the parent patent applications, or the references cited in them, were unknown to the Patent Office or that either were withheld from the Patent Office. As a matter of law, when Color Kinetics claimed priority to the respective parent application, Color Kinetics met the disclosure requirements for these things.

Color Kinetics suspects that any other holding would condemn many patent attorneys (including those at opposing counsel and those prosecuting patent applications for TIR) to a myriad of charges of inequitable conduct. But that is not the law, and summary judgment in favor of Color Kinetics with regard to inequitable conduct is appropriate.

**B.    TIR Has Not Alleged Anything Sufficient To Prove Intent To Deceive**

Even were material information found to have been withheld, there can be no showing of an intent to deceive. TIR is required to show, as a separate element of proving inequitable

---

[6] At a minimum, the Patent Office would have been aware of all art cited in the parent case at the point in time in which the continuation was filed. As the relevant claims and references in the '744 case were made of record in the parent case before the filing of the continuation, and the relevant claims and references in the '868 application were clearly of record in the '868 case itself, Color Kinetics takes no position as to the status of art made of record in a parent case after the filing of a continuation.

conduct, that Color Kinetics intended to deceive the Patent Office, and it must do so by clear and convincing evidence.  See Braun, 975 F.2d at 822; Union Pac. Resources Co., 236 F.3d at 693.

Even in view of this heavy burden, TIR offers nothing from which to infer that any such intent existed in Color Kinetics.  Indeed, TIR alleges only that information was intentionally withheld from the Patent Office, not that it was withheld from the Patent Office with the requisite intention to deceive the Patent Office—an allegation that could not be made consistent with Rule 11.  See, e.g., Transmatic, 849 F.Supp. at 541-542 (determining that the applicant had a good faith basis for believing that the examiner was on notice of references contained in a parent application by referring to the parent application in the continuation application, and thus that the applicant lacked the intention to deceive the Patent Office).

To find an intent to deceive in the '774 case out of the facts alleged by TIR, this Court would have to accept that Color Kinetics informed the Patent Office of the parent case by virtue of identifying the application as a continuation, but intended to fool the Patent Office by hoping that the examiner would, in derogation of his duties, fail to review the file history of the parent case and thus fail to identify any similar claims, rejection of such claims, or references made of record in the parent case before the filing of the continuation.

Further proof of Color Kinetics' lack of intent to hide the parent case from the examiner is the fact that Color Kinetics filed a terminal disclaimer in the continuation '774 application to overcome a double patenting rejection of claims of that application over similar claims in the '038 parent application.[7]  In addition to the above, Color Kinetics would have had to intend the

---

[7]  The doctrine of nonstatutory obviousness type double patenting is intended to prevent prolongation of the patent term by prohibiting claims in a second patent application that are not patently distinguished (i.e., are obvious) over claims in a first patent.  See, e.g., M.P.E.P. § 804(II)(B) (collecting cases).  This type of rejection can be overcome by filing a terminal disclaimer, which is a statement, filed by the owner of the application, that disclaims (or dedicates to the public) the terminal part of the term of the patent-to-issue that extends beyond the term of the patent that formed the basis of the rejection, such that the original patent term is not extended or prolonged.  See, e.g., M.P.E.P. § 804.02(II).

examiner remain unaware of the very patent that the examiner had used as the basis of a rejection in the '774 application itself.

To find intent in the '868 case, this Court would have to accept that Color Kinetics again informed the Patent Office of the parent case by virtue designating the '868 application as a continuation, identified and argued over the same reference used to initially reject the claims in the parent case, discussed the claims and reference <u>with the same examiner</u> who handled the parent '626 case, and yet somehow intended that the claims in the parent case remain hidden and unknown to that examiner.

Intent cannot be inferred under these circumstances and TIR has not even pled the level of intent required—an intent to deceive the Patent Office. For this separate and distinct reason, summary judgment should be granted in favor of Color Kinetics.

## C. Any Unenforceability Of The '774 Patent Would Not Affect The Enforceability Of The '011 And '659 Patents

TIR bears the burden of proving unenforceability due to inequitable conduct by clear and convincing evidence. With regard to the '011 and '659 patents, TIR merely identifies these patents as "related" to the '774 patent, offering no further reason why either patent should be held unenforceable. As discussed above, no inequitable conduct occurred during the prosecution of the '774 patent; thus, the '011 and '659 patents are likewise enforceable, and summary judgment should be granted in favor of Color Kinetics.

Even were the '774 patent held to be unenforceable, the asserted claims of the '011 and '659 patents must have an immediate and necessary relationship to the inequitable conduct for the '011 or '659 patents to be held likewise unenforceable. TIR has failed entirely to allege anything indicating such a relationship. Instead, TIR baldly asserts, incorrectly, that the latter patents should be unenforceable because "[t]he '659 patent and the '011 patent are related to the

'774 patent." This falls well short of proving, by clear and convincing evidence, that either the '659 or '011 patents should be held unenforceable, and summary judgment in favor of Color Kinetics should be granted regardless of the determination with regard to the '774 patent.

## CONCLUSION

For the foregoing reasons, Color Kinetics respectfully requests that the Court grant summary judgment in its favor on the issue of inequitable conduct.

Respectfully submitted,

COLOR KINETICS INCORPORATED

Dated:  August 4, 2006                    _____/s/ Aaron W. Moore_____
                                          Matthew B. Lowrie, BBO No. 563,414
                                          Aaron W. Moore, BBO No. 638,076
                                          Emily A. Berger, BBO No. 650,841
                                          Thomas P. McNulty, BBO No. 654,564
                                          Lowrie, Lando & Anastasi, LLP
                                          Riverfront Office Park
                                          One Main Street - 11th Floor
                                          Cambridge, MA 02142
                                          Tel: 617-395-7000
                                          Fax: 617-395-7070

790457.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that today I caused a true and correct copy of the foregoing to be served, by CM/ECF, on the following counsel of record:

Mark G. Matuschak

Wilmer Cutler Pickering Hale and Dorr LLP

60 State Street

Boston, MA  02109

Dated:  August 4, 2006                    /s/ Aaron W. Moore
                                                      Aaron W. Moore

790457.3                                        - 1 -