UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLOR KINETICS INCORPORATED, )<br><br>Plaintiff, )<br><br>v. )<br><br>TIR SYSTEMS LTD, )<br><br>Defendant. ) | Civil Action No. 1:03-cv-12491-MEL |

**DEFENDANT TIR'S OPPOSITION TO CK'S MOTION FOR SUMMARY
JUDGMENT OF NO INEQUITABLE CONDUCT AND CROSS MOTION FOR
SUMMARY JUDGMENT OF  INEQUITABLE CONDUCT,
<u>OR IN THE ALTERNATIVE, FOR BIFURCATION</u>**

Mark G. Matuschak (BBO #543873)
Wendy Haller Verlander (BBO #652943)
Christopher R. Noyes (BBO #654324)
Wilmer Cutler Pickering Hale & Dorr LLP
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

S. Calvin Walden (admitted <u>pro hac vice</u>)
Alexandra McTague (admitted <u>pro hac vice</u>)
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, NY 10021
Telephone: 212-937-7200
*Attorneys for Defendant*

## Table of Contents

**Pages**

I.  INTRODUCTION ........................................................................................................... 1

II. SUMMARY OF UNDISPUTED FACTS ....................................................................... 2
   A.  The Patents-in-Suit ............................................................................................. 2
   B.  Prosecution of the '038 Patent ........................................................................... 3
   C.  Prosecution of the '774 Patent ........................................................................... 3

III. THE UNDISPUTED FACTS DEMONSTRATE AS A MATTER OF LAW THAT CK
    COMMITTED INEQUITABLE CONDUCT AND THAT SUMMARY JUDGMENT OF
    UNENFORCEABILITY SHOULD BE GRANTED ......................................................... 5
   A.  Applicable Law ................................................................................................... 5
   B.  CK Should Have, But Did Not, Inform the Examiner of the '774 Application that
       Identical Claims in that Application Had Been Rejected Over the Prior Art in the '038
       Application ........................................................................................................... 7
   C.  CK's Concealment in the '774 Application of the Rejection of the Identical Claims of
       the '038 Application, and Misrepresentations Regarding the Patentability of its Claims,
       Are Material ...................................................................................................... 11
   D.  As A Matter Of Law Based On The Undisputed Facts, CK Intended To Deceive The
       Patent Office. .................................................................................................... 12
   E.  The High Degree of Materiality of CK's Omission and Misrepresentation Coupled
       with Evidence of Intent and the Absence of a Good Faith Explanation, Compels the
       Conclusion that Inequitable Conduct Was Committed during the Prosecution of the
       '774 Patent ........................................................................................................ 14
   F.  CK's Unclean Hands in Obtaining the '774 Patent Infects All of the Patents-In-Suit,
       Rendering Each of them Unenforceable ........................................................... 15

IV. CK'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT
    MUST BE DENIED ..................................................................................................... 17

V.  IF THIS COURT RULES THAT THERE ARE ISSUES OF FACT RELATING TO
    ANY ELEMENTS OF DEFENDANT'S INEQUITABLE CONDUCT DEFENSE, TIR
    MOVES TO BIFURCATE AND FIRST TRY THE INEQUITABLE CONDUCT
    ISSUES ....................................................................................................................... 19

VI. CONCLUSION ............................................................................................................ 20

i

<u>**Table of Authorities**</u>

<u>**Pages**</u>

<u>Federal Cases</u>

*Agfa Corp. v. Creo Prods.*
  2004 U.S. Dist. LEXIS 21462 (D. Mass., Oct. 5, 2004) .............................................................2, 19

*Agfa Corp. v. Creo Prods. Inc.*
  *451 F.3d 1366 (Fed. Cir. 2006)* ...................................................................................1, 15, 16, 17

*Anderson v. Liberty Lobby, Inc.*
  *477 U.S. 242 (1986)* ................................................................................................................6, 18

*Armour & Co. v. Swift & Co.*
  466 F.2d 767 (7th Cir. 1972).............................................................................................................8

*Baxter Int'l., Inc. v. McGaw, Inc.*,
  149 F.3d 1321 (Fed. Cir. 1998).............................................................................................6, 15, 16

*Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.*
  394 F.3d 1348 (Fed. Cir. 2005).............................................................................................5, 6, 14

*Burlington N. & Santa Fe Ry. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*
  323 F.3d 767 (9th Cir. 2003)............................................................................................................18

*Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*
  910 F.2d 804 (Fed. Cir. 1990)............................................................................................15, 16, 17

*Dayco Prods. Inc. v. Total Containment, Inc.*
  329 F. 3d 1358, 1378 (Fed. Cir. 2003) ............................................................................................8

*Digital Control Inc. v. Charles Mach. Works*
  437 F.3d 1309 (Fed. Cir. 2006)......................................................................................................11

*Ferring B.V. v. Barr Laboratories*
  437 F.3d 1181 (Fed. Cir. 2006)........................................................................................................6

*Fox Indus., Inc. v. Structural Preservation Sys., Inc.*
  922 F.2d 801 (Fed. Cir. 1990);..............................................................................................15, 16

*Gardco Mfg., Inc. v. Herst Lighting Co.*
  820 F.2d 1209 (Fed. Cir. 1987).....................................................................................................19

*Gilbarco, Inc. v. Octel Commc'ns Corp.*
  No. C-94-20780-JW, 1996 WL 75304, at *3-6 (N.D. Cal. Feb. 15, 1996) ........................................7

*Hewlett-Packard Co. v. Genrad, Inc.* 882 F.Supp. 1141 (D. Mass 1995) ............................................. 19

*IDEC Pharm. v. Corixa Corp.*
   No. 01-1637-IEG (RBB) ............................................................................................................ 7

*Li Second Family LP v. Toshiba Corp.*
   231 F.3d 1373, ___ (Fed. Cir. 2000) ................................................................................... 9, 12

*Litton Sys., Inc. v. Whirlpool Corp.*
   728 F.2d 1423 (Fed. Cir. 1984) ................................................................................................. 8

*London v. Carson Pirie Scott*
   946 F.2d 1534 (Fed. Cir. 1991) ................................................................................................. 6

*Metabolife Int'l, Inc. v. Wornick*
   264 F.3d 832 (9th Cir. 2001) ................................................................................................... 18

*Molins PLC v. Textron, Inc.*
   48 F.3d 1172 (Fed. Cir. 1995) ................................................................................................... 7

