UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CK INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:03-cv-12491-MEL |
| ) | |
| TIR SYSTEMS LTD, ) | |
| ) | |
| Defendant. ) | |

**DECLARATION OF PROFESSOR LISA DOLAK IN SUPPORT OF DEFENDANT TIR SYSTEMS LTD.'S OPPOSITION TO CK'S MOTION FOR SUMMARY JUDGMENT ON INEQUITABLE CONDUCT ISSUES AND CROSS MOTION FOR SUMMARY JUDGMENT OF INEQUITABLE CONDUCT**

I, Lisa A. Dolak, declare:

**I.    Introduction**

1.    I have been retained as an expert in this case by Defendant TIR Systems, Ltd. ("TIR").

2.    I make this declaration in support of TIR's Motion Opposition to CK's Motion for Summary Judgment on Inequitable Conduct Issues and Cross Motion for Summary Judgment of Inequitable Conduct.

**II.    Qualifications**

3.    I am currently a Professor of Law and Senior Associate Dean for Academic Affairs at Syracuse University College of Law.  From August 1999 to August 2005 I was an Associate Professor, and from August 1995 to August 1999 I was an Assistant Professor of Law, also at Syracuse University College of Law.

1

4.      During my tenure at Syracuse University College of Law I have taught courses on patent law, patent prosecution, federal courts, federal civil procedure, and internet law.

5.      From August 2003 to July 2004 I took a sabbatical from teaching at Syracuse University College of Law to serve as a law clerk to the Honorable Paul F. Michel of the United States Court of Appeals for the Federal Circuit.

6.      I have written and presented extensively on aspects of patent law practice, including inequitable conduct. My *Curriculum Vitae* is attached as Exhibit 1.

7.      I graduated from Duquesne University, Pittsburgh, Pennsylvania, in 1983 with Bachelor's of Science degree in Chemistry. I received a Juris Doctor degree from Syracuse University College of Law in 1988, where I graduated *summa cum laude* and first in my class.

8.      Prior to becoming a professor, I worked as an associate at the firm of Nixon, Hargrave, Devans & Doyle, where I was involved in all aspects of patent practice including prosecution, opinion letters, litigation, interference practice, and appeals.

9.      During the course of my professional career I have become familiar with Title 37 of the Code of Federal Regulations (hereinafter "CFR") and the Manual of Patent Examining Procedure (hereinafter "MPEP").

10.     I have been asked by counsel for TIR to explain my understanding of the rules and procedures for practicing before the United States Patent and Trademark Office (hereinafter "USPTO") that applied during prosecution of the applications that led to the CK patents-in-suit, including how to comply with the duty of candor under 37 C.F.R. § 1.56.

11.     I have agreed to be compensated for my time in the above referenced action at a rate of $450 per hour. I have received no additional compensation for my work on this action and I have no financial interest in its outcome.

2

**III.     Patent Office Procedure**

*The Duty of Disclosure*

12.     The process for obtaining a U.S. patent is an administrative process that follows the policies of the USPTO as reflected in the MPEP.  USPTO Examiners receive instructions from and are authorized to act in accordance with the MPEP. *See* Forward to the MPEP, 8th ed., August 2005. (McTague Decl. Ex. L).

13.     During the 1997-2005 time frame, each individual associated with the preparation or prosecution of a patent application owed a duty of candor and good faith to the USPTO as that duty was codified in the Rules of Practice before the USPTO.

14.     37 CFR § 1.56(a) states the following:

(a)  A patent by its very nature is affected with a public interest.  The public interest is best served, and the most effective patent examination occurs when, at the time an application is being examined, the Office is aware of and evaluates the teachings of all information material to patentability.

Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section.

The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. . . .

The duty to disclose all information known to be material to patentability is deemed to be satisfied if all information known to be material to patentability of any claim issued in a patent was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98.  However, no patent will be granted on an application in connection with which fraud on the Office was practiced or attempted or the duty of disclosure was violated through bad faith or intentional misconduct.

(McTague Decl. Ex. C).

15. Since 1992, the term "material to patentability" has been defined in 37 CFR § 1.56(b) as follows:

> (b) Under this section, information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and
>
> > (1) It establishes, by itself or in combination with other information, a *prima facie* case of unpatentability of a claim; or
> >
> > (2) It refutes, or is inconsistent with, a position the applicant takes in:
> > > (i) Opposing an argument of unpatentability relied on by the office, or
> > >
> > > (ii) Asserting an argument of patentability.
>
> A *prima facie* case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence burden-of-proof standard giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

(McTague Decl. Ex. C).

16. 37 C.F.R. § 1.56(c) establishes who has a duty to disclose, namely, individuals associated with the filing or prosecution of a patent application: (1) each inventor named in the application; (2) each attorney or agent who prepares or prosecutes the application; and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application. (McTague Decl. Ex. C).

17. While it is not law, section 2004 of the MPEP (8th ed., 2005) provides a number of suggested procedures for satisfying this duty of disclosure, including the following (McTague Decl. Ex. J):

- an attorney or agent should make certain that the inventor recognizes his or her responsibilities in signing the oath or declaration by informing him or her of their duty of disclosure (Section 2004.4)

- an agent/inventor should consider information in relation to the broadest claims (Section 2004.5)

- prior art or other information should be properly described (Section 2004.7)

- do not rely on the Examiner to be aware of co-pending applications (Section 2004.9)

- when in doubt, it is desirable and safest to submit information (Section 2004.10)

- submit information promptly. Potentially material information discovered late in the prosecution should be immediately submitted. (Section 2004.12)

- ensure that individuals fulfill their duty of disclosure (Section 2004.17)

- keep a paper record of why information deemed not material is not filed (Section 2004.18)

18.     Section 2004 of the MPEP contained the same suggested procedures for satisfying this duty of disclosure in 1996 as it does today. (McTague Decl. Ex. K).

