# Exhibit K

MANUAL OF PATENT EXAMINING PROCEDURE

**2002**

patent and the numbers of the patent claims. Failure to comply with 37 CFR 1.607(c) may result in the issuance of a requirement for information as to why an identification of the source of the copied claims was not made. Clearly, the information required by 37 CFR 1.607(c) as to the source of copied claims is material information under 37 CFR 1.56 and failure to inform the PTO of such information may violate the duty of disclosure.

## 2002    Disclosure — By Whom and How Made

*37 CFR 1.56. Duty to disclose information material to patentability.*

*****

(d) Individuals other than the attorney, agent or inventor may comply with this section by disclosing information to the attorney, agent, or inventor.

### 2002.01  By Whom Made

37 CFR 1.56(d) makes clear that information may be disclosed to the Office through an attorney or agent of record or through a *pro se* inventor, and that other individuals may satisfy their duty of disclosure to the Office by disclosing information to such an attorney, agent, or inventor who then is responsible for disclosing the same to the Office. Information that is not material need not be passed along to the Office.

### 2002.02  Must be in Writing

It is clear that the disclosures under 37 CFR 1.56 must be in writing as prescribed by 37 CFR 1.2 which requires that

[a]ll business with the Patent and Trademark Office should be transacted in writing. ***The action of the . . . Office will be based exclusively on the written record in the Office.

Further, as provided in 37 CFR 1.4(b),

Since each application file should be complete in itself, a separate copy of every paper to be filed in an application should be furnished for each application to which the paper pertains, even though the contents of the papers filed in two or more applications may be identical.

## 2003   Disclosure — When Made

In reissue applications, applicants are encouraged to file information disclosure statements at the time of filing or within 2 months of filing, since reissue applications are taken up "special": see MPEP § 1442 and § 1442.03. However, in a reissue where waiver of the normal 2 month delay period of 37 CFR 1.176 is being requested (see MPEP § 1441), the statement should be filed at the time of filing the application, or as soon thereafter as possible.

The presumption of validity is generally strong when prior art was before and considered by the Office and weak when it was not: *Bolkcom* v. *Carborundum Co.*, 523 F.2d 492, 498 186 USPQ 466, 471, 472 (6th Cir. 1975).

## 2003.01  Disclosure After Patent Is Granted

### BY CITATIONS OF PRIOR ART UNDER 37 CFR 1.501

Where a patentee or any member of the public (including private persons, corporate entities, and government agencies) has prior patents or printed publications which the patentee or member of the public desires to have made of record in the patent file, patentee or such member of the public may file a citation of such prior art with the Patent and Trademark Office pursuant to 37 CFR 1.501. Such citations and papers will be entered without comment by the Office. The Office does not of course consider the citation and papers but merely places them of record in the patent file. Information which may be filed under 37 CFR 1.501 is limited to prior art patents and printed publications. Any citations which include items other than patents and printed publications will not be entered in the patent file. See MPEP § 2202 through § 2206.

### BY REEXAMINATION

Where any person, including patentee, has prior art patents and/or printed publications which said person desires to have the Patent and Trademark Office consider after a patent has issued, such person may file a Request for Reexamination of the patent (see 37 CFR 1.510 and MPEP § 2209 through § 2220).

## 2004   Aids to Compliance With Duty of Disclosure [R−2]

While it is not appropriate to attempt to set forth procedures by which attorneys, agents, and other individuals may ensure compliance with the duty of disclosure, the items listed below are offered as examples of possible procedures which could help avoid problems with the duty of disclosure. Though compliance with these procedures may not be required, they are presented as helpful suggestions for avoiding duty of disclosure problems.

## DUTY OF DISCLOSURE

1. Many attorneys, both corporate and private, are using letters and questionnaires for applicants and others involved with the filing and prosecution of the application and checklists for themselves and applicants to ensure compliance with the duty of disclosure. The letter generally explains the duty of disclosure and what it means to the inventor and assignee. The questionnaire asks the inventor and assignee questions about

— the origin of the invention and its point of departure from what was previously known and in the prior art,

— possible public uses and sales,

— prior publication, knowledge, patents, foreign patents, etc.

