IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLOR KINETICS INCORPORATED,

              Plaintiff

v.

TIR SYSTEMS LTD.,

              Defendant.

Civil Action No.:  03-cv-12491 (MEL)

**COLOR KINETICS' OPPOSITION TO TIR'S CROSS MOTION FOR SUMMARY
JUDGMENT ON THE ISSUE OF INEQUITABLE CONDUCT AND REPLY IN
<u>SUPPORT OF COLOR KINIETCS' SUMMARY JUDGMENT MOTION</u>**

       TIR's theory of inequitable conduct is based on a misrepresentation or misunderstanding of a patent applicant's duty of disclosure and a tortured reading of the rules of the Patent Office. TIR's position, if accepted, would also render a substantial percentage of United States patents that issued from continuation applications unenforceable.  It is not the law, it is based on an application of factually inapposite Federal Circuit cases, and it does not comport with conventional prosecution practice.  Arguments such as that being advanced by TIR in this case are precisely why inequitable conduct is such a disfavored defense.

       In fact, TIR's theory, if accurate, would render unenforceable numerous patents prosecuted by Wilmer, Cutler & Pickering and Hale and Dorr LLP ("WilmerHale"), TIR's litigation counsel.  The fact that the firm TIR has retained to defend this case prosecutes patents <u>in precisely in the same way that the Color Kinetics patents were prosecuted</u> strongly undercuts the litigation-inspired assertion that this behavior is somehow improper.

Also inappropriate is TIR's assertion that Color Kinetics did anything improper by filing a continuation application with claims that had been rejected in the parent, something TIR repeatedly and pejoratively characterizes as taking a "second bite at the apple." (E.g., Opp. at 10.) Continuing to pursue subject matter that has not yet been allowed is one of the primary reasons for the very existence of continuation practice. TIR's attempt to portray this ordinary prosecution activity (which is also regularly engaged in by TIR's law firm) as improper reflects either a remarkable ignorance of patent prosecution practice or a desperate hope that the Court is not sufficiently familiar with the system to know better. Again, this type of argument is exactly why inequitable conduct is so heavily disfavored as a defense.

In support of its motion for summary judgment, and in opposition to TIR's, Color Kinetics submits the attached Expert Report of Charles E. Van Horn (the "Van Horn Expert Report"). Mr. Van Horn is a partner in the firm of Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P and the head of that firm's Patent Prosecution Section. (Van Horn Expert Report, ¶ 1.) He spent thirty-one years in the United States Patent Office as a Patent Examiner, a Supervisory Patent Examiner, Examiner-In-Chief on the Patent Office Board of Appeals, Petitions Examiner, Group Director, Deputy Solicitor, and Deputy Assistant Commissioner for Patent Policy. (Van Horn Expert Report, ¶¶ 3-8.) In these capacities, Mr. Van Horn, in addition to examining hundreds of patent applications himself, supervised the activity of up to 135 patent examiners, rendered legal advice on matters of practice within the PTO on patent-related issues, and participated in the development and implementation of patent policy relating to the examination of patent applications and the development of regulations to govern patent prosecution practice. (Id.)

In addition, among the activities Mr. Van Horn participated in as Deputy Assistant Commissioner for Patent Policy was the development of new regulations governing the duty of disclosure before the PTO in patent matters.  (Id., ¶ 8.)  In fact, in 1992, Mr. Van Horn was personally involved with the drafting of the revisions to 37 C.F.R. §§ 1.56, 1.97 and 1.98, concerning a patent applicant's duty of disclosure, and the associated Manual of Patent Examining Procedure ("MPEP")[1] guidance in section 609 and chapter 2000.  (Id., ¶ 65.)

In Mr. Van Horn's opinion, TIR's theories cannot possibly support a finding of inequitable conduct because the information that was allegedly withheld—the existence of similar or identical claims and rejections of those claims in the parent application—would have been cumulative to information already before the examiner.  (Id., ¶¶ 58-60.)  As he further explains:

> [T]here is no duty to disclose information contained in a parent application that is identified in accordance with 35 U.S.C. § 120 and 37 C.F.R. § 1.78 in a continuation application because that information is presumed to be before the examiner when examining a continuation application.

(Id., ¶ 58.)

