IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLOR KINETICS INCORPORATED,

                Plaintiff

v.

TIR SYSTEMS LTD.,

                Defendant.

Civil Action No.:  03-cv-12491 (MEL)

## COLOR KINETICS' SUR-REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF INEQUITABLE CONDUCT

TIR's approach to the inequitable conduct issue is remarkable.  To succeed, TIR has the burden of proving (i) that material (non-cumulative) information was withheld, and (ii) that the withholding was with a specific intent to deceive.  Both elements must be proven by clear and convincing evidence—the same level of proof required to deprive someone of their liberty in a civil commitment proceeding.  To meet this burden, TIR has offered <u>no evidence</u>.

Turning the evidentiary burdens on their head, TIR submitted an expert report from someone with no material amount of patent prosecution experience.  This individual expressly and steadfastly <u>refused</u> to opine that any <u>material</u> information was withheld, that the facts could give rise to an inference of <u>intent to deceive</u>, or that inequitable conduct had occurred.  In the end, TIR offered nothing.

For its part, Color Kinetics has provided the evidence from Charles Van Horn, an individual who supervised thousands of examiners over his thirty-year career at the Patent Office and who actually participated in drafting the disclosure rules.  Mr. Van Horn unequivocally opined, and testified, that there was no material information withheld and that he could not

imagine an intent to deceive on these facts.  Actually, the conduct accused of being a "fraud on the Patent Office" by TIR is so widely accepted that Mr. Van Horn has done it, TIR's own law firm has done it, and virtually every other (practicing) patent attorney out there does it as well.

TIR's attempt to limit Mr. Van Horn's report must be disregarded.  This is merely an effort by TIR to take advantage of the fact that the Court is not likely to be familiar with the intricacies and complexities of patent prosecution.  Given the power of Mr. Van Horn's report, it is unsurprising that TIR claims portions of it to be inadmissible.

In any event, TIR is wrong.  Federal Rule of Evidence 704 states, in relevant part, that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704.  The Advisory Committee's Notes state:  "The basic approach to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact.  In order to render this approach fully effective and to allay any doubt on the subject, the so-called ultimate issue rule is specifically abolished by the instant rule."  Advisory Committee's Notes to Fed. R. Evid. 704.  See also S3 Inc. v. nVIDIA Corp., 259 F.3d 1364, 1374 (Fed. Cir. 2001) (noting that an expert may opine on the ultimate legal issue, provided the opinion is supported by something more than a conclusory statement); Rohm & Haas Co. v. Brotech Corp., 127 F.3d 1089, 1092 (Fed. Cir. 1997); Wilner v. United States, 24 F.3d 1397, 1405 (Fed. Cir. 1994) (noting that an expert witness is free to testify as to the ultimate matters at issue).

To accept TIR's argument and hold even one of the Color Kinetics patents unenforceable would be to work a dramatic change in the duty of disclosure as understood by virtually everyone who actually prosecutes patents.  This new theory would likely render tens of thousands of U.S. patents unenforceable, including patents prosecuted by WilmerHale.

Mr. Van Horn's report and testimony establishes that patent examiners reviewing continuations are expected to, and do, review the file histories of the parent applications. Mr. Van Horn further establishes that prosecuting attorneys consistently, and reasonably, rely on the examiners to review this information. <u>TIR offers nothing to contradict these critical points.</u>

TIR's entire theory of inequitable conduct relies on an erroneous assumption that the rejection of a claim in a parent application is <u>not</u> made known to the examiner by virtue of the fact that the application was filed as a "continuation" of the prosecution of the parent. TIR would have this Court believe that, when an application is filed as a "continuation," the examiner will not look to the parent application to see what is being "continued," i.e., what has transpired prior to the filing of the continuation. Put another way, TIR would have this Court find that Color Kinetics intentionally, and with a specific intent to deceive, withheld information that was contained in a file at the USPTO that was identified, by serial number, on the continuation patent application, and the existence of which was expressly acknowledged by the examiner.

TIR acknowledges that the examiner must look to the parent application for prior art cited therein, and that the examiner will be made aware of the existence of the parent application by virtue of the priority claim. TIR further acknowledges that one of the main reasons for filing a "continuation" application is to continue to pursue claims that were rejected in the parent. Yet TIR asserts that an examiner, who is also fully aware that the claims of a continuation may have been presented and rejected in the parent, will not look at the office actions of the parent, even though the examiner will necessarily have the file before them to find the listings of prior art to which TIR acknowledges that they must refer.

Boiled down, TIR's argument rests on an assumption that the examiner in this case was derelict in discharging her duty. The Federal Circuit has clearly rejected this sort of argument.