*Morton Grove Pharmaceuticals, Inc. v. Par Pharmaceuticals Co.*
   No. 04-C-7007 WL 850873 (N.D. Ill. March 28, 2006) ........................................................... 9

*Paragon Podiatry v. KLM Lab., Inc.*
   984 F.2d 1182 (Fed. Cir 1993) ................................................................................................. 6

*Pharmacia Corp. v. Par Pharm., Inc.*
   417 F.3d 1369 (Fed. Cir. 2005) ................................................................................................. 5

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*
   237 F.3d 1359 (Fed. Cir. 2001) ................................................................................................. 6

*United States v. Kitsap Physicians Serv.*
   314 F.3d 995 (9th Cir. 2002) ................................................................................................... 18

*Wichita Falls Office Assoc. v. Banc One Corp.*
   978 F.2d 915 (5th Cir. 1992) ................................................................................................... 18

<u>State Cases</u>

37 C.F.R. § 1.56 ..................................................................................................................... 3, 5, 9

MPEP § 2001.06(b) ..................................................................................................................... 8

## I.    INTRODUCTION

Every applicant for a U.S. patent is required to prosecute that application in good faith, with full disclosure of all material information to the United States Patent and Trademark Office ("USPTO"). The consequences for intentionally violating the duty of candor are severe – the tainted patent – and related patents – can be held unenforceable. This seemingly harsh result is necessary to protect the integrity of the patent system. Without it, the USPTO is unable to properly analyze whether inventions are patentable and deserving of a patent monopoly.

Color Kinetics, Inc. ("CK") was subject to this duty of candor during prosecution of the patents-in-suit just like every other applicant. However, CK failed to comply with this duty as a matter of law when it concealed material information from the USPTO and made misrepresentations regarding the patentability of its claims during prosecution of U.S. Patent No. 6,150,774 ("the '774 patent). CK's inequitable conduct not only renders the '774 patent unenforceable, but it extends to every patent-in-suit, rendering them all unenforceable as a matter of law.

In particular, the Federal Circuit has held that information regarding prior rejections of claims is part of the applicant's duty of candor, is material, and must be disclosed to the examiner. *See Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1361-62 (Fed. Cir. 2003). Withholding this material information constitutes inequitable conduct and renders the patent and all related copending patents with claims to related subject matter unenforceable. *See Agfa Corp. v. Creo Prods*. 451 F.3d 1366, 1379 (Fed. Cir. 2006). This, however, is precisely what CK has done.

CK's first patent application directed to color-controllable LEDs issued as U.S. Patent No. 6,016,038, but not before a number of claims had been rejected by the examiner in light of the prior art. Rather than pursue those rejected claims through argument or amendment, CK cancelled them. Seeking the proverbial "second bite at the apple," CK then simply re-filed those same claims in a continuation application, assigned to a different examiner. CK represented to the new examiner that the claims were patentable. CK did not disclose that a prior examiner of the parent application had already rejected those claims as unpatentable. Without the benefit of that information, the second examiner allowed the claims, which issued as part of U.S. Patent No. 6,150,774.

1

CK's actions and statements in prosecuting the '774 patent show that CK intended to deceive the examiner to obtain patent claims to which it was not entitled. On these undisputed facts, as a matter of law, the '774 patent is unenforceable and summary judgment is warranted.

The duty of candor and the consequences for violation of it are meant to protect the integrity of the patent system. Because the integrity of the patent system is critical to its proper operation and is founded on the duty of disclosure to which every patentee agrees, inequitable conduct results not only in the unenforceability of the specific patent in question, but also of any co-pending application containing related subject matter under the prophylactic doctrine of "infection." *See id.*

The doctrine of infection, as articulated by the Federal Circuit extends the unenforceability of one patent to related patents with the same or similar claims pending at the time of, or after, the inequitable conduct. *See id.* In the District of Massachusetts, Judge O'Toole has applied this doctrine in similar circumstances in *Agfa Corp. v. Creo Prods.*, 2004 U.S. Dist. LEXIS 21462 (D. Mass., Oct. 5, 2004). CK's conduct requires the same result.

Because all of the patents-in-suit are related with claims having identical or near-identical subject matter, and all were pending at the time of, or after, the inequitable conduct in the '774 patent, as a matter of law on these undisputed facts, summary judgment that all the patents-in-suit are unenforceable is warranted.

## II.    SUMMARY OF UNDISPUTED FACTS[1]

### A.    The Patents-in-Suit

Plaintiff CK is asserting eight patents and almost 100 claims against defendant TIR. (SOF ¶ 3). All eight patents are members of the same family of patents and claim priority to a single application that was filed on August 26, 1997 and subsequently issued as the '038 patent. (SOF ¶ 17). A chart showing the interrelatedness of the patents-in-suit is included as Exhibit M to the Declaration of Alexandra McTague in support of this motion.

The claims of the eight asserted patents generally relate to multicolor LED devices controlled by microprocessors and methods of illumination using such LEDs. (SOF ¶ 4). The different patents claim many of the same basic elements, such as LEDs (all patents), controllers to regulate the intensity of the

---

[1] The facts set forth below come from the patents and the file histories of those patents and are undisputed, or not subject to reasonable dispute.

LEDs (all patents), pulse width modulation to regulate the intensity of illumination (the '038, '774, '659, '079 and '011 patents), switches to perform pulse width modulation (the '038, '774 and '659 patents), timing means to perform pulse width modulation (the '038 and '774 patents), a user or network interface (the '038, '774, '659, '079 and '011 patents), and power terminals to provide a power connection to the LEDs (the '038, '774 and '659 patents).  (SOF ¶¶ 4-6).

### B.    Prosecution of the '038 Patent

CK filed a patent application on August 26, 1997, entitled, "Multicolored LED Lighting Method and Apparatus," naming George Mueller and Ihor Lys as inventors.  (SOF ¶ 7).  That application was filed with 35 claims, including claims 1, 22, 23, 25, 26, and 32 and was assigned to Examiner Wilson Lee.  (SOF ¶ 8).  Both Mr. Mueller and Mr. Lys signed declarations affirming that they understood their duty of candor in prosecuting applications before the USPTO under 37 C.F.R. § 1.56.  (SOF ¶ 9).