*The Examiner's Duty in Continuing Applications*

19.     MPEP § 609 is entitled "Information Disclosure Statement." MPEP § 609.02 is entitled "Information Disclosure Statements in Continued Examinations or Continuing Applications." Subsection A of MPEP § 609.02 is entitled "IDS That Has Been Considered (1) in the Parent Application, or (2) Prior to the Filing of a Request for Continued Examination (RCE)." Part 2 of Subsection A is entitled "Continuation Applications, Divisional Applications, or Continuation-In-Part Applications Filed Under 37 CFR 1.53(b)." (McTague Decl. Ex. D).

20.     MPEP § 609.02(A)(2) (8th ed. August 2005) states:

The examiner will consider information which has been considered by the Office in a parent application when examining (A) a continuation application filed under 37 CR 1.53 (b) . . . or (C) a continuation-in-part application filed under 37 CFR 1.53(b). A listing of the information need

5

>not be resubmitted in the continuing application unless the applicant desires the information to be printed on the patent.

(McTague Decl. Ex. D).

21. Although MPEP § 609.02(A)(2) refers generally to "information" considered by the Office in a parent application, the titles of sections 609, 609.02 and 609.02(A) all indicate that the section applies only to information disclosed in an information disclosure statement. MPEP § 609 (8th ed. 2005) does not require the examiner of a continuing or continuation-in-part application to review the file history of the parent application, including the claims as filed or any rejections of, or amendments to the claims.

22. The 1996 version of MPEP § 609 contained similar language to the 2005 version, stating that, "[t]he examiner will consider information cited or submitted to the Office in a prior application relied on under 35 U.S.C. 120." (McTague Decl. Ex. E). Continuing and continuation-in-part applications rely on prior applications under 35 U.S.C. § 120.

23. The 1996 version of MPEP § 609 also did not required the examiner of a continuing or continuation-in-part application to review the file history of the parent application, including the claims as filed or any rejections of, or amendments to, the claims.

24. MPEP § 707.05 (8th ed. 2005), entitled "Citation of References," provides, in relevant part, "[i]n all continuation and continuation-in-part applications, the parent applications should be reviewed for pertinent prior art." (McTague Decl. Ex. F). MPEP § 707.05 (8th ed. 2005) does not require the examiner of continuation or continuation-in-part applications to review the parent applications for anything other than prior art.

25. MPEP § 707 as written in 1996 also did not require the examiner of continuation or continuation-in-part applications to review the parent applications for anything other than prior art. (McTague Decl. Ex. G).

26.     MPEP § 2001.06(b), entitled "Information relating to or From Copending United States Patent Applications," states that individuals should bring the existence of copending applications material to patentability to the attention of the examiner (McTague Decl. Ex. H):

> The individuals covered by 37 CFR 1.56 have a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other copending United States applications which are "material to patentability" of the application in question. As set forth by the court in *Armour & Co. v. Swift & Co.*, 466 F.2d 767, 779, 175 USPQ 70, 79 (7th Cir. 1972):
>
>> [W]e think that it is unfair to the busy examiner, no matter how diligent and well informed he may be, to assume that he retains details of every pending file in his mind when he is reviewing a particular application . . . . [T]he applicant has the burden of presenting the examiner with a complete and accurate record to support the allowance of letters patent.
>
> See also MPEP § 2004, paragraph 9.
>
> Accordingly, the individuals covered by 37 CFR 1.56 cannot assume that the examiner of a particular application is necessarily aware of other applications which are "material to patentability" of the application in question, but must instead bring such other applications to the attention of the examiner. See *Dayco Prod., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1365-69, 66 USPQ2d 1801, 1806-08 (Fed. Cir. 2003). For example, if a particular inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed to the examiner of each of the involved applications. Similarly, the prior art references from one application must be made of record in another subsequent application if such prior art references are "material to patentability" of the subsequent application. See *Dayco Prod.,* 329 F.3d at 1369, 66 USPQ2d at 1808.
>
> If the application under examination is identified as a continuation, divisional, or continuation-in-part of an earlier application, the examiner will consider the prior art cited in the earlier application. See MPEP § 609. The examiner must indicate in the first Office action whether the prior art in a related earlier application has been reviewed. Accordingly, no separate citation of the same prior art need be made in the later application.

27.     The only substantive difference between § 2001.06 as written today and § 2001.06 as written in 1996 is the addition of the citation to *Dayco Prod., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1365-69, 66 USPQ2d 1801, 1806-08 (Fed. Cir. 2003).

28.     MPEP § 2001.06 requires that those subject to the duty of disclosure (e.g. applicants and prosecuting attorneys) disclose the existence of related applications and information concerning those applications to the examiners, to the extent such information is material to patentability.  § 2001.06 reiterates that the examiner is expected to review prior art of an earlier application, but gives no indication that the examiner is expected to review the file history of the parent or other related applications.

I declare under the penalty of perjury that the foregoing is true and correct

Dated: September 1, 2006

_____
Professor Lisa A. Dolak, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that today I caused a true and correct copy of the foregoing declaration of Professor Lisa Dolak, Esq. to be served, by CM/ECF, on the following counsel of record:

>Matthew B. Lowrie
>Aaron W. Moore
>Emily A. Berger
>Lowrie, Lando & Anastasi, LLP
>Riverfront Office Park
>One Main Street
>Cambridge, MA 02142

Dated: September 1, 2006                                            ____/s/ Alexandra McTague____