The checklist is used by the attorney to ensure that the applicant has been informed of the duty of disclosure and that the attorney has inquired of and cited material prior art.

The use of these types of aids would appear to be most helpful, though not required, in identifying prior art and may well help the attorney and the client avoid or more easily explain a potentially embarrassing and harmful "fraud" allegation.

2. It is desirable to ask questions about inventorship. Who is the proper inventor? Are there disputes or possible disputes about inventorship? If there are questions, call them to the attention of the Patent and Trademark Office.

3. It is desirable to ask questions of the inventor about the disclosure of the best mode. Make sure that the best mode is described. The disclosure of the best mode may be raised in litigation. See, for example, Carlson "The Best Mode Disclosure Requirement in Patent Practice", Vol. 60, Journal of the Patent Office Society, page 171 (1978).

4. It is desirable for an attorney or agent to make certain that the inventor, especially a foreign inventor, recognizes his or her responsibilities in signing the oath or declaration. Note that 37 CFR 1.69 requires that,

*37 CFR 1.69. Foreign language oaths and declarations.*

(a) Whenever an individual making an oath or declaration cannot understand English, the oath or declaration must be in a language that such individual can understand and shall state that such individual understands the content of any documents to which the oath or declaration relates.

• • • • •

Note MPEP § 602.06 for a more detailed discussion.

5. It is desirable for an attorney or agent to carefully evaluate and explain to the applicant and others involved the scope of the claims, particularly the broadest claims. Ask specific questions about possible prior art which might be material in reference to the broadest claim or claims. There is some tendency to mistakenly evaluate prior art in the light of the gist of what is regarded as the invention or narrower interpretations of the claims, rather than measuring the art against the broadest claim with all of its reasonable interpretations. It is desirable to pick out the broadest claim or claims and measure the materiality of prior art against a reasonably broad interpretation of these claims.

6. It may be useful to evaluate the materiality of prior art or other information from the viewpoint whether it is the closest prior art or other information. This will tend to put the prior art or other information in better perspective. However, 37 CFR 1.56 may still require the submission of prior art or other information which is not as close as that of the record.

7. Care should be taken to see that prior art or other information cited in a specification or in an information disclosure statement is properly described and that the information is not incorrectly or incompletely characterized. It is particularly important for an attorney or agent to review, before filing, an application which was prepared by someone else; e.g., a foreign application. It is also important that an attorney or agent make sure that foreign clients, including foreign applicants, attorneys, and agents understand the requirements of the duty of disclosure, and that the U.S. attorney or agent review any information disclosure statements or citations to ensure that compliance with 37 CFR 1.56 is present. See *Gemveto Jewelry Company, Inc.* v. *Lambert Bros., Inc.,* 216 USPQ 976 (S.D. N.Y. 1982) wherein a patent was held invalid or unenforceable because patentee's foreign counsel did not disclose to patentee's United States counsel or to the Office prior art cited by the Dutch Patent Office in connection with the patentee's corresponding Dutch application. The Court stated, 216 USPQ at 985,

Foreign patent attorneys representing applicants for U.S. patents through local correspondent firms surely must be held to the same standards of conduct which apply to their American counterparts; a double standard of accountability would allow foreign attorneys and their clients to escape responsibility for fraud or

Rev. 2, July 1996

inequitable conduct merely by withholding from the local correspondent information unfavorable to patentability and claiming ignorance of United States disclosure requirements.

8. Care should be taken to see that inaccurate statements or inaccurate experiments are not introduced into the specification, either inadvertently or intentionally. For example, stating that an experiment "was run" or "was conducted" when in fact the experiment was not run or conducted is a misrepresentation of the facts. No results should be represented as actual results unless they have actually been achieved. Paper examples should not be described using the past tense. See MPEP § 608.01(p) item D and § 707.07(l). Also, misrepresentations can occur when experiments which were run or conducted are inaccurately reported in the specification; e.g., an experiment is changed by leaving out one or more ingredients. See *Steierman* v. *Connelly*, 192 USPQ 433 (* Bd. * Pat. Int. 1975); 192 USPQ 446 (* Bd. * Pat. Int. 1976).