In stark contrast to Mr. Van Horn, TIR's expert, Professor Dolak, does not appear to have significant experience with the Patent Office or with patent prosecution in general.  A search of Patent Office records reveals only a single patent application in which Professor Dolak is listed as a prosecuting attorney (with two other attorneys).  (See Exhibit A.)  An article published in a Syracuse University magazine describes Professor Dolak's law firm experience as "fast paced, team-oriented intellectual property litigation," not patent prosecution.  (See Exhibit B.)  In

---

[1] "'The MPEP [is] commonly relied upon as a guide to patent attorneys and patent examiners on procedural matters. While the MPEP does not have the force of law, it is entitled to judicial notice as an official interpretation of statutes or regulations as long as it is not in conflict therewith."  Molins PLC v. Textron, 48 F.3d 1172, 1180 (Fed. Cir. 1995) (quoting Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1439 (Fed. Cir. 1984)).

addition, Professor Dolak's report merely provides background and describes a number of CFR and MPEP provisions, without actually opining on the question of whether Color Kinetics committed inequitable conduct in the prosecution of the '774 patent.

Mr. Van Horn, on the other hand, is not unwilling to opine on the ultimate issue, clearly explaining that the record "cannot possibly support" a finding of inequitable conduct because the information allegedly withheld was "cumulative to information already before the examiner." (Van Horn Expert Report, ¶ 58.)

The Federal Circuit case law cited by TIR regarding this issue is inapposite because <u>the applications considered in those cases were not in the same families</u>, and thus unquestionably do not support TIR's novel inequitable conduct theory.

Furthermore, even if TIR's twisted reading of the rules could be sufficient to show a failure to disclose material information (which surely would be a great surprise to the prosecution community, including WilmerHale's prosecutors) there is no evidence to satisfy the necessary element of an intent to deceive the Patent Office. (<u>See</u> Van Horn Expert Report, ¶ 58.)

**I.    THE PATENT OFFICE RULES DO NOT REQUIRE THE DISCLOSURE OF REJECTIONS IN A PARENT APPLICATION BECAUSE THAT INFORMATION WOULD BE CUMULATIVE**

Information that is material to patentability need only be disclosed when it is "not cumulative to information already of record" in an application. 35 C.F.R. § 1.56 (2000); <u>see, e.g.,</u> <u>Elk Corporation of Dallas v. GAF Building Materials Corp. et al.,</u> 168 F.3d 28, 31 (Fed. Cir. 1999); <u>Haliburton Co. v. Schlumberger Technology Corp.,</u> 925 F.2d 1435 (Fed. Cir. 1991).

In part because a continuation application is simply, as the name would suggest, a continuation of the same prosecution, consulting and reviewing the parent of a continuation application "was and is a routine and conventional practice in the process of examining a continuation application." (Van Horn Expert Report, ¶¶ 60, 66.)

Because the parent application is already before the examiner, there is no "duty on the part of any individual to disclose the content of a prior parent application to the examiner in a continuation application, unless requested to do so by the examiner."  (Id.)

As explained by Mr. Van Horn, an individual who was personally involved with drafting the 1992 revisions to 37 C.F.R. §§ 1.56, 1.97, & 1.98, as well as MPEP § 609 and Chapter 2000:

> It did not occur to me then, or even now, that applicants could have a duty to separately inform an examiner in a continuation application of actions taken by a different examiner in a parent application. . . . [I]t has always been my practice and understanding that such information (i.e., prosecution history in a parent application) was before the examiner in a continuation application.  To separately provide the prosecution history of a parent application to the examiner in a continuation application would subject both applicants and the PTO to a senseless and needless duplication of paperwork.
>
> . . .
>
> In my experience, both within the PTO and in private practice, it is accepted practice in compliance with the letter and spirit of the rules and principles of the duty of candor and good faith, which includes the duty to disclose material information to the PTO, to rely on examiners to consider the prosecution history of any parent application when prosecuting a continuation application.

(Id. ¶¶ 65, 66.)  Moreover, according to Mr. Van Horn,

> [a]ssuming the rejection of claims in a parent application would be important to a reasonable examiner when examining a continuation application containing the same or similar claims, it is ironic, unfair, and simply wrong to assume that the examiner would not review the parent application for that very information when examining a continuation application.

(Id. ¶ 62 (emphasis added).)

Even beyond the general proposition that the parent application is before the examiner of a continuation, a number of passages in the MPEP make clear that an examiner in a continuation application would necessarily review information in the parent application beyond the prior art references themselves.

For example, MPEP § 609 requires examiners to consider "information" that was considered in the parent application when examining a continuation application.  Even if

"information" in § 609 means only "prior art references," as asserted by TIR's expert, it is impossible to believe that an examiner would not look at the rejections to determine which prior art was applied or most important. The careful line TIR is trying to draw between prior art references and the application of those references by the examiner of the parent application does not exist in the reality of patent examination.