See, e.g., Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 874 (Fed. Cir. 1988) (declining to presume that the examiner failed to perform his duty).

The Federal Circuit has also routinely stated that summary judgment that a reputable attorney has been guilty of inequitable conduct should be, and is, rare. See, e.g., Burlington Indus., Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1988); Kangaroos U.S.A. , Inc. v. Caldor, Inc., 778 F.2d 1571, 1577 (Fed. Cir. 1985). On the other hand, "it is of course easier to find the absence of inequitable conduct as a matter of law by determining that the information withheld was not material than to find the occurrence of inequitable conduct as a matter of law." Affymetrix, Inc. v. PE Corp., 306 F. Supp. 2d 363, 375 n.16 (S.D.N.Y. 2004).

Summary judgment dismissing the inequitable conduct defense in this case is appropriate. A bench trial on this issue is not warranted.

## I.    TIR PROVIDES NO EVIDENCE OF MATERIALITY

There is no dispute that the '774 application was identified as a "continuation" of the '038 application. As such, the Examiner was obliged to determine what was being "continued," as Mr. Van Horn testified. (Remarkably, TIR's "expert" said she had no reason to believe that anything in Mr. Van Horn's report was wrong.)

In this case, it is also indisputable that the Examiner did look at the application. TIR is faced with the acknowledgement by Examiner Philogene of the claim of priority to the '038 application. In these circumstances, it is impossible to imagine that anything was withheld from the Examiner, and Mr. Van Horn confirmed this.

Although TIR bears the burden of proving that the subject information (e.g., the fact of earlier rejections of the claims) is non-cumulative by clear and convincing evidence, TIR offers

no case law, patent statute, rule, or procedure identifying this information as non-cumulative. TIR fails in this regard because there is no such authority.

TIR offers no other evidence of materiality. The closest TIR can get is an "expert" with less patent prosecution experience than a second year associate and who <u>actually refused to opine that any material information was withheld</u>. This is not "clear and convincing"; it is frivolous.

### A.    The Earlier Rejections Were Indisputably Immaterial as Cumulative

The application that matured into the '774 patent was clearly identified by the applicant to the USPTO as a continuation of the parent application, which issued as the '038 patent. There is no dispute about this.

In addition, Examiner Philogene acknowledged the priority claim by placing her initials on the face of the file wrapper. (Van Horn Expert Report, ¶ 59.[1]) She also issued a double patenting rejection based on the '038 patent. (Van Horn Expert Report, ¶ 59.)

As such, Examiner Philogene is presumed to know the contents of the cited priority application. <u>See, e.g.</u>, <u>Li Second Family LP v. Toshiba Corp.</u>, 231 F.3d 1373 (Fed. Cir. 2000) (examiners are presumed to be aware of the content of information disclosed to them); <u>In re Portola Packaging, Inc.</u>, 110 F.3d 786, 790 (Fed. Cir. 1997) ("Government officials are presumed to have properly discharged their official duties. If the references were in front of the examiner, it must be assumed that he or she reviewed them."); <u>Kingsdown</u>, 863 F.2d at 874 (noting the "presumption of correctness that attaches to administrative action").

In fact, the Federal Circuit itself has confirmed that an examiner of a continuation is presumed to know the contents of the parent application.

In <u>Kingsdown</u>, the applicant amended a claim (claim 50) in a patent application to overcome an indefiniteness rejection, and was then advised that the amended claim was

---

[1]  "Van Horn Expert Report" refers to the Expert Report Of Charles E. Van Horn (Docket No. 99).

allowable.  See 863 F.2d at 870-871.  The applicant then withdrew the application from issue

after seeing a competitor's product, and filed a continuation that included claims from the parent

and new claims to cover the competitor's product.  Id.

In the continuation, the applicant refiled the original claim 50 and incorrectly identified

it as one of the claims that had been allowed in the parent application.  Id.  In fact, that exact

claim had been rejected in the parent application as indefinite.  Id. at 871.  The resubmitted

claim, however, issued without amendment in the continuation.  Id.

> The Kingsdown court reversed a finding of inequitable conduct, noting that:
>
> [The district court's] indication that examiners must rely on counsel's candor
> would be applicable… only when the examiner does not have the involved
> documents or information before him, as the examiner did here.  …[N]othing in
> the statute or Manual of Patent Examining Procedure would justify reliance on
> counsel's candor as a substitute for an examiner's duty to examine the claims.

Id. at 874.