In an October 28, 1998 office action, Examiner Lee rejected 26 of the 35 claims, including claims 1, 22, 23, 25, 26 and 32.  (SOF ¶ 10).  These rejections were based in part on U.S. Patent No. 5,420,482 ("Phares"), and U.S. Patent No. 5,350,977 ("Hamamoto").  (SOF ¶ 10).  Examiner Lee noted that Phares taught an LED system with control units, a transmitter as an addressable controller and a pulse width generator.  (SOF ¶ 11).  He described Hamamoto as "an illumination apparatus comprising a plurality of light sources…of three different colors" as well as a power supply, dimmers, and a pulse width modulated controller with memory for programming "duty cycles for each color."  (SOF ¶ 12).

On January 15, 1999, CK submitted an amendment which cancelled all claims that were rejected in light of Phares and Hamamoto (SOF ¶ 13).  CK did not take issue with the Examiner's characterization of Phares or Hamamoto, nor did it argue that its rejected claims were indeed patentable.  (SOF ¶ 13).  Instead, CK merely canceled the claims that had been rejected over the prior art.  (SOF ¶ 13).

### C.    Prosecution of the '774 Patent

On October 22, 1999, nine months after CK cancelled claims 1, 22, 23, 25, 26 and 32 during prosecution of the '038 patent in response to their rejection in light of Phares and Hamamoto, CK filed a

3

continuation application (the "'774 application").[2] (SOF ¶ 18). In that continuation, CK simply *refiled the 6 claims* previously cancelled in response to prior art rejections in the '038 application. (SOF ¶ 18).[3]

CK's continuation application was assigned to a different examiner -- Examiner Haissa Philogene. (SOF ¶ 21). During prosecution of the '774 application, CK *never informed* Examiner Philogene that another examiner had previously rejected 6 of the claims being pursued in the '774 application. (SOF ¶ 22).

Without the benefit of Examiner Lee's previous analysis, Examiner Philogene issued just one office action in the '774 application. (SOF ¶ 24). That action allowed pending claims 22 and 32. (SOF ¶ 24). The remaining pending claims were rejected under the doctrine of "non-statutory" double patenting[4] in view of the now-issued '038 parent patent. (SOF ¶ 24). No prior art rejection was made by Examiner Philogene, even though those *identical* claims had been rejected by Examiner Lee over Hamamoto. (SOF ¶ 24).

In making the double patenting rejection, Examiner Philogene, again without the benefit of Examiner Lee's previous analysis, stated that there was "no apparent reason why applicant was prevented from presenting claims corresponding to those of the instant application [*i.e.*, the '774 application] during prosecution of [the parent '038 patent application]." (SOF ¶ 25). Indeed, this statement demonstrates to any observer, including CK at the time, that Examiner Philogene had no idea that the same claims had previously been rejected in the '038 application. In response to the office action, Robert Mazzarese of the Foley, Hoag firm submitted on behalf of CK a "terminal disclaimer"[5] to overcome the double patenting rejection stating:

> Claims 1, 4, 23, 24, 26, 27 and 34 are rejected under the judicially created doctrine of double patenting over claims 1, 3, 21, and 25 of U.S. Patent No. 6,016,038. Applicants submit herewith a terminal disclaimer to obviate this rejection.

---

[2] The '774 application was filed by David P. Halstead of the Foley, Hoag firm on behalf of CK, and was accompanied by unexecuted Declarations from Messrs. Mueller and Lys attesting to the purported patentability of the claims. (SOF ¶ 19). On December 30, 1999, Mr. Halstead submitted signed Declarations from Messrs. Mueller and Lys. (SOF ¶ 20).
[3] Claims 24, 27, 33 and 34 were also rejected in the '038 application over prior art, cancelled, and refiled in the '774 application. (SOF ¶ 15, 18). Claims 1, 22, 23, 25, 26, and 32 are the basis for this motion to simplify and narrow the facts relied upon. Inequitable conduct with respect to a single claim is sufficient to render an entire patent unenforceable. *Baxter Int'l v. McGraw, Inc.,* 149 F.3d 1321, 1332 (Fed. Cir. 1998).
[4] "Non-statutory double patenting" is a rejection by the USPTO indicating that another patent has claimed the same subject matter.
[5] A "terminal disclaimer" is a declaration by the applicant disclaiming whatever patent term exists beyond another patent's term.

4

> Applicants believe that the above amendments and remarks place the present application in condition for allowance and request early notification to this effect.

(SOF ¶ 27). In representing to Examiner Philogene that "the present application [was] in condition for allowance," CK made no mention of the fact that six of the allowed claims had been previously rejected over the prior art by another Examiner. (SOF ¶ 28).

A Notice of Allowability was mailed on June 16, 2000, allowing all pending claims.[6] (SOF ¶ 29).

The '774 patent issued on November 21, 2000, containing 11 claims, 6 of which had been rejected by Examiner Lee over the prior art in the '038 application and which are the subject of this motion. (SOF ¶¶ 29, 35). Two of these claims, claims 1 and 23 (issued claims 1 and 4) have been asserted by CK in this litigation. (SOF ¶ 3).

All of the patents in suit were pending at the time of, or after the filing of the '774 patent application. (SOF ¶ 36).

III.    **THE UNDISPUTED FACTS DEMONSTRATE AS A MATTER OF LAW THAT CK COMMITTED INEQUITABLE CONDUCT AND THAT SUMMARY JUDGMENT OF UNENFORCEABILITY SHOULD BE GRANTED**

A.    **Applicable Law**

Each person substantively involved in the prosecution of a patent application, including the inventor and prosecuting attorney or agent, owes a duty of candor and good faith to the USPTO. 37 C.F.R. § 1.56. This obligation applies throughout the entire course of the prosecution. A failure to comply with the duty of candor renders the entire patent, and potentially related patents, unenforceable for inequitable conduct. *Bruno Independent Living Aids, Inc. v. Acorn Mobility Services, Ltd.*, 394 F.3d 1348 (Fed. Cir. 2005); *Pharmacia Corp. v. Par Pharm., Inc.*, 417 F.3d 1369, 1375-76 (Fed. Cir. 2005).

---

[6] At the same time, Examiner Philogene placed his initials by the references contained in an additional IDS which had been submitted by CK just prior to the first office action (but not considered by the Examiner until later) that disclosed Phares and Hamamoto. CK provided no explanation with the second IDS regarding the materiality of any of the cited references, including Phares and Hamamoto, nor did it acknowledge the fact that another examiner had relied upon Hamamoto and Phares in rejecting the same claims now presented in the '774 patent application.