9. Do not rely on the examiner of a particular application to be aware of other applications belonging to the same applicant or assignee. It is desirable to call such applications to the attention of the examiner even if there is only a question that they might be "material to patentability" of the application the examiner is considering. It is desirable to be particularly careful that prior art or other information in one application is cited to the examiner in other applications to which it would be material. Do not assume that an examiner will necessarily remember, when examining a particular application, other applications which the examiner is examining, or has examined. See *Armour & Co.* v. *Swift & Co.*, 175 USPQ 70, 79 (7th Cir. 1972); *Kangaroos U.S.A., Inc.* v. *Caldor, Inc.*, 222 USPQ 703, 708, 713− 714 (S.D. N.Y. 1984).

While vacating the summary judgment and remanding for trial in *Kangaroos*, the Court, 228 USPQ 32 (Fed. Cir. 1985) stated at page 35 that a "lapse on the part of the examiner does not excuse the applicant."

10. When in doubt, it is desirable and safest to submit information. Even though the attorney, agent, or applicant doesn't consider it necessarily material, someone else may see it differently and embarrassing questions can be avoided. The court in *U.S. Industries* v. *Norton Co.*, 210 USPQ 94, 107 (N.D. N.Y. 1980) stated "In short, the question of relevancy in close cases, should be

left to the examiner and not the applicant." See also *Labounty Mfg., Inc.* v. *U.S. Int'l Trade Comm.*, 958 F.2d 1066, 22 USPQ 2d 1025 (Fed. Cir. 1992).

11. It may be desirable to submit information about prior uses and sales even if it appears that they may have been experimental, not involve the specifically claimed invention, or not encompass a completed invention. Note *Hycor Corp.* v. *The Schleuter Co.*, 740 F.2d 1529, 222 USPQ 553, 557−559 (Fed. Cir. 1984). See also *Labounty Mfg., Inc.* v. *U.S. Int'l Trade Comm.*, 958 F.2d 1066, 22 USPQ 2d 1025 (Fed. Cir. 1992).

12. Submit information promptly. An applicant, attorney, or agent who is aware of prior art or other information and its significance should submit same early in prosecution; e.g., before the first action by the examiner, and not wait until after allowance. Potentially material information discovered late in the prosecution should be immediately submitted. That the issue fee has been paid is no reason or excuse for failing to submit information. See *Elmwood Liquid Products, Inc.* v. *Singleton Packing Corp.*, 170 USPQ 398 (M.D. Fla. 1971).

13. It is desirable to avoid the submission of long lists of documents if it can be avoided. Eliminate clearly irrelevant and marginally pertinent cumulative information. If a long list is submitted, highlight those documents which have been specifically brought to applicant's attention and/or are known to be of most significance. Note *Penn Yan Boats, Inc.* v. *Sea Lark Boats, Inc.*, 359 F. Supp. 948, 175 USPQ 260 (S.D. Fla. 1972), aff'd, 479 F.2d 1338, 178 USPQ 577 (5th Cir. 1973), cert. denied 414 U.S. 874 (1974).

14. Watch out for continuation−in−part applications where intervening material information or documents may exist; particularly watch out for foreign patents and publications related to the parent application and dated more than 1 year before the filing date of the CIP. These and other intervening documents may be material information: *In re Ruscetta*, 118 USPQ 101, 104 (C.C.P.A. 1958); *In re von Lagenhoven*, 458 F.2d 132, 173 USPQ 426 (C.C.P.A. 1972); *Chromalloy American Corp.* v. *Alloy Surfaces Co.*, Inc., 339 F. Supp. 859, 173 USPQ 295 (D. Del. 1972).

15. Watch out for information that might be deemed to be prior art under Section 102(f) and (g).

Prior *>art< under 35 U.S.C. 102(f) may be combined with 35 U.S.C. 103; see *Corning Glass Works v. Schuyler*, 169 USPQ 193 (D.D.C. 1971), aff'd in *Corning Glass Works v. Brenner*, 175 USPQ 516, (D.C. Cir. 1975)

where the District Court adopted defendant's post trial memorandum on 35 U.S.C. 102(f) and 103; *Halliburton v. Dow Chemical*, 182 USPQ 178, 186 (N.D.Okla. 1974); *Dale Electronics v. R.C.L. Electronics*, 180 USPQ 225 (1st Cir. 1973) and, *Ex parte Andresen*, 212 USPQ 100 (Bd. App. 1981).