Similarly, MPEP § 707.05 requires an examiner to review the parent application for "pertinent" prior art. Again, the best, and perhaps only, way for an examiner to determine what art was "pertinent" would be to look at the rejections made in the parent application to see what art was applied and how it was applied. (Van Horn Expert Report, ¶ 61.) Again, the fact of the rejections would be considered by any reasonable examiner.

In addition, while an examiner in a continuation application is not bound by the actions and/or decisions of a different examiner in the parent application, the second examiner is expected to give "full faith and credit" to the search and actions of a previous examiner on the same subject matter. See MPEP § 706.04. The second examiner cannot give full faith and credit to the work of the previous examiner, however, unless he or she has at least considered the actions of the previous examiner in the prosecution history of the parent application. (Van Horn Expert Report, ¶ 61.)

Moreover, aside from the general proposition that the Patent Office is made aware of the contents of parent applications by virtue of a child being filed as a "continuation," it cannot be disputed that the examiner of the '774 application was, in fact, aware of the parent '038 application and patent. (Van Horn Expert Report, ¶ 59.) Examiner Philogene placed her initials on the face of the '774 application file wrapper to indicate her acknowledgement of the claim of

priority to the '038 patent application.  (Van Horn Expert Report, ¶ 59.)  In addition, she issued a double patenting rejection based on the claims of the '038 patent.  (Id.)

For the foregoing reasons, it is abundantly clear that there was no duty to disclose the cumulative fact of the earlier claims or rejections, and it cannot have been inequitable conduct to not have disclosed it. [2]

Color Kinetics is entitled to summary judgment on this issue.

## II.    TIR'S ARGUMENT IS CONVENIENTLY INCONSISTENT

TIR argues that applicants "have a duty to bring to the attention of the examiner . . . information within their knowledge as to other copending United States applications which are material to the patentability of the application in question."  (Opp. at 8 (quoting MPEP § 2001.06(b) (emphasis added)).)  In this part of its argument, TIR must necessarily construe the term "information" to include the rejection of substantially similar claims in a parent application; otherwise, there was no omission.

After arguing that "information" in § 2001.06(b) must include the fact of the rejections in the parent application, however, TIR then asks the Court to interpret the exact same word, "information," to exclude the fact of the rejections in the parent application when looking at the provisions of the MPEP dealing with the duty to disclose.  In particular, TIR asks the Court to believe that the use of the term "information" in MPEP § 609.02(A)(2), which directs examiners in continuations to consider "information" that was considered in a parent application, somehow

---

[2]  Color Kinetics is unsure, after reading TIR's Opposition, if TIR is maintaining its allegations with regard to the '868 and '626 patents.  TIR only briefly mentions these, at page 18 of its Opposition, without appearing to dispute Color Kinetics' characterization of their prosecution.  In any event, the arguments herein apply equally to these patents.

does not direct the examiner to consider the rejection of substantially similar claims in the parent application, which TIR argues is "information" for purposes of § 2001.06(b).[3]

Regardless of whether or not "information" does, in fact, include the existence of claims and rejections in the parent application, TIR's argument fails. If "information" includes the rejection of substantially similar claims, then MPEP § 609.02(A)(2) directs the examiner of the continuation to review it, rendering any separate disclosure cumulative; on the other hand, if "information" does not include the rejection of substantially similar claims, then MPEP § 2001.06(b) does not require any such disclosure. (Van Horn Expert Report, ¶ 62.)

The only way for TIR's argument to work is to assume that the public is expected to understand that the "information" required to be disclosed under MPEP § 2001.06(b) is different from the "information" that MPEP § 609.02(A)(2) tells the public that the examiner will review in the parent application. How could this possibly support a claim of fraud?

## III.  THE FEDERAL CIRCUIT CASE LAW CITED BY TIR IS INAPPOSITE

TIR attempts to rely on two Federal Circuit decisions (Dayco and Li Second Family, discussed in detail below) in opposition to Color Kinetics' motion and in support of its own motion for summary judgment. Both of these cases are distinguishable from this one in critical factual aspects (which are completely ignored by TIR), and thus fail to support TIR's position.