In short, the Federal Circuit confirmed what every patent prosecutor already knows.  In a

continuation, the Examiner is presumed to "have the involved documents or information

[rejections in the parent case] before him."  Indeed, "[i]t is well established that the parent and

continuation cases constitute one continuous application."  Beckman Instruments, Inc. v. LKB

Produkter, AB, 1987 U.S. Dist. LEXIS 14450, *4-5 (D. Md. 1987) (further explaining that "[t]o

the extent that Beckman submitted material in its initial patent application, it cannot be found to

have omitted that material from the continuation application").

The Federal Circuit's confirmation in Kingsdown—an opinion rendered prior the

prosecutions at issue here—that the contents of the parent application, including the rejection of

claims in the parent, are before the examiner for a continuation forecloses any possibility that the

actions complained of by TIR constitute inequitable conduct.

TIR's entire argument regarding the requirements of the MPEP and the requirements of Dayco therefore rely on the false assumption that an identification of the earlier office actions would not be cumulative. TIR does not and cannot dispute that cumulative material need not be disclosed: "information is material to patentability when it is not cumulative to information already of record or being made of record in the application." 37 C.F.R. 1.56(b).

MPEP § 2001.06(b) does not add to the requirements of 37 C.F.R. 1.56(b) or require the disclosure of information that is cumulative; instead, it merely repeats and incorporates the 1.56(b) standard. Of course, MPEP § 2001.06(b) cannot add to the requirements of 37 C.F.R. 1.56(b) because the MPEP does not carry the force of law or of the rules. See MPEP at the Forward (explaining that "[t]he Manual does not have the force of law or the force of the rules in Title 37 of the Code of Federal Regulations").

The Dayco case is irrelevant because the information in that case was not cumulative. As Dayco did not involve parent and continuation applications, there could be no argument that the rejection of claims in the first application was "before the Examiner" in the second application.

Indeed, no Court has ever found the conduct of which TIR complains to be inequitable conduct. Indeed, given that the practice of filing continuations without disclosing previous rejections is routine (see Van Horn Expert Report, ¶ 66), one would expect there to be a wealth of such cases, were this actually inequitable conduct.

The closest TIR can get is a single District Court opinion out of Illinois, where the Court simply declined to dismiss the defense on a preliminary motion, and where the Court did not reach the issue of whether the rejections are cumulative if the application is a continuation of the

case where the rejections occurred.[2]  Morton Grove Pharmaceuticals, Inc. v. Par Pharmaceuticals
Co., No. 04-C-7007, 2006 U.S. Dist. LEXIS 13779 (N.D. Ill. March 28, 2006).

There is little doubt that, if and when the defense is actually addressed on the merits in
Morton Grove, it will fail.  Certainly it would not be approved by the Federal Circuit.  Further,
Morton Grove is demonstrably wrong in that, even though it is clear (so much so that TIR itself
no longer disputes it) that the references cited in a parent application need not be disclosed again
in a continuation of the parent application, the Illinois court also erroneously faulted the patentee
for not resubmitting the prior art.  Even TIR must admit that this opinion erred in material ways.

Given the Federal Circuit's confirmation of what every patent practitioner knows—that
the earlier office actions of a parent are "before" the Examiner in a "continuation" of the parent,
TIR's inequitable conduct claim fails as a matter of law.  Summary judgment is appropriate.

**B.    No Law or Rule Requires Separate Disclosure of
the Rejection of Substantially Similar Claims in A Parent**

In view of the above, it is unsurprising that there is no requirement in any statute or rule
that an applicant identify office actions in a parent—they are already "before" the Examiner.

In the face of the expert report prepared by a co-author of the applicable MPEP section
stating that it would never even occur to him that the MPEP requires disclosure of earlier
rejections in parent cases, TIR nevertheless argues (without support) that the MPEP directs
applicants to disclose the rejection of claims in the parent case.  TIR, which bears the burdens of
persuasion and proof on this issue, can point to nothing in the MPEP, or in any case (much less
any case decided prior to the time these applications were being prosecuted), that indicates that

---

[2]  Despite TIR's conclusory arguments to the contrary, it is clear from the section of Par's Reply Memorandum of
Law In Support of Its Motion To Dismiss Count VI of Morton Grove's Amended Complaint that Par did not argue
that the information was cumulative, but rather only that their opponent, Morton Grove, did not allege in the
Amended Complaint that is was non-cumulative: "Nor is there an allegation that statements made by the '065 patent
examiner were non-cumulative to information already of record or being made of record in the application." Id. at
11-12.

such information is non-cumulative, or that such information is not already conveyed to the Patent Office by virtue of "continuing" the prosecution of the parent, as Mr. Van Horn testified. (See, e.g., Van Horn Tr. at 58:21 to 59:6; 107:6-11; 169:15-22.[3])

There can be no dispute that it is common practice to file continuation applications for the purpose of pursuing claims that had been rejected in a parent application.[4]  Examiners are well aware of this, and, when examining a continuation, will look to the parent case to determine whether the claims before them were previously presented.  To assume that an examiner would not do so is to assume that the examiner is derelict in his or her duty.  Such attacks on the quality of examination have been rejected as inappropriate.  See, e.g., Kingsdown, 863 F.2d at 874 (noting the "presumption of correctness that attaches to administrative action").  In response, the best that TIR can offer is the report of Professor Dolak, which merely provides background and describes a number of CFR and MPEP provisions.