5

Inequitable conduct may be found in cases of "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Baxter Int'l., Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). Both materiality and intent must be shown by clear and convincing evidence. *Bruno Ind. Living Aids,* 394 F.3d at 1351. The "inequitable conduct analysis is performed in two steps comprising 'first, a determination of whether the [accused conduct] meets a threshold level of materiality and intent to mislead, and second, a weighing of materiality and intent in light of all the circumstances to determine whether the applicant's conduct is so culpable that the patent should be held unenforceable.'" *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1362-63 (Fed. Cir. 2003 (*quoting Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1366 (Fed. Cir. 2001)). When the accused conduct meets the threshold levels of materiality and intent to mislead the USPTO, there is an inverse relationship between the two factors. That is, the court weighs the two such that the more material the conduct, the less evidence of intent that is required to support a finding of inequitable conduct and vice versa. *Id.* at 1327.

The Federal Circuit has recently reconfirmed that the grant of summary judgment is appropriate for a defense of inequitable conduct. *Ferring B.V. v. Barr Laboratories*, 437 F.3d 1181, 1186-87 (Fed. Cir. 2006) (*citing Paragon Podiatry v. KLM Lab., Inc.*, 984 F.2d 1182 (Fed. Cir 1993)).[7] In *Ferring*, the Federal Circuit affirmed summary judgment of inequitable conduct where the inventor failed to disclose a prior relationship with individuals who submitted declarations in support of patentability; while in *Paragon Podiatry*, the Federal Circuit affirmed summary judgment of inequitable conduct where the

---

[7] Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248* (1986). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243, 106 S. Ct. 2505 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Id.* "There can be no genuine issue as to any material fact where the nonmoving party's proof is deficient in meeting an essential part of the applicable legal standard, since such failure renders all other facts immaterial." *London v. Carson Pirie Scott,* 946 F.2d 1534, 1537-38 (Fed. Cir. 1991).

US1DOCS 5802788v4

applicant failed to disclose material information. *See also IDEC Pharm. v. Corixa Corp.*, No. 01-1637-IEG (RBB), 2003 WL 24147447, at \*16-22 (S.C. Cal. Oct. 14, 2003) (granting summary judgment of inequitable conduct where patentee failed to disclose prior art publications authored by the named inventors that disclosed an allegedly novel feature of the claimed invention); *Gilbarco, Inc. v. Octel Commc'ns Corp.*, No. C-94-20780-JW, 1996 WL 75304, at \*3-6 (N.D. Cal. Feb. 15, 1996) (granting summary judgment of inequitable conduct where the named inventor failed to disclose knowledge that the invention was offered for sale and described in a paper presented by the inventor more than one year before the filing date).

> **B.     CK Should Have, But Did Not, Inform the Examiner of the '774 Application that Identical Claims in that Application Had Been Rejected Over the Prior Art in the '038 Application**

The inequitable conduct committed by CK in the '774 application consists of: (1) CK's failure to disclose to the examiner of the '774 application that a different examiner in the '038 application had rejected identical claims as being anticipated by and/or obvious in view of Phares and Hamamoto; and (2) CK's misrepresentation to the examiner of the '774 patent that it understood these claims to be in a condition for patentability notwithstanding their prior rejection.

CK misstates the law when it suggests to the Court that "the Patent Office was made aware of the claims of the '038 patent, its prosecution history, and the references [cited therein]" merely because the '774 patent is a continuation of the '038 patent. (CK Memo., p. 15). CK further misstates the law when it asserts that a failure to review the file history of the parent case would be a "derogation of [the Examiner's] duties." (CK Motion at 16). Neither of these arguments is correct.

First, there is no provision in the MPEP requiring an examiner to review the ***file history*** of a parent or other related application when examining a newly filed application.[8] To the contrary, the

---

[8] The MPEP (Manual for Patent Examining Procedure) is a reference that provides information and guidance on the practices and procedures relative to prosecution of patent applications before the USPTO, and is often relied upon by the courts as an interpretation of statutes and regulations. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180n.10 (Fed. Cir. 1995) ("The MPEP is commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters. While the MPEP does not have the force of law, it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith.") (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d

7

MPEP explicitly states: "individuals . . . have a duty to bring to the attention of the examiner . . . information within their knowledge as to other copending United States applications which are 'material to patentability' of the application in question." (MPEP § 2001.06(b)).  The MPEP goes on to explain the rationale for this rule:  "[W]e think it is unfair to the busy examiner . . . to assume that he retains details of every pending file in his mind . . . .[T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent."  (*Id*)*. (quoting Armour & Co. v. Swift & Co.,* 466 F.2d 767, 779 (7th Cir. 1972)).

    This makes common sense.  If an examiner had to review every change or amendment to every claim submitted in every preceding application in the same family, the task would soon be overwhelming.  For example, in the case of the '774 and '038 patents, the examiner would have had to review 35 original claims, 8 added claims and 20 amended claims, then compare them, word-for-word, with the claims being prosecuted in the '774 application.  Imposing such a duty would make no sense, particularly as the ***applicant*** already has the information and has a duty to disclose ***all material facts relating to patentability.***[9]

    The Federal Circuit has confirmed explicitly that the duty is on ***the patentee*** – not the examiner -- to disclose such information, because the patentee is in the best position to know what has occurred throughout prosecution of its prior applications.  *See Dayco Prods. Inc. v. Total Containment, Inc.,* 329 F. 3d 1358, 1361-62 (Fed. Cir. 2003) (patentee's failure to disclose that pending claims were previously rejected in a related application met the threshold level of materiality); *see also Li Second Family LP v.*

---

1423, 1439 (Fed. Cir. 1984); *Critkon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997) ("This sentiment [that close cases should be resolved by disclosure] is also repeatedly reflected in the Manual of Patent Examining Procedure (MPEP), which, although it does not have the force of law, is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates.").