Note also that prior invention under 35 U.S.C. 102(g), may be combined with 35 U.S.C. 103, such as in *In re Bass*, 474 F.2d 1276, 177 USPQ 178 (C.C.P.A. 1973).

Note 35 U.S.C. 103 >(c)<** disqualifies 35 U.S.C. 102(f)/103 or 102(g)/103 prior art which was, at the time the second invention was made, owned by or subject to an obligation of assignment to, the person who owned the first invention*>.< See 1050 O.G. 316.

16. Watch out for information picked up by the inventors and others at conventions, plant visits, in—house reviews, etc.; see, for example, *Dale Electronics, Inc. v. R.C.L. Electronics, Inc.*, 180 USPQ 225, 228 (1st Cir. 1973).

17. Make sure that all of the individuals who are subject to the duty of disclosure, such as spelled out in 37 CFR 1.56 are informed of and fulfill their duty.

18. Finally, if information was specifically considered and discarded as not material, this fact might be recorded in an attorney's file or applicant's file, including the reason for discarding it. If judgment might have been bad or something might have been overlooked inadvertently, a note made at the time of evaluation might be an invaluable aid in explaining that the mistake was honest and excusable. Though such records are not required, they could be helpful in recalling and explaining actions in the event of a question of "fraud" or "inequitable conduct" raised at a later time.

## 2010  Office Handling of Duty of Disclosure/ Inequitable Conduct Issues

Determination of inequitable conduct issues requires an evaluation of the intent of the party involved. While some court decisions have held that intent may be inferred in some circumstances, consideration of the good faith of the party, or lack thereof, is often required. In several court decisions, a high level of proof of intent to mislead the Office was required in order to prove inequitable conduct under 37 CFR 1.56. See *In re Harito*, 847 F.2d 801.6 USPQ 2D 1930 (Fed. Cir. 1988) and *FMC Corp. v. Manitowoc Co. Inc.*, 835 F.2d 1411, 5 USPQ 2d

1112 (Fed. Cir. 1988). The Office is not the best forum in which to determine whether there was an "intent to mislead", such intent is best determined when the trier of facts can observe demeanor of witnesses subjected to cross—examination. A court, with subpoena power, is presently the best forum to consider duty of disclosure issues under the present evidentiary standard for finding an "intent to mislead". The court proceeding involves two participating adverse parties. This is not the case in the Office, since even "protesting" parties are not permitted to participate under the Rules. Also, it is the courts and not the Office that are in the best position to fashion an equitable remedy to fit the precise facts in those cases where inequitable conduct is established. Furthermore, inequitable conduct is not set by statute as a criteria for patentability but rather is a judicial application of the doctrine of unclean hands which is appropriate to be handled by the courts rather than by an administrative body. Because of the lack of tools in the Office to deal with this issue and because of its sensitive nature and potential impact on a patent, Office determinations generally will not deter subsequent litigation of the same issue in the courts on appeal or in separate litigation. Office determinations would significantly add to the expense and time involved in obtaining a patent with little or no benefit to the patent owner or any other parties with an interest.

Accordingly, the Office does not investigate and reject original or reissue applications under 37 CFR 1.56. Likewise, the Office will not comment upon duty of disclosure issues which are brought to the attention of the Office in original or reissue applications except to note in the application, in appropriate circumstances, that such issues are no longer considered by the Office during its examination of patent applications. Examination of lack of deceptive intent in reissue applications will continue but without any investigation of inequitable conduct issues. Applicant's statement of lack of deceptive intent normally will be accepted as dispositive except in special circumstances such as an admission or judicial determination of fraud or inequitable conduct. See MPEP § 2022.5.

## 2012  Reissue Applications Involving Issues of Fraud, Inequitable Conduct, and/or Violation of Duty of Disclosure

Questions of  "fraud," "inequitable Conduct," or