### A.  The Dayco Case

In Dayco Products v. Total Containment, Inc., 329 F.3d 1358 (Fed. Cir. 2003), the Federal Circuit determined that the existence and rejection of substantially similar claims in an entirely different family of applications was material to the patentability of the claims of the

---

[3] TIR tries to rationalizes its different interpretations of the term "information" by citation to Armour & Co. v. Swift & Co., 466 F.2d 767, 779 (7th Cir. 1972). That case, however, is easily distinguished from this one: in Armour, the patentee argued that the examiner was aware of an unrelated prior art application solely because the same examiner had examined the prior art application. Id. In this case, the examiner need not have remembered anything; the filing as a continuation pointed the examiner directly to the parent case.

patents-in-suit, and was not disclosed during prosecution of the patents-in-suit. <u>Id.</u> at 1360 ("The

patents-in-suit all claim priority through a string of continuation applications to U.S. Application

No. 408,161"), <u>id.</u> at 1361 ("Dayco is also the assignee of a <u>separate family of applications</u> that

claim original priority to U.S. Application No. 993,196" (emphasis added)); <u>id.</u>, at 1365; <u>id.</u> at

1368. The most important issue in this case, that of whether the contents of the file wrapper of a

<u>parent</u> application is disclosed by virtue of filing a subsequent application as a <u>continuation</u>

application, was neither at issue nor discussed in <u>Dayco</u> because the <u>similar claims discussed in</u>

<u>Dayco were not from a parent application</u>.

Color Kinetics does not need to dispute the actual holding of <u>Dayco</u>, that the rejection of

substantially similar claims in a different application family can be material. <u>Dayco</u> simply does

not apply to the facts of this case because, here, the allegedly withheld information was disclosed

by filing the application that led to the '774 patent as a continuation.[4] <u>Dayco</u> is entirely

consistent with Color Kinetics' position.

**B.     The <u>Li Second Family</u> Case**

The other Federal Circuit case cited by TIR is equally inapposite. In <u>Li Second Family</u>

<u>LP v. Toshiba Corp.</u>, 231 F.3d 1373 (Fed. Cir. 2000), the Federal Circuit dealt with the failure to

disclose, in one continuation-in-part ("CIP") of a parent application, activity that occurred during

prosecution of another CIP of the same parent. <u>Id.</u> at 1375-1377.[5] In other words, the two

applications at issue in <u>Li Second Family</u> were <u>siblings</u>, not parent and child. This is a critical

---

[4]  Despite the fact that the patents-in-suit in <u>Dayco</u> were among a family of patents, <u>see</u> <u>Dayco</u>, 329 F.3d at 1360, there was no allegation that it could be inequitable conduct to fail to expressly and separately disclose the existence and rejection of substantially similar claims in a member of the patent family.

[5]  A CIP application is an application filed during the lifetime of an earlier application that repeats some substantial portion or all of the earlier application and adds new subject matter. <u>See</u> MPEP § 201.08.

distinction because the examiner of one sibling would not have a reason to be aware of the existence of the other sibling.

In <u>Li Second Family</u>, during prosecution of one of the siblings ("Sibling A"), the applicant attempted to eliminate a prior art reference by claiming the benefit of the earlier filing date of the parent application.  <u>Id.</u> at 1376.  The examiner determined, and the Board of Patent Appeals and Interferences (the "Board") upheld on appeal, that the subject matter of the claims subject to the rejection was not disclosed in the parent and, thus, that the claims were not entitled to an earlier priority date.  <u>Id.</u>

Subsequently, during prosecution of the other sibling application ("Sibling B"), a particular limitation ("the distance limitation") that was present in the Sibling A claims (and thus was already determined to have been disclosed by the prior art reference) was added to some of the claims.  <u>Id.</u> at 1377.  In response to a rejection over this reference, the applicant again argued that the claims (including the added distance limitation) were disclosed in the parent application and thus were subject to the benefit of the filing date of the parent application.  <u>Id.</u>  The applicant did not disclose the contrary decision of the Board regarding Sibling A.  <u>Id.</u> at 1378.

The Federal Circuit held that the decision of the Board regarding Sibling A was material to the prosecution of Sibling B and had not been disclosed.  <u>Id.</u> at 1379-1380.  This is not surprising, given that the examiner of Sibling A would not have been aware of the existence of Sibling A.  Because Sibling B was not a child of Sibling A, <u>Li Second Family</u> has no bearing on the outcome of this case.