Mr. Van Horn convincingly established, however, that an examiner reviewing a continuation is expected to the review the file history of the parent application, that they do so in practice, and that, for this reason, people actually practicing in the area do not disclose earlier office actions when filing a continuation.  Professor Dolak could not dispute Mr. Van Horn's description of prosecution practice.  (See, e.g., Dolak Tr. at 25, 42, 43, 47.[5])

C.    TIR Offers Not One Iota of Competent Evidence of Materiality.

Of course, Color Kinetics does not have the burden of proof and need not present any evidence on the issue of materiality or inequitable conduct.  Nevertheless, Color Kinetics

---

[3]  "Van Horn Tr." refers to the transcript of the Deposition of Charles Van Horn, excerpted at Exhibit 1 to the Delcaration of Thomas P. McNulty, Esq., ("McNulty Declaration"), filed herewith.

[4]  (See Van Horn Expert Report at ¶¶ 60, 66.); see also Gardner & Kayton, Patent Practice, Vol. 2, §§ 6.4-6.5 (PRI Inc., Kayton & Kayton, eds., 7th Ed. 2001) (noting that continuing to pursue finally rejected claims is one of the most common reasons for filing a continuation application).

[5]  "Dolak Tr." refers to the transcript of the Deposition of Lisa Dolak, excerpted at Exhibit 2 to the McNulty Declaration.

presented the report of Charles Van Horn, an individual with substantial patent prosecution experience, inside and outside the Patent Office, and who participated in writing the rules. He opined unequivocally that the earlier rejections are not material because they are cumulative and are deemed to already be before the Examiner.

TIR offers <u>nothing</u>. Their "expert" (who has no significant experience before the Patent Office, see below) was unable to disagree with Mr. Van Horn. Professor Dolak admits that the examiner can be presumed to be aware of the parent application when the examiner has acknowledged the claim of priority:

> 16   Q.   . . . . My question was, was
> 17   whether the applicant can rely on the examiner to be
> 18   aware of the parent application when prosecuting the
> 19   continuation and when the examiner has indicated that
> 20   he's aware of it?
> 21   A.   In that circumstance I think the applicant can
> 22   rely on the examiner to be aware of the existence of the
> 23   parent application.

(Dolak Tr. at 91:16-23). Professor Dolak further admits that she does not know what examiners do when examining a continuation application, and that she has no reason to question Mr. Van Horn's indication that they do in fact review the file history of the parent application:

> 14   Q.   Do patent examiners review the prosecution
> 15   history of a parent application when they're examining a
> 16   continuation application?
> 17                   MR. WALDEN:  Objection, lack of
> 18                   foundation.
> 19   A.  I of course don't know what individual patent
> 20   examiners do.

(Dolak Tr. at 42:14-20);

> 18   Q.   [Mr. Van Horn] states there it is common practice in the
> 19   PTO for examiners to review the prosecution history and
> 20   the documents cited therein in one or more parent
> 21   applications while examining a continuation application.
> 22   Do you disagree with that?

> 23    A.    I see that he says it.  I don't have any basis
> 24    to know one way or the other, only to know what the MPEP
> 25    says examiners are required to do.

(Dolak Tr. at 43:18-25);

> 16    Q.    Do you know if it's possible that patent
> 17    examiners have any common practices beyond what is
> 18    disclosed in the MPEP?
> 19            MR. WALDEN: Objection, lack of
> 20                foundation.  Go ahead.
> 21    A.    I have no way of knowing.

(Dolak Tr. at 47:16-21).