[9]  As another example, CK's '011 patent is a continuation of the '659 patent which is, in turn, a continuation of the '774 patent, which is a continuation of the '038 patent.  Under CK's theory of patent prosecution, the examiner of the '011 patent would have to compare the 1 originally filed, 150 added and 9 amended claims of that application to the 1 originally filed, 27 added and 2 amended claims of the '659 patent, 11 originally filed and 2 amended claims of the '774 patent, and the 35 originally filed, 8 added and 20 amended claims of the '038 patent, (a total of 106 claims to compare with the 160 claims of the '011 patent) **on a word for word basis** to determine if the claims were previously rejected.  As a practical matter examiners cannot – and are not – expected to undertake such a burdensome task, because the ***applicant*** has a duty to communicate this information.

*Toshiba Corp.*, 231 F.3d 1373, 1378 (Fed. Cir. 2000) (disclosure of related application was insufficient to disclose Board decision contrary to arguments applicant presented regarding priority date of application).

CK's central argument – that there can be no inequitable conduct in the continuation '774 application based on failure to disclose the rejection of identical claims in the parent '038 application because the '774 is a continuation – has been ***rejected*** by the only other district court to have considered the issue. *See Morton Grove Pharmaceuticals, Inc. v. Par Pharmaceuticals Co.*, No. 04-C-7007, 2006 WL 850873 (N.D. Ill. March 28, 2006). In *Morton Grove*, the patentee moved to dismiss claims of inequitable conduct, including the allegation that the patentee "failed to disclose to a new examiner the rejections made by the examiner in the parent case." *Id.* at * 7. The patentee made the ***same*** argument that CK makes in its motion – that the examiner of the continuation application had "access to the prosecution history of the parent application," and thus there could be no inequitable conduct. The *Morton Grove* court relied on Patent Civil Rule 37, C.F.R. 1.56, the MPEP and the Federal Circuit's *Dayco* decision, to reject this argument:

> [The patentee's] suggestion that the duty of disclosure to the PTO articulated in 37 C.F.R. 1.56 (information is material to patentability when it is not cumulative to information already of record or being made of record in the application) does not require it to disclose earlier rejections or references is erroneous. "***The individuals covered by 37 C.F.R. § 1.56 have a duty to bring to the attention of the examiner***, or other Office official involved with the examination of a particular application, information within their ***knowledge as to other copending United States applications which are material to patentability of the application in question***." MANUAL OF PATENT EXAMINATION PROCEDURE, 8th Ed., Rev. No. 2, § 2001.06(b). A contrary decision of another examiner reviewing substantially similar claims is material. *Id.* § 2004 ¶ 9; *see Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1365-69 (Fed. Cir. 2003).[10]

*Morton Grove*, 2006 WL 850873, at * 22.

Nothing in the file history of the '774 patent indicates that Examiner Philogene ever reviewed the prosecution history of the '038 patent rather than the issued '038 patent itself. In fact, the only

---

[10] The language of MPEP § 2001.06(b) has remained substantively unchanged since before the '774 application was filed. *See* MPEP, 6th Ed. (July 1996) § 2001.06(b); Declaration of Professor Lisa Dolak ¶ 27.

indications in the file history of the '774 patent are to the contrary.  In rejecting some claims over the *issued* '038 patent based on the judicially created doctrine of double patenting, Examiner Philogene stated that there was "no apparent reason why applicant was prevented from presenting claims corresponding to those of the instant application during prosecution of the application which matured into a patent," (i.e., the parent '038 patent).[11]  (SOF ¶ 25).  Had Examiner Philogene read the file history of the '038 patent and studied the claims therein, he would have known the claims before him ***had been presented and rejected*** in the '038 patent application.  His statement to the contrary confirms that he had not familiarized himself with that earlier file history, and of course he had no reason to do so given CK's duty to disclose.

CK's reliance on various sections of the MPEP (§§ 609, 707.05, and 2001.06(b)) is similarly misplaced.  While the examiner of a continuation application may be presumed to have reviewed the ***references*** made of record in the parent application, even this is subject to limitations.  For example, after reviewing the references cited in the parent application, the examiner of the continuation application is required to indicate in the first office action that those references have been reviewed. MPEP § 2001.06(b).  If that step is not taken, there can be no presumption that those references were considered by the examiner.  *Id.*  Here, of course, the issue is not ***references***.  What CK failed to disclose was that 6 ***claims*** had been rejected by a previous examiner, and then simply re-filed as a "second bite at the apple."  The sections of the MPEP on which CK relies have nothing to do with this issue.  (Dolak Decl. ¶¶ 19-28).[12]

Logically CK's position makes no sense.  If CK's arguments were adopted, prospective patentees could simply keep refiling rejected claims over and over again, never disclosing that they had already been rejected, hoping to slip them by a different examiner the next time around.  That kind of

---

[11] CK's reliance on this double patenting rejection as evidence that Examiner Philogene reviewed the '038 file history is misplaced.  That rejection established only that examiner Philogene reviewed the '038 patent and the claims *as issued*.
[12] Citations in the form of "Dolak Decl. ¶ )" refer to the Declaration of Professor Lisa Dolak In Support of TIR's Opposition to CK's Motion for Summary Judgment on Inequitable Conduct Issues and TIR's Cross Motion for Summary Judgment of Inequitable Conduct.

US1DOCS 5802788v4

cynical effort to manipulate the patent system – exactly what CK has done here – is utterly inconsistent with the patentee's duty to disclose.

**C.    CK's Concealment in the '774 Application of the Rejection of the Identical Claims of the '038 Application, and Misrepresentations Regarding the Patentability of its Claims, Are Material**

Prior to the 1992 amendment to the materiality definition contained in 37 C.F.R. § 1.56 ("Rule 56"), information was considered material "where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1314 (Fed. Cir. 2006).  Under the materiality standard set forth in Rule 56 as of 1992, material information includes that which "establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim" or "it refutes, or is inconsistent with, a position the applicant takes in…asserting an argument of patentability."  37 C.F.R. § 1.56 (2005).  (*See also* Dolak Decl. ¶ 15).  The Federal Circuit has recently clarified that for those applications prosecuted after 1992 (i.e., the applications at issue in this case), the materiality standard can be satisfied by *either* the pre-1992 "reasonable examiner" standard, *or* the post-1992 standards set forth in Rule 1.56 (or both).  *Digital Control*, 437 F.3d at 1316.