## C.    The <u>Morton Grove</u> Case Is Not Binding, Did Not Involve The Same Arguments Made Here, And Is Incorrectly Decided

The only other opinion cited by TIR is <u>Morton Grove Pharmaceuticals, Inc. v. Par Pharmaceuticals Co.</u>, No. 04-C-7007, 2006 WL 850873, 2006 U.S. Dist. LEXIS 13779; 2006-1

Trade Cas. (CCH) P75,179 (N.D. Ill. March 28, 2006), an order denying a motion to dismiss.

That case does not change the above analysis, however, because it is non-precedential, it is not

even ripe for appeal, and it is demonstrably wrongly decided on the relevant issues.

In <u>Morton Grove</u>, the plaintiff sued for a declaratory judgment of noninfringement and

unenforceability of four patents and for an alleged violation of the Sherman Act. <u>Id.</u> at *2. The

patent-holder moved under Rule 12(b)(6) for dismissal of the antitrust count. <u>Id.</u>

Among the many allegations of fraudulent behavior that were presented in <u>Morton Grove</u>

was the allegation that the patentee had failed to disclose to a new examiner in a pair of

continuation applications the rejections made by the examiner in the parent case. <u>Id.</u> at *21. In

presenting the claims in the continuation, the patentee had stated that a "series of new claims

covering subject matter disclosed but not previously specifically claimed in this application or in

the parent application/patents is being presented." <u>Id.</u> The court also noted that the prior art

forming the basis of these rejections was not disclosed. <u>Id.</u>

While the bulk of the <u>Morton Grove</u> opinion deals with other instances of allegedly

fraudulent behavior in obtaining the patents and/or other issues relating to the antitrust claims,

the court, citing only MPEP § 2001.06(b) and <u>Dayco</u>, did conclude that the patent holder's

"suggestion that the duty of disclosure to the PTO articulated in 37 C.F.R. 1.56 . . . does not

require it to disclose earlier rejections or references is erroneous." <u>Id.</u> at *22. The court denied

the motion to dismiss, determining that a claim had been made upon which relief could be

granted. <u>Id.</u> at *23.

The <u>Morton Grove</u> court did not squarely address the issue of whether the rejection in the

parent case was actually disclosed. This is likely because, contrary to TIR's assertion that "[t]he

patentee made the same argument that CK makes in its motion," <u>no one</u> in the <u>Morton Grove</u>

case made that argument. A review of the opinion and the patentee's memorandum shows that the patentee never suggested to the court that, by filing the application as a continuation, it had disclosed the contents of the file wrapper of the parent case, or even that the examiner of the continuation would have been aware of the parent case at all.

Finally, it is clear that, with regard to this one issue, the <u>Morton Grove</u> court (perhaps due to the inadequacies of the briefing) reached an erroneous conclusion. For the reasons already stated above, the identification of an application as a continuation application <u>does</u> disclose the contents of the file wrapper of the parent application, including the existence of and rejection of substantially similar claims. Indeed, that the <u>Morton Grove</u> court erred is made clear by its reference to both earlier rejections <u>and references</u>. Even though it is abundantly clear (so much so that TIR itself no longer disputes it), that the references cited in a parent application need not be disclosed again in a continuation of the parent application, the Illinois court also erroneously faulted the patentee for not resubmitting the prior art.

**IV.     WILMERHALE PROSECUTES CONTINUATION APPLICATIONS IN THE SAME WAY THAT COLOR KINETICS PROSECUTED THE '774 APPLICATION**

TIR's brief repeatedly accuses Color Kinetics of misconduct for prosecuting its patent applications <u>using the very same practices that are employed by TIR's litigation counsel</u>. It is difficult to imagine better evidence that Color Kinetics' prosecution practices are not inappropriate.

**A.     There is No Improper "Second Bite at the Apple"**

In its brief, TIR repeatedly asserts that resubmitting claims in a continuation that were previously rejected by the Patent Office in the parent application is somehow unusual or improper. (<u>See, e.g.</u>, Opp., at 1 (arguing that "[s]eeking the proverbial 'second bite at the apple,' CK then simply re-filed those same claims in a continuation application").)

Further pursuing an initially rejected claim in a continuation application is, however, one of the most common reasons for filing a continuation application.  (Van Horn Expert Report, ¶ 60 ("a continuation application is typically filed for the purpose of continuing prosecution of claims directed to the same invention disclosed and claimed in the parent application"); id. ¶ 66 ("continuation application practice is very common in the PTO").)  For example, where the Patent Office has allowed some (usually narrower) claims but finally rejected some (usually broader) claims, an applicant may opt to cancel the rejected claims and obtain an issued patent having the narrower claims, while filing a continuation to continue to pursue to broader claims.  See, e.g., Gardner & Kayton, Patent Practice, Vol. 2, §§ 6.4-6.5 (PRI, Inc., Kayton and Kayton eds., 7th ed. 2001).