Most importantly, however, Professor Dolak declined to offer any opinion at all on any

fact issue, and specifically declined to opine that any _material_ information was withheld:

> 6    Q.   Were you ever asked to provide an opinion as
> 7    to whether any -- whether the applicants of any of the
> 8    patents in suit in this case, the Color Kinetics TIR case
> 9    whether they committed inequitable conduct?
> 10    A.   I have not been asked for that opinion.
> 11    Q.   Do you have an opinion?
> 12    A.   I do not have an opinion.
> 13    Q.   Do you know why you were not asked to do that?
> 14    A.   I don't know why I wasn't asked.
> 15    Q.   Were you asked to determine whether any
> 16    rejection of a claim in a parent application, in one of
> 17    the patents in suit, was material such that it needed to
> 18    be disclosed in the continuation?
> 19    A.   I was not asked for that opinion.
> 20    Q.   Do you have an opinion on that?
> 21    A.   I have only sort of a preliminary reaction to
> 22    reading the file history.  You know, before I would give
> 23    an opinion or have an opinion, develop an opinion I would
> 24    need to study those file history in greater detail and
> 25    probably study the law in greater detail.

(Dolak Tr. at 114:15-25.)

Indeed, Professor Dolak also could not disagree at all with Mr. Van Horn's report—a

report that _did_ offer an opinion that no material information was withheld:  "the record I have

reviewed cannot possibly support such a conclusion because I consider such information to be

cumulative to information already before the examiner and there is no evidence, much less clear and convincing evidence, of an intent to deceive." (Van Horn Expert Report, at ¶ 58). TIR's so-called expert provides no support for TIR's allegations.

What Professor Dolak did testify to should be disregarded as incompetent. In her deposition, Professor Dolak admitted that she was involved in the prosecution of less than twenty patent applications, of which a maximum of six were continuations. (See Dolak Tr. at 10:9-18 and 31:2-15.) Professor Dolak, therefore, has about as much patent prosecution experience as a first year patent prosecution associate. The entirety of Professor Dolak's prosecution training was at the hand of only two attorneys. (See id. at 11:18-25.) She has not been involved with the prosecution of patents for at least five years (since leaving Nixon & Hargrave). (See id. at 11:13-17.) She has never worked at the PTO, has never examined a patent as an examiner, has never supervised or trained examiners, and has never been involved with drafting any PTO disclosure rules. (See id. at 12:18 to 13:9.)

Professor Dolak's lack of prosecution experience, and lack of a current prosecution practice, is likely explained by the fact that TIR had to find someone who does not do patent prosecution to serve as an "expert." This is because anyone who does any material amount of patent prosecution likely has done the very same thing that TIR alleges is inequitable conduct, as it is common practice within the patent bar. (Van Horn Expert Report at ¶¶ 60, 66.) Professor Dolak's testimony should be disregarded, as she is plainly not qualified.

In short, TIR's offers the "expert" report of someone who does not practice patent prosecution and could not even say that Color Kinetics did anything wrong. This is not clear and convincing evidence; it is no evidence at all.

## II.    TIR HAS NOT AND CANNOT PROVE BY CLEAR AND CONVINCING EVIDENCE THAT COLOR KINETICS INTENDED TO DECEIVE THE PATENT OFFICE

Intent to deceive also must be proven by clear and convincing evidence.  See, e.g., Allied Colloids Inc. v. American Cyanamid Co., 64 F.3d 1570, 1578 (Fed. Cir. 1995) (noting that the requirement of clear and convincing proof is "an essential safeguard" against unfounded allegations of inequitable conduct, which have plagued the courts in recent years).

TIR opens its argument on intent by claiming that allegedly withheld information was not cumulative, perhaps hoping to confuse the issue.  Cumulativeness is relevant to materiality, not intent.  The information was cumulative, but even were the rejection of claims in the parent case found not to be cumulative by this Court—for the first time ever—Color Kinetics (and virtually every other person involved in patent prosecution) could credibly and in good faith believe that this information was already before the examiner and that a separate citation of such would be cumulative.  This is particularly true given that the Kingsdown opinion was rendered prior to the prosecution of the Color Kinetics patents and that the Morton Grove opinion on which TIR relies was not rendered until 2006, years after these prosecutions were concluded.  Thus, even if the allegedly withheld material was not cumulative, there still was no intent to deceive.

In fact, Color Kinetics has presented ample evidence that its patent prosecutors acted according to universally accepted patent practice.  As Mr. Van Horn explained:

> In my experience, both within the PTO and in private practice, it is accepted practice in compliance with the letter and spirit of the rules and principles of the duty of candor and good faith, which includes the duty to disclose material information to the PTO, to rely on examiners to consider the prosecution history of any parent application when prosecuting a continuation application.

(Van Horn Expert Report at ¶ 66.)  Again, TIR's "expert" had could not dispute this.