In *Dayco*, the Federal Circuit addressed **precisely** the issue now before this court in finding materiality.  In that case, as here, the patentee failed to disclose in an early application that substantially similar claims had already been rejected by another examiner in the parent application.  The Federal Circuit held that, ***as a matter of law,*** "[a] contrary decision of another examiner reviewing substantially similar claims" meets the threshold of "materiality" under both the "reasonable examiner" standard and new Rule 56 standards.  *Dayco Prods.*, 329 F.3d at 1367-68.

CK's conduct was even more egregious.  In *Dayco*, the claims were substantially similar.  Here, CK's claims were ***identical***.  Under *Dayco*, as a matter of law, CK had a duty to disclose to Examiner Philogene the contrary decision of the '038 patent examiner as material  information, and indisputably failed to fulfill that duty.

11

Further, CK submitted an amendment filed with a terminal disclaimer that contained the following misrepresentation:

> Claims 1, 4, 23, 24, 26, 27, and 34 are rejected under the judicially created doctrine of double patenting over claims 1, 3, 21, and 25 of U.S. Patent No. 6,016,038. Applicants submit herewith a terminal disclaimer to obviate this rejection.
>
> *Applicants believe that the above amendments and remarks place the present application in condition for allowance and request early notification to this effect.*

(SOF ¶27) (emphasis added)

CK professed its "belie[f]" that the claims were allowable even though another examiner considered the exact same claims to be unpatentable over the prior art. Because CK did not disclose the prior rejection in the '038 application, its representation that the identical claims were "in condition for allowance" constitutes a material misrepresentation. *See Li Second Family Partnership*, 231 F.3d at 1379 (because applicant failed to disclose a prior contrary decision from the Board of Patent Appeals, its repeated assertions that it was entitled to an earlier filing date "are properly characterized as affirmative misrepresentations.").

### D.    As A Matter Of Law Based On The Undisputed Facts, CK Intended To Deceive The Patent Office.

Summary judgment is "appropriate on the issue of intent if there has been a failure to supply highly material information and if the summary judgment record establishes that: (1) the applicant knew of the information; (2) the applicant knew or should have known of the materiality of the information; (3) the applicant has not provided a credible explanation for the withholding." *Ferring*, 437 F.3d at 1191. Because the undisputed record in this case establishes each of these prongs of the intent analysis, summary judgment of inequitable conduct and unenforceability is plainly warranted.

First, there can be no question that CK knew of the undisclosed information. The same inventors and the same prosecuting lawyers were involved in both the '038 and '744 applications. The two named inventors, Mueller and Lys, and the attorneys prosecuting the '774 application for CK,

12

including Messrs. Halstead, Cella and Mazzarese of the Foley, Hoag firm were aware that the claims it submitted in the continuation '774 application were identical to the claims that had been rejected in the '038 application.

Second, CK knew or should have known that such information relating to the rejection of identical claims over the prior art would have been considered material by a reasonable examiner, especially where that examiner had clearly reached a different conclusion about the same prior art:

> Patent disclosures are often very complicated, and different examiners with different technical backgrounds and levels of understanding may often differ when interpreting such documents. Although examiners are not bound to follow other examiners' interpretations, knowledge of a potentially different interpretation is clearly information that an examiner could consider important when examining an application.

*Dayco Prods.*, 329 F.3d at 1368.

The fact that CK knew or should have known of the materiality of the information – but affirmatively chose not to disclose – is also established by CK's failure to correct Examiner Philogene's mistaken belief that the pending claims had not been asserted in the '038 patent, and its misrepresentation that it "believe[d]" the claims in the '774 application were in a condition for allowance after submission of a Terminal Disclaimer. In making the double patenting rejection, Examiner Philogene stated that there was "no apparent reason why applicant was prevented from presenting claims corresponding to those of the instant application [the '774 application] during prosecution of the application which matured into a patent [the parent '038 patent application]." (SOF ¶ 25). CK knew full well that there was at least one "apparent reason" – the '038 examiner had concluded that 6 of those 11 claims were anticipated or rendered obvious by the prior art. Despite having this knowledge, CK failed to disclose that information.[13]

---

[13] CK later amended certain of the claims of the '774 application based on prior indefiniteness rejections of ***those same claims*** in the '038 application, yet still did not inform the examiner of the '774 patent that the claims had been previously rejected.

13

Third, CK does not – and indeed cannot – offer *any* credible explanation for its conduct, much less a good-faith explanation. Accordingly, the Court can properly draw an inference of deceptive intent. As articulated by the Federal Circuit:

> More importantly, [the patentee] has not proffered a credible explanation for the nondisclosure, and an inference of deceptive intent may fairly be drawn in the absence of such an explanation. Normally, it can be expected that an innocent party will be motivated to try to present convincing reasons for its actions or inaction. That did not occur here. Accordingly, we cannot assign clear error to the district court's inferential finding that [the patentee] intentionally withheld the Wecolator prior art in an attempt to mislead the USPTO.

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1354 (Fed. Cir. 2005).

CK did not submit *any* declaration or other evidence of good faith from the inventors and/or agents who prosecuted the '038 and '774 applications in support of its Motion for Summary Judgment of No Inequitable Conduct. Even more tellingly, CK has now filed a Motion for a Protective Order to prevent TIR from taking the noticed depositions of *any* of the prosecuting attorneys in this case, including those involved in the '038 and '774 applications. Having successfully hidden the truth from one patent examiner, CK now essentially admits that it has no good faith basis for its actions by trying to prevent TIR even from questioning the people who were involved in this prosecution. As the Federal Circuit held in *Ferring*, "when the movant 'has made a *prima facie* case of inequitable conduct by satisfying both elements thereof, the burden shift[s] to [the nonmovant] to come forward with evidence which would require reassessment of the validity of the defense." *Ferring*, 437 F.3d at 1192 (*quoting Paragon Podiatry*, 984 F.2d at 1191). CK cannot meet that burden, and summary judgment of inequitable conduct is warranted.

**E.    The High Degree of Materiality of CK's Omission and Misrepresentation Coupled with Evidence of Intent and the Absence of a Good Faith Explanation, Compels the Conclusion that Inequitable Conduct Was Committed during the Prosecution of the '774 Patent**

Once the threshold levels of materiality and intent are established, the Court must balance those two factors to determine whether the equities warrant a conclusion that inequitable conduct has

14

occurred. *Baxter Int'l.,* 149 F.3d at 1327. The more material the omission and misrepresentation, the less evidence of intent required to find inequitable conduct and hold the patent unenforceable and vice versa. *Id.* Where, as here, there is a strong showing of both materiality and intent to deceive, summary judgment of unenforceability is warranted. *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1380 (Fed. Cir. 2006) (holding that no express and detailed balancing analysis is required by trial court where there are high levels of both materiality and intent).