In fact, patent prosecutors at WilmerHale themselves regularly take "second bites at the apple" by filing continuation applications to pursue claims that had been rejected in parent applications.  (See infra, pp. 13-15.)  Assuming that WilmerHale is not admitting to repeated instances of misconduct before the Patent Office, these allegations of impropriety must be entirely disregarded.

Once again, TIR is unjustifiably trying to cast ordinary, every day patent prosecution activities into something improper.

## B. WilmerHale Is Engaging in Inequitable Conduct if TIR's Theory of Disclosure Is Correct

Color Kinetics' understanding that the examiner in a continuation application is made aware, by virtue of the filing the application as a continuation, of the contents of the parent application's file history is shared by patent prosecutors at WilmerHale.

A brief review of a few recent patent applications prosecuted by WilmerHale attorneys shows that, when prosecuting continuation applications, the attorneys routinely do not separately

call out to examiners either the existence of identical or similar claims in parent applications, or rejection of such claims.

For example, U.S. Patent No. 7,004,169 was filed as a continuation of U.S. Application Number 10/684,048, which itself was a continuation of U.S. Patent No. 6,631,720. Each was prosecuted by attorneys from WilmerHale or predecessor Hale & Dorr. The application that matured into the '169 patent was filed with a single claim that was <u>identical</u> to original claim 1 in the 10/684,048 application, without ever separately referencing this fact or that the claim was rejected in the 10/684,048 application. Even though each of these claims were substantially similar to claim 1 as filed in the parent case,[6] the existence of and rejection of that claim was never separately disclosed to the examiner in either of the continuation applications. (Van Horn Expert Report, ¶ 69.) At least one WilmerHale lawyer <u>who has appeared in this case</u> is listed on the Power of Attorney filed in this patent application.

Similarly, WilmerHale attorneys filed an application that matured into U.S. Patent No. 7,069,246 as a continuation of U.S. Patent No. 6,684,199. Even though original claim 11 of the continuation application was identical to the originally-filed claim 13 in the parent application, WilmerHale made no separate identification to the examiner in the continuation application that the claim had previously been presented and twice rejected in the parent case.

Another example can be found in U.S. Patent No. 6,999,860, which is a continuation of U.S. Patent No. 6,751,531, which is a continuation of U.S. Patent No. 6,577,930 (which itself is a continuation of U.S. Patent No. 6,253,124), all prosecuted by WilmerHale or Hale & Dorr attorneys. During the prosecution of the '531 patent and the '860 patent, the attorneys never

---

[6] Indeed, the claims in the continuation cases were similar enough to each warrant an obviousness-type double patenting rejection over claim 1 of the parent case in view of a separate patent, thus demonstrating that the examiner believed that the claim in the parent case was material to the patentability of the claims in the continuations.

made any separate reference to the existence of and rejection of substantially similar claims in any of the parent cases.

If WilmerHale truly believed that the Patent Office requires a separate and specific disclosure of the existence and rejection of substantially similar claims in a parent application during the prosecution of a continuation, then WilmerHale itself has committed inequitable conduct repeatedly.[7] That, of course, is not the case; instead, it is clear that the arguments to that effect being advanced by that firm in this case are erroneous.

## V.    TIR CANNOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT COLOR KINETICS INTENDED TO DECEIVE THE PATENT OFFICE

Intent to deceive must be proven by clear and convincing evidence.  See, e.g., Allied Colloids Inc. v. American Cyanamid Co., 64 F.3d 1570, 1578 (Fed. Cir. 1995) (noting that the requirement of clear and convincing proof of both materiality and specific intent to deceive is "an essential safeguard" against unfounded allegations of inequitable conduct, which have plagued the courts in recent years).  TIR has not, and cannot, make any showing of intent.

TIR would have the Court believe that, if it can identify material information that was known to the applicant but not disclosed, an intention to deceive the Patent Office must be inferred absent some credible explanation on the applicant's part for withholding the information.  (See Opp., at 12.)

In fact, substantially more evidence of culpability is required:

the alleged conduct must not amount merely to the improper performance of, or omission of, an act one ought to have performed. Rather, clear and convincing evidence must prove that an applicant had the specific intent to accomplish an act that the applicant ought not to have performed, viz., misleading or deceiving the PTO. In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference.