On the other hand, the feebleness of TIR's argument on intent is most clearly shown by what it has not done, will not do, and cannot do:

- TIR has not identified <u>any</u> instance in which <u>any</u> patent has been held unenforceable for the failure to disclose the rejection of a substantially similar claim in a parent. This is particularly notable because, as TIR does not contest, it is exceedingly common to continue to pursue rejected claims in a continuation application.[6]

- TIR has not identified a single instance in which a rejection in a parent patent application has ever been identified in any continuation application by anyone.

- TIR has not identified even one practitioner who can affirm that they follow the practice that TIR claims is necessary to avoid engaging in inequitable conduct.

- TIR has refused to produce, despite having been requested to do so, any of TIR's own continuation file histories (none of which are published) to confirm that they themselves follow such a practice. (<u>See</u> McNulty Declaration, Ex. 4.) Nor does TIR even assert that it or its patent prosecutors follow such a practice.

- Despite the fact that Color Kinetics has pointed out that patent prosecutors at WilmerHale do exactly what the WilmerHale litigators are now calling inequitable conduct, TIR has failed to identify even one instance in which WilmerHale patent prosecutors have followed what they say is the proper practice.

The glaring absence of evidence that <u>anyone</u> follows the practice proscribed by TIR cuts heavily against an inference of intent on Color Kinetics' part, particularly given that it is TIR that bears the heavy burden of proof on this issue.

Contrary to TIR's claims, WilmerHale's disclosure practice when prosecuting a continuation application is directly related to the issue of intent, as is TIR's practice (which has been withheld), Mr. Van Horn's practice, and Mr. Van Horn's opinions relating to the practices of both examiners and those practicing before the PTO. It is simply impossible for TIR to claim that clear and convincing evidence of intent must exist under these circumstances, when no one on either side of the process (i.e., neither patent examiners nor patent prosecutors) believes that such a separate disclosure is required.

---

[6] (<u>See</u> Dolak Tr. at 33:14 to 34:13 (admitting that one reason for filing a continuation application is because the applicant had exhausted his or her opportunity to argue for the patentability of claims in the parent case); <u>see also</u> Van Horn Expert Report at ¶¶ 60, 66.)

TIR's effort to distinguish WilmerHale's prosecution practices from those of Color Kinetics relies on a distinction that makes no difference.[7]  The principal dissimilarity, according to TIR, is that the identical or similar claims in the WilmerHale continuation applications did not issue.  The fact that the claims did not issue, however, does not excuse the applicant from its duty to submit material information under Rule 1.56.  TIR would have the Court believe that the WilmerHale prosecutors were waiting for the claims to be allowed to submit the purportedly material rejections from the parent application.  That is, of course, not even remotely plausible.

Color Kinetics is not offering this to rebut a properly drawn inference of bad intent. Instead, the complete absence, prior to this case (or at least prior to the Morton Grove case, which post-dates the prosecution of the '774 patent by six years), of any indication that any patent practitioner has ever believed, or ever had reason to believe, that the rejection of claims in the parent case must be separately disclosed to the examiner in a continuation case means that the failure to separately disclose such cannot, in and of itself, form the basis to infer intent.

As TIR has failed to make a prima facie case of inequitable conduct, Color Kinetics is under no obligation to come forward with evidence to rebut an inference.  Ferring B.V. v. Barr Laboratories, 473 F.3d 1181, 1192 (Fed. Cir. 2006).  (See Opp., at 14.)

None of TIR's other allegations can support an inference of intent to deceive the Patent Office.  As noted in Color Kinetics' Reply, the inclusion of boilerplate language taken directly out of the MPEP to make a double patenting rejection did not indicate that Examiner Philogene was somehow unaware of the claims in the application for the very patent on which she had just based a double patenting rejection, both because it was simply boilerplate, and because this boilerplate only indicated that there was not some reason that the claims could not have been

---

[7]  For the Court's convenience, Copies of relevant portions of the WilmerHale file histories are attached as Exhibits 4-16 of the McNulty Declaration.

presented in the previous case due to patent law and/or procedure, not to make a statement regarding the examiner's understanding of the content of the parent application or whether or not the claims <u>were</u> previously presented.[8]

Indeed, to the extent this language would have suggested anything to Color Kinetics, it would have been that Examiner Philogene <u>did</u> review the file history of the parent application, as the Examiner could not have had any idea about whether there was a reason preventing the subject claims in the parent application without having reviewed the parent.

TIR then falsely states that Color Kinetics is attempting to prevent TIR from deposing the prosecuting attorneys by refusing to produce them, hinting at some dark motive on Color Kinetics' part. TIR is again trying to create something of nothing.