### F.     CK's Unclean Hands in Obtaining the '774 Patent Infects All of the Patents-In-Suit, Rendering Each of them Unenforceable

The Federal Circuit has repeatedly held that "a breach of the duty of candor early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." *Fox Indus., Inc. v. Structural Preservation Sys., Inc.*, 922 F.2d 801, 805-806, 812 (Fed. Cir. 1990); *see also* Agfa, 451 F.3d at 1379 (affirming infection of related application where there was no evidence that the claims of the related patent were sufficiently distinct from the patent in which the inequitable conduct occurred); *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 811-12 (Fed. Cir. 1990) (holding a total of four related patents unenforceable where the claims were sufficiently related); *Baxter Int'l.*, 149 F.3d at 1332 (reversing a finding of infection because the related patent was a divisional and thus the claims were necessarily sufficiently different).

The reason for this rule is simple. The duty of candor, which is required throughout the patent's entire prosecution history, is designed to protect the integrity of the U.S. patent system by placing an affirmative duty of disclosure on the applicant, the person in the best position to know what information is material to the patentability of the claims. Failure to disclose this critical information results in the granting of bad patents and completely undermines the system. For this reason, the penalty for noncompliance – unenforceability of the patent – is severe.

As the courts have said, inequitable conduct is "no more than the unclean hands doctrine applied to particular conduct before the PTO." *Consolidated Aluminum*, 910 F.2d at 812. Because the patent

15

system rewards innovation with a valuable limited monopoly, it is necessary to deter those who would procure that monopoly through unfair means. This is done, in part, by rendering these patents unenforceable, so that the patentee loses its monopoly.

But it is often possible for a patentee to obtain multiple patents with similar claims – claims that differ in scope to some extent, but cover the same basic invention. In such a case, rendering a single patent unenforceable has no real effect on the patentee, who can simply rely on another patent to enforce its monopoly. In response, the Federal Circuit has looked to the doctrine of "infection" to address this inequitable result. Under that doctrine, copending or later-pending related patents with similar claims are also rendered unenforceable. As articulated by the Federal Circuit, "[c]laims are not born, and do not live, in isolation. Each is related to other claims, to the specification and drawings . . . and to earlier or later versions of itself in light of amendments made to it." *Fox Indus.,* 922 F.2d at 805, 812. (*quoting Kingsdown Medical Consultants Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988). The touchstone of the infection doctrine is the similarity of the claims in the related patents. *See Fox Indus.*, 922 F.2d at 812; *Agfa*, 451 F.3d at 1379; *Baxter Int'l.*, 149 F.3d at 1332; *Consolidated Aluminum,* 910 F.2d at 811-12.

In this case, CK obtained the '774 patent by re-filing claims from the '038 application in the '774 application without ever informing the Examiner that those claims had been previously rejected over prior art. (SOF ¶¶ 18, 22). CK, in effect, continued the prosecution of the '038 application in the '774 application. In this respect, the prosecution of the '038 and '774 patents are intimately related. In fact, the USPTO determined that the '038 and '774 patents had such similar claims that it required the applicants to file a terminal disclaimer in the '774 patent declaring that the two patents' terms be coextensive.

Significantly, all of the patents-in-suit are related, and all were pending at the time of or after the inequitable conduct committed in the '774 patent. (SOF ¶ 2, 36). Even more significantly, all of the patents-in-suit have substantially similar claims directed to multicolor LED devices controlled by

16

microprocessors and methods of illumination using such LEDs.  (SOF ¶ 4).  Specifically, all of the

patents-in-suit claim the same basic invention – LEDs with controllers to regulate their intensity.  (SOF

¶ 4).  The patents also overlap in other specific features (many of which were cited by Examiner Lee as

being taught by Hamomoto and Phares when rejecting the pending claims in the '038 application), such

as pulse width modulation to regulate the intensity of illumination (the '038, '774, '659, '079 and '011

patents), switches to perform pulse width modulation (the '038, '774 and '659 patents), timing means to

perform pulse width modulation (the '038 and '774 patents), a user or network interface (the '038, '774,

'659, '079 and '011 patents), and power terminals to provide a power connection to the LEDs (the '038,

'774 and '659 patents).  (SOF ¶¶ 5, 6).  Based on these undisputed facts, the inequitable conduct

committed in the '774 patent is related to the claims of every other patent-in-suit and, as such, infects

those patents.  *See Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804 (Fed. Cir. 1990);

*see also* ("[A]"); *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (affirming

infection of related application where the claims of the related patent were not sufficiently distinct from

the patent in which the inequitable conduct occurred).

## IV.    CK'S MOTION FOR SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT MUST BE DENIED

Summary judgment must be denied where there are questions of material fact or the movant is

not entitled to judgment in its favor as a matter of law.  Fed. R. Civ. P. 56(c).  CK's motion for summary

judgment of no inequitable conduct amounts to little more than a motion to dismiss for failure to state a

claim based on CK's repeated assertion that TIR's inequitable conduct claims revolve around failure to

disclose prior art in continuation applications that had been previously disclosed in parent applications.

(*See, e.g,* CK Memo. at 1, 10, 11, 14).  However, ***none*** of TIR's inequitable conduct allegations rely on

this premise, and thus CK's motion is completely unrelated to the actual claims of inequitable conduct

that TIR asserts here.

TIR has explained above why TIR, not CK, is entitled to summary judgment of unenforceability

17

associated with CK's failure to disclose the previous rejections of its claims in the '774 application. This is, however, not the only act of inequitable conduct that TIR has identified and described in detail in its amended answer.[14]  For example, in prosecuting U.S. Patent No. 6,340,868 (the "'868 patent"), issued claim 1 was amended to limit the color spectrum to green, blue or violet to overcome a rejection that the claim was anticipated made in a related, co-pending application, U.S. Patent No. 6,211,626 (the "'626 patent").  (SDF ¶ 29).[15]  The claim was subsequently rejected over the same prior art and other art. (SDF ¶ 29).  In an interview with the examiner, CK argued that the prior art could be distinguished by adding a limitation to a connector that couples a power module to a light module, namely that it is "removable and replaceable."  (SDF ¶ 29).  CK then submitted a new claim including this limitation, but removed the limitation to a green, blue or violet color spectrum.  CK failed to inform the examiner that this limitation was removed, misrepresented that the claim was in condition for allowance, and the claim was allowed.  (SDF ¶ 29).  The allowed claim was nearly identical to the claim that was originally rejected in the '626 application.  (SDF ¶ 29).