---

[7] It is Color Kinetics' position that this is not inequitable conduct, and Color Kinetics is not taking any position with regard to the enforceability of any patent prosecuted by WilmerHale.

Molins PLC v. Textron, 48 F.3d 1172, 1181 (Fed. Cir. 1995).

TIR has made no showing on intent at all, much less by the required clear and convincing standard. Instead, TIR baldly asserts that Color Kinetics "affirmatively chose not to disclose" the information (Opp., at 13), and that "CK does not—and indeed cannot—offer any credible explanation for its conduct" (Opp., at 14).

In making this argument, TIR completely ignores the fact that Color Kinetics cannot have "made a deliberate decision to withhold a known material reference" when Color Kinetics believed in good faith—and based on the accepted patent practice (also followed by WilmerHale)—that Color Kinetics had in fact disclosed the subject information to the examiner. As Color Kinetics clearly lacked an intent to deceive the Patent Office, summary judgment should be granted in Color Kinetics' favor.

### A.    TIR Has Not Made A Prima Facie Case Of Intent To Deceive The Patent Office As Required To Prove Inequitable Conduct

TIR initially bears the burden of producing evidence of intent to deceive. As even TIR acknowledges in its brief, it is only "when the movant 'has made a prima facie case of inequitable conduct by satisfying both elements thereof [materiality and intent to deceive], [that] the burden shift[s] to [the nonmovant] to come forward with evidence which would require reassessment of the validity of the defense. Ferring B.V. v. Barr Laboratories, 473 F.3d 1181, 1192 (Fed. Cir. 2006). (See Opp., at 14.)

TIR, however, has identified no affirmative evidence of an intent to deceive the Patent Office, and thus has not established a prima facie case of inequitable conduct. Color Kinetics is under no obligation to provide a declaration from the inventors and/or agents who prosecuted the patents regarding this issue because TIR has failed to shift the burden onto Color Kinetics. For this reason alone, Color Kinetics should be granted summary judgment on this issue.

**B.    Color Kinetics Has Provided A Good Faith Basis For Its Belief That The Subject Information Was Disclosed To The Examiner, Thus Precluding A Finding Of Inequitable Conduct**

Additionally, despite not bearing the burden on this issue, Color Kinetics <u>has</u> provided a good faith reason for the alleged non-disclosure of the subject information that precludes a finding of an intent to deceive the Patent Office, namely that Color Kinetics believed in good faith that the information <u>had been</u> disclosed to the Patent Office.

As described above, and explained by Mr. Van Horn, under the applicable rules and conventional patent practice, the contents of the parent application were known to the examiner of the Color Kinetics continuation application by virtue of the fact that the second application was a continuation.  Thus, Color Kinetics clearly would have had a good faith belief that it had met its obligations, as would any other attorney operating under conventional practice.

As to TIR's allegations regarding Examiner Philogene's alleged mistaken belief that the pending claims had not been presented in the '038 application (<u>see</u> Opp., at 13), <u>the language used by the Examiner in making the double patenting rejection was simply the form language suggested by the MPEP</u>.  (Van Horn Expert Report, ¶ 63.)  This boilerplate does <u>not</u> indicate a belief on the Examiner's part that the claims had not been presented previously, but rather is intended to indicate only that there was not some reason that the claims could not have been presented in the previous case due to patent law and/or procedure.  (<u>Id.</u> (explaining that "the statement should be viewed in the context of using a standard form paragraph to state a rejection, rather than as evidence of what the examiner did or did not consider in the parent application").)  <u>See</u> MPEP § 804II(B)(2) (describing circumstances in which claims could not have been filed in the same application because, under then-current patent law, it was necessary to file multiple applications where a joint inventor on some claims did not make an inventive contribution as to all of the claims; ¶ 8.38 of this section contains the language quoted by TIR).

Color Kinetics would have had no reason to believe that the Examiner was, by including this form paragraph, indicating a belief that the claims had never previously been presented, and no inference of an intent to deceive can be found in this example. This is another example of TIR trying to distort ordinary prosecution activity into something nefarious.

## VI.    THERE IS NO SHOWING THAT COULD SUPPORT "INFECTION"

As explained above, TIR's claims of inequitable conduct in the prosecution of the '774 patent must fail, and Color Kinetics is entitled to summary judgment on this issue. Even if TIR's novel theories of disclosure could affect the '774 patent, however, TIR has not come close to making a showing that any other Color Kinetics patent[8] in this case should be rendered unenforceable by "infection."