Given that the only allegation of inequitable conduct currently being argued by TIR involves the prosecution of the '774 patent, <u>Color Kinetics offered to produce the attorney who prosecuted the '774 patent</u>, Charles Cella, for deposition. This offer was refused by TIR, which chose instead to demand the deposition of Mr. Cella <u>and</u> depositions of five more Color Kinetics attorneys who were involved in prosecution of others of the patents-in-suit but were not involved with the prosecution of the '774 patent. (<u>See</u> McNulty Declaration, Ex. 17.)

Having <u>chosen</u> to forego the deposition of the patent prosecutor who would be the one with relevant knowledge in favor of efforts to harass Color Kinetics with five other depositions of lawyers without relevant information, TIR should not now benefit from an inference being

---

[8] (<u>See</u> Van Horn Expert Report, ¶ 63 (explaining that "the statement should be viewed in the context of using a standard form paragraph to state a rejection, rather than as evidence of what the examiner did or did not consider in the parent application").) <u>See also</u> MPEP § 804II(B)(2) (describing circumstances in which claims could not have been filed in the same application because, under then-current patent law, it was necessary to file multiple applications where a joint inventor on some claims did not make an inventive contribution as to all of the claims; ¶ 8.38 of this section contains the language quoted by TIR).

drawn from the fact that this deposition was not taken.[9]  In fact, at least one other court has granted a party's motion for a protective order to prevent the deposition of a prosecuting attorney, and refused to even consider the defendants' argument that any inference could be drawn from such refusal in determining intent.  See The Toro Co. v. Exmark Mfg. Co., 2003 U.S. Dist. LEXIS 603, at *16 (D. Neb. Jan. 15, 2003).  That court, by the way, also granted summary judgment of no inequitable conduct.  Id. at *16-18.

Even if wrong, Color Kinetics' good faith belief, which appears to be shared by virtually every other practitioner in the country (save certain members of TIR's litigation team), that Color Kinetics had in fact disclosed the subject information to the examiner, prevents any inference that could be drawn from Color Kinetics' actions in the prosecution of the '774 patent.

Even TIR's purported expert would not offer an opinion that Color Kinetics' prosecution of the '774 patent resulted in inequitable conduct:

```
6       Q.   Were you ever asked to provide an opinion as
7       to whether any -- whether the applicants of any of the
8       patents in suit in this case, the Color Kinetics TIR case
9       whether they committed inequitable conduct?
10      A.   I have not been asked for that opinion.
11      Q.   Do you have an opinion?
12      A.   I do not have an opinion.
```

(Dolak Tr. at 114:6-12).

TIR offers no evidence from which a reasonable fact-finder (this Court, as it is an issue for the Court to decide) could find that intent to deceive was proved by clear and convincing evidence.  Summary judgment should be granted in Color Kinetics' favor.

---

[9]  Indeed, as noted in Color Kinetics' Motion for a Protective Order to Preclude the Depositions of Six Attorneys and Quash Eight Subpoenas, of the six attorneys noticed, three had no involvement with the prosecution of any of the patents which are being attacked on inequitable conduct grounds.  See Color Kinetics' Motion for a Protective Order to Preclude the Depositions of Six Attorneys and Quash Eight Subpoenas (Docket No. 86), at pages 2-3.

III.    **THERE IS STILL NO SHOWING THAT COULD SUPPORT "INFECTION"**

TIR also bears the burden of demonstrating, by clear and convincing evidence, that the

other patents-in-suit would be rendered unenforceable under the doctrine of infection, should the

'774 patent be held unenforceable.  TIR has not come close to making such a showing.

To render a different patent unenforceable by infection, the inequitable conduct that

occurred earlier in the family "must be related to the targeted claims of the ultimately-issued

patent or patents sought to be enforced."  Semiconductor Energy Lab., Inc., v. Samsung Elecs.

Co., 24 F. Supp. 2d 537, 543 (E.D. Va. 1998).[10]

Despite now having filed two briefs on this issue, TIR has never made any showing

regarding the relatedness of the alleged misconduct to any claim of any other patent.  TIR instead

offers only that the patents "have similar claims."  TIR has never cited or referred a single claim

from one of the other patents, has never explained how the alleged misconduct in the '774

applications relates to any claims, and certainly has never attempted to actually demonstrate that

any other claims have an immediate and necessary relationship to the alleged misconduct.  TIR's

allegations do not even come close to proving such by clear and convincing evidence, and, as

TIR bears that burden, Color Kinetics should be granted summary judgment with respect to the

remaining patents-in-suit.