In sum, *none* of TIR's inequitable conduct allegations concern CK's failure to cite prior art in continuation applications that had been previously cited in parent applications, which is the sole subject of CK's motion.  Moreover, on the one hand CK cites as support for its motion a lack of evidence of CK's intent to deceive the USPTO and argues that good faith explanations must be considered, (CK Memo. at 16-17) while on the other hand CK has filed for summary judgment in the middle of fact discovery and also filed a protective order to prevent TIR from deposing the prosecuting attorneys

---

[14] Rule 56(f) "provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).  Where a summary judgment motion is filed "early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." *Burlington N. & Santa Fe Ry. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003); *see also Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) ("Although Rule 56(f) facially gives judges the discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the non-moving party has not had the opportunity to discover information that is essential to its opposition.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)).  Indeed, a Rule 56(f) continuance "should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Burlington N. & Santa Fe Ry.*, 323 F.3d at 773-74 (quoting *Wichita Falls Office Assoc. v. Banc One Corp.*, 978 F.2d 915, 919 n.4 (5th Cir. 1992)).
[15] References to "SDF ¶" refer to TIR's Statement of Disputed Facts In Support of its Opposition to CK's Motion for Summary Judgment.

18

involved.  TIR should be permitted to take additional discovery on intent, if the Court determines the evidence of intent presented is insufficient.  *See* Rule 56(f) Declaration of Alexandra McTague. Accordingly, CK's motion for summary judgment completely misconstrues TIR's claims and should be denied.

## V.    IF THIS COURT RULES THAT THERE ARE ISSUES OF FACT RELATING TO ANY ELEMENTS OF DEFENDANT'S INEQUITABLE CONDUCT DEFENSE, TIR MOVES TO BIFURCATE AND FIRST TRY THE INEQUITABLE CONDUCT ISSUES

Should the Court find that any issue of fact is sufficient to deny TIR's motion for summary judgment of unenforceability due to inequitable conduct, TIR moves for a separate and initial trial on inequitable conduct issues prior to proceeding to expert discovery and trial on validity, infringement, and damages.  The Federal Circuit has made clear that under Fed. R. Civ. P. 42(b), "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management.  It may, therefore, order a trial on unenforceability separate from an infringement trial that may involve an invalidity defense."  *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1211 (Fed. Cir. 1987).

In this district, courts have recognized that inequitable conduct must be decided by the court , including adjudicating the discrete issues of materiality and intent, and the legal issue of whether patents and their claims are related for infection purposes.  Accordingly, at least two judges in this district have concluded that inequitable conduct claims should be tried to the court ***prior*** to the vastly more complicated, expensive and time-consuming trial on the validity, infringement and damages issues.   For example, in *Agfa Corp. v. Creo Prods. Inc.*, No. 00-10836-GAO, 2004 U.S. Dist. LEXIS 16716 at \*3 (D. Mass. Aug. 24, 2004), *aff'd* 451 F.3d 1366 (Fed. Cir. 2006), Judge O'Toole denied a motion for summary judgment of inequitable conduct because of fact issues, but ordered bifurcation and an initial trial on that issue only.  *See also Hewlett-Packard Co. v. Genrad, Inc.*, 882 F.Supp. 1141 (D. Mass 1995) (granting motion to bifurcate patent issues from antitrust issues because patent issues were less complicated and inequitable conduct counterclaims could render antitrust issues moot).

19

Bifurcation and trial of the inequitable conduct issues first would be particularly appropriate in this case. First, the inequitable conduct issues are discrete and can be quickly and easily tried to the Court. The issues of infringement, validity and damages will, by contrast, require a jury trial involving eight separate patents, seven accused products and almost 100 patent claims. There would be no point in conducting such a long, expensive and complex patent jury trial if some or all of the asserted patents are unenforceable due to inequitable conduct. Accordingly, it makes sense to try those issues first. Since inequitable conduct will be decided in any event separately by the Court, this phasing of the trial is the most economic and efficient way to proceed.

## VI.     CONCLUSION

For the reasons stated above and in TIR's accompanying supporting papers, TIR respectfully requests that the Court: (1) deny CK's Motion for Summary Judgment of No Inequitable Conduct in its entirety; (2) grant TIR's Motion for Summary Judgment of Inequitable Conduct and rule that the patents-in-suit are each unenforceable; and (3) if the Court does not grant TIR's Motion for Summary Judgment in its entirety, grant TIR's motion to bifurcate and try the remaining issues relating to inequitable conduct before expert discovery and trial on the issues of validity and infringement.

Dated: September 1, 2006                      Respectfully submitted,


                                              WILMER CUTLER PICKERING
                                                HALE AND DORR LLP


                                              /s/  Calvin Walden
                                              Mark G. Matuschak (BBO #543873)
                                              mark.matuschak@wilmerhale.com
                                              Wendy Haller Verlander (BBO #652943)
                                              wendy.verlander@wilmerhale.com
                                              Christopher R. Noyes (BBO #654324)
                                              christopher.noyes@wilmerhale.com
                                              60 State Street
                                              Boston, MA 02109
                                              Telephone: 617-526-6000

20

S. Calvin Walden (admitted <u>pro hac vice</u>)
<u>calvin.walden@wilmerhale.com</u>
Alexandra McTague (admitted <u>pro hac vice</u>)
<u>alexandra.mctague@wilmerhale.com</u>
399 Park Avenue
New York, NY 10021
Telephone: 212-937-7200

Attorneys for Defendant
TIR SYSTEMS LTD.

21

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that I have conferred with opposing counsel and have attempted in good faith, but without success, to resolve or narrow the issues presented in the motion.

Dated: September 1, 2006                 _____/s/ Alexandra McTague_____

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this motion and the attached Exhibits to be served, by CM/ECF, on the following counsel of record:

Matthew B. Lowrie
Aaron W. Moore
Emily A. Berger
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street
Cambridge, MA 02142

Dated: September 1, 2006                 _____/s/ Alexandra McTague___