Inequitable conduct in one patent application does not automatically render unenforceable all of the claims of all later issued patents in the same family. Instead, the inequitable conduct that occurred earlier in the family "must be related to the targeted claims of the ultimately-issued patent or patents sought to be enforced." Semiconductor Energy Lab., Inc., v. Samsung Elecs. Co., 24 F. Supp. 2d 537, 543 (E.D. Va. 1998) (citing Baxter, 149 F.3d 1321, 1332 (Fed. Cir. 1998) and Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 809-11 (Fed. Cir. 1990)); see also Baxter, 149 F.3d at 1332 (Fed. Cir. 1998) (explaining that inequitable conduct with respect to one patent does not render unenforceable claims in related patents directed to different inventions); Truth Hardware Corp. v. Ashland Prods., Inc., No. Civ. A. 02-1541-GMS, 2003 WL 22005839, at * 1 (D. Del. Aug. 19, 2003) (quoting Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 245-46 (1933)) (explaining that "a patentee's inequitable

---

[8]  As TIR's motion to amend its counterclaims is still pending, TIR's current pleadings do not allege the widespread infection it is seeking in this motion.

conduct renders unenforceable all patent claims having 'an immediate and necessary relation' to that conduct").

TIR's bare assertions that "the patents-in-suit claim the same basic invention" and "overlap in other specific features" (Opp., at 17) at are <u>far</u> from sufficient to render unenforceable any other Color Kinetics patent, much less all of the six others that are currently in this case.

Even a cursory review of the claims of the other Color Kinetics patents shows that they are directed to different inventions. For example, the '626 patent is directed (generally) to an LED system with a heat spreader plate in contact with a housing, the '919 patent is directed (generally) to a method of controlling electrical current based on a feature of the material being illuminated, and the '868 patent is directed (generally) to an LED illumination unit with a removeable and replaceable power module. TIR makes <u>absolutely no effort</u> to show that the alleged inequitable conduct in the '774 patent is "related to the targeted claims of the ultimately-issued patent or patents sought to be enforced." <u>Semiconductor Energy Lab</u>, 24 F. Supp. 2d at 543. No case cited by TIR supports the broad and non-specific infection doctrine that TIR is advocating.

In addition, it would also be unusual, to say the least, for inequitable conduct in the '774 application to affect the <u>earlier filed and issued '038 patent</u>. Color Kinetics is aware of no authority that might support the proposition that an issued patent can be rendered unenforceable by conduct that takes place in a <u>later</u> application. TIR cites none.

Moreover, in this particular case, there can be no "immediate and necessary relationship" between the alleged inequitable conduct and the claims of the remaining patents that would infect the claims of the remaining patents. The inequitable conduct of which TIR complains

involves an alleged failure on the part of Color Kinetics to inform the Patent Office that certain claims of the '774 patent were <u>identical</u> to claims previously presented to, and rejected by, the Patent Office. This allegation cannot logically apply to any of the other Color Kinetics patents, because they do not have identical claims to those presented during prosecution of the '774 patent. Thus, there is <u>no</u> possibility that TIR will be able to show the required relationship between the alleged inequitable conduct and the claims in the later applications.

TIR's allegations about "infection" must be disregarded.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Color Kinetics' Memorandum In Support Of Its Motion For Summary Judgment On The Issue Of Inequitable Conduct, Color Kinetics respectfully requests that the Court grant summary judgment in its favor on the issue of inequitable conduct and deny TIR's motion for summary judgment.

Respectfully submitted,

COLOR KINETICS INCORPORATED

Dated:  September 29, 2006                    <u>    /s/ Aaron W. Moore    </u>
                                         Matthew B. Lowrie, BBO No. 563,414
                                         Aaron W. Moore, BBO No. 638,076
                                         Emily A. Berger, BBO No. 650,841
                                         Thomas P. McNulty, BBO No. 654,564
                                         Lowrie, Lando & Anastasi, LLP
                                         Riverfront Office Park
                                         One Main Street - 11th Floor
                                         Cambridge, MA 02142
                                         Tel: 617-395-7000
                                         Fax: 617-395-7070

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that today I caused a true and correct copy of the foregoing to be served, by CM/ECF, on the following counsel of record:


Mark G. Matuschak

Wilmer Cutler Pickering Hale and Dorr LLP

60 State Street

Boston, MA  02109


Dated:  September 29, 2006           <u>  /s/ Aaron W. Moore        </u>

                                           Aaron W. Moore