TIR instead chooses to complain that Color Kinetics provided an incomplete quotation

from Semiconductor Energy Labs.  TIR seems to think that there is some distinction between the

quote offered by Color Kinetics, "the inequitable conduct must be related to the targeted claims,"

---

[10]    See also Baxter, 149 F.3d 1321, 1332 (Fed. Cir. 1998) (explaining that inequitable conduct with respect to one patent does not render unenforceable claims in related patents directed to different inventions); Consol. Aluminum Corp. v. Foseco Int'l Ltd., 910 F.2d 804, 809-11 (Fed. Cir. 1990); Truth Hardware Corp. v. Ashland Prods., Inc., No. Civ. A. 02-1541-GMS, 2003 WL 22005839, at * 1 (D. Del. Aug. 19, 2003) (explaining that "a patentee's inequitable conduct renders unenforceable all patent claims having 'an immediate and necessary relation' to that conduct").

and the quote now offered by TIR, that related applications may be held unenforceable if "the inequitable conduct relates to the asserted claims of that patent."  This second quote does not change the analysis or help TIR in any way.  Of course, TIR also fails to address any of the other five cases cited by Color Kinetics for the same proposition.

In addition, TIR still has provided no support for its novel proposal that inequitable conduct in the later '774 application can affect the <u>earlier filed and issued '038 patent</u>.  Rather than meeting its burden on this issue, TIR merely states that Color Kinetics has not provided case law limiting infection to later-filed applications.  Such an argument does nothing to help TIR meet <u>its</u> burden on this issue.  Further, the dearth of case law directly on point is evidence that TIR's theory is novel; were it ever previously sanctioned, or even attempted, there should be a case dealing with it.  There is at least one case that does address this issue, at least to some extent, explaining that inequitable conduct "may also render unenforceable all <u>subsequent</u> claims which spring from the same or a related application"  <u>Progressive Games, Inc. v. Shuffle Master, Inc.</u>, 69 F. Supp. 2d 1276, 1282 (D. Nev. 1999) (emphasis added).

## IV.     <u>TIR'S MOTION FOR BIFURCATION SHOULD BE DENIED</u>

TIR asserts that there are no facts in dispute and that summary judgment is appropriate on the issue of inequitable conduct, but that, should this court determine that there is a factual dispute, that it is still somehow likely to prevail on this issue at trial.

TIR also asserts that, even if only some of the patents-in-suit are held unenforceable, everyone wins because of the time and money saved by virtue of removing those claims from the case.  This analysis, of course, conveniently overlooks the substantial increase in cost and time that will result from the bifurcated inequitable conduct portion of the proceedings, and also assumes that some of the patents will be held unenforceable.  When looking at the overall costs

and outlay of time, it is readily apparent that each will be increased greatly for each of Color Kinetics, TIR, and this court.

A separate and early trial on inequitable conduct would be particularly inappropriate because "only under the most imperative circumstances … can the right to a jury trial of legal issues be lost through a prior determination of equitable claims. Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959). Citing this, at least one court has refused to grant such a requested early trial on inequitable conduct. See Eolas Techs. Inc. v. Microsoft Corp., 65 U.S.P.Q.2d 1090 (N.D. Ill. 2002), rev'd on other grounds, 399 F.3d 1325 (Fed. Cir. 2005).

Color Kinetics believes that the request for bifurcation is nothing but an attempt to delay the proper final resolution of this case on the merits and in favor of Color Kinetics. TIR's motion to bifurcate should be denied.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Color Kinetics' Memorandum In Support Of Its Motion For Summary Judgment On The Issue Of Inequitable Conduct and in Color Kinetics' Opposition to TIR's Cross-Motion for Summary Judgment on the Issue of Inequitable Conduct and Reply in Support of Color Kinetics' Motion for Summary Judgment, Color Kinetics respectfully requests that the Court grant summary judgment in its favor on the issue of inequitable conduct and deny TIR's motion for summary judgment.

Respectfully submitted,

COLOR KINETICS INCORPORATED

Dated: November 9, 2006                          _____/s/ Aaron W. Moore_____
                                                 Matthew B. Lowrie, BBO No. 563,414
                                                 Aaron W. Moore, BBO No. 638,076
                                                 Emily A. Berger, BBO No. 650,841
                                                 Thomas P. McNulty, BBO No. 654,564
                                                 Lowrie, Lando & Anastasi, LLP
                                                 Riverfront Office Park
                                                 One Main Street - 11th Floor
                                                 Cambridge, MA 02142
                                                 Tel: 617-395-7000
                                                 Fax: 617-395-7070

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of the foregoing to be served, by CM/ECF, on the following counsel of record:

Mark G. Matuschak
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109

Dated: November 9, 2006                          ___/s/ Aaron W. Moore_____
                                                 Aaron W. Moore