IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLOR KINETICS INCORPORATED,<br><br>　　　　　Plaintiff<br><br>v.<br><br>TIR SYSTEMS LTD.,<br><br>　　　　　Defendant. | Civil Action No.:  1:03-cv-12491 (MEL) |

**COLOR KINETICS' MOTION FOR A PROTECTIVE ORDER PREVENTING
DISCLOSURE OF ITS CONFIDENTIAL INFORMATION TO STEVEN B. CARLSON**

Pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure and the Protective Order entered in this action on March 23, 2006 (Docket No. 63), plaintiff Color Kinetics Incorporated ("Color Kinetics") hereby moves for a protective order preventing defendant TIR Systems Ltd. ("TIR") from disclosing to proposed technical expert Steven B. Carlson information that Color Kinetics has produced to TIR with the designation "Confidential" or "Highly Confidential" under the Protective Order entered in this case.

On November 14, 2006, TIR notified Color Kinetics of its intent to use Mr. Carlson as an expert in this case and to provide him with information that Color Kinetics has designated under the Protective Order.

Mr. Carlson's resume states that his company currently engages in consulting work for a company named Genlyte Thomas. Among the lighting brands owned by Genlyte Thomas are Lightolier and Canlyte. (A copy of portions from the 2005 Annual Report of the Genlyte Group reflecting these relationships is attached as Exhibit A to the Declaration of Thomas P. McNulty (the "McNulty Declaration").)

-1-

797724.2

-2-

Both Lightolier and Canlyte have partnered with TIR to manufacture and sell products embodying TIR's "Lexel" product, which is one of the products that is accused of infringement in this case. (A copy of a TIR press release touting these partnerships is attached as Exhibit B to the McNulty Declaration.) In addition, Genlyte Thomas is apparently owned by the Genlyte Group, with also owns the JJI Lighting Group. The JJI Lighting Group has a division named Ardee Lighting that is also a Lexel partner. (A copy of a TIR press release describing this partnership is attached as Exhibit C to the McNulty Declaration.)

It therefore appears from Mr. Carlson's resume that he and/or his company have an ongoing relationship with three of the eight entities that have entered into agreements with TIR to sell the accused Lexel product.

Color Kinetics objects to providing Mr. Carlson with "Confidential" or "Highly Confidential" materials due to Mr. Carlson's stated consulting relationship with competitors of Color Kinetics, <u>including competitors who have committed to sell products that are accused of infringement in this case</u>. Allowing Mr. Carlson access to the confidential information that Color Kinetics has been obligated to produce in this case under the Protective Order presents the very real possibility that these LEXEL partners could gain an unfair competitive benefit from that information.

797724.2

-3-

## BACKGROUND

The Protective Order in this case, entered by this Court on March 23, 2006, provides that a party wishing to designate a consulting expert who will be provided with material that the other party has designated confidential should provide to the other party a current resume or curriculum vitae of such a person "which shall include a description of past and present employers and persons or entities with whom the consultant has been engaged in any consulting relationship in the field of LEDs (light emitting devices), lighting, entertainment lighting, solid state lighting, and/or related fields in the last ten years."  (See Docket No 63.)   The protective order further provides that

> the other party may object to the person proposed for approval if facts available to that party give it reason to believe that there is a reasonable likelihood that the designated person may use the information designated Confidential or Highly Confidential for purposes other than the preparation or trial of this case.

Id. at ¶ 8(b).  If the parties cannot then resolve the objection, the Protective Order provides that the objecting party must present its objections to the Court within five business days of the failed effort to resolve the objection.  Id. at ¶ 8(c).

On November 14, 2006, TIR's counsel notified Color Kinetics' counsel that TIR intended to designate Mr. Carlson as an expert in this action.  (See McNulty Declaration, Ex. D.) Included was a copy of Mr. Carlson's resume, which states that his company "provides product design and business consulting for companies in the architectural lighting/energy management and entertainment lighting industry."  (Id.) Mr. Carlson's resume further states that his clients "include Nortel Networks, Strand Lighting (the award-winning C21 Dimmer Rack and Sinewave dimmers), Genlyte Thomas, Pathway Connectivity, DESA, D-Link, and the Lagrande Group, among others."  (Id.)

On November 17, 2006, counsel for Color Kinetics notified TIR's counsel that Color Kinetics was considering objecting to Mr. Carlson's designation. Color Kinetics asked for further information regarding Mr. Carlson's consulting work with Genlyte Thomas and with any other competitors or potential competitors of Color Kinetics, to allow Color Kinetics to evaluate the risk that its confidential information could be improperly used through disclosure to Mr. Carlson. (See McNulty Declaration, Ex. E.)

TIR's counsel responded by telephone and indicated that, despite the claims made in Mr. Carlson's resume, his company did not in fact consult for Genlyte Thomas, but rather for Strand Lighting (listed separately in the resume), which was apparently acquired by Genlyte Thomas in July of 2006. Counsel further stated that Mr. Carlson's work for Genlyte Thomas involved dimmer banks, not LEDs.

Color Kinetics' counsel objected to Mr. Carlson's designation in accordance with paragraph 8(b) of the protective order by letter of November 20, 2006. (See McNulty Declaration, Ex. F.) Color Kinetics' concern is that, as a consultant to direct competitors of Color Kinetics, Mr. Carlson might use or disclose, intentionally or otherwise, Color Kinetics' confidential information in a manner not permitted by the protective order.

Following the conclusion of the meet-and-confer on November 27, 2006, Color Kinetics now brings its objection to the Court, in accordance with terms of the Protective Order.

**ARGUMENT**

Fed. R. Civ. P. 26(c)(7) provides courts with a broad power to "make any order which justice requires" to protect the confidential research, development, commercial, or financial information from being revealed in the course of litigation. In cases in which a protective order is in place, and a party in receipt of confidential information under that order wishes to use that

information in a manner that is opposed by the producing party, courts will balance the interests of the parties.  BASF Corp. v. United States, 321 F. Supp. 2d 1373, 1378 (Ct. Int'l Tr. 2004).[1]

When the issue is the disclosure of confidential information to a third-party consultant, courts will balance the receiving party's interest in selecting the consultant most beneficial to its case against the disclosing party's interest in protecting confidential commercial information from disclosure to competitors.  Id.

In BASF, the party in receipt of confidential information from the producing party sought the court's permission to disclose that information to a third-party expert who consulted with a competitor of the producing party.  Id. at 1375.  The court denied permission to disclose, expressing concern that the consultant could use the confidential information to assist a competitor of the objecting party at that party's expense.  Id. at 1380.  It concluded that "BASF could be commercially harmed by the disclosure of its confidential documents and information" to the consultant.  Id.  at 1381.

Even where there is no reason to believe that the proposed expert might *deliberately* misuse the confidential information, as the BASF court noted, "it is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."  BASF, 321 F. Supp. 2d at 1380.  Thus, in BASF the mere relationship between the proposed expert and the competitor was sufficient to support a protective order preventing disclosure of confidential information to that proposed expert.

---

[1] Although the court in BASF applied the rules of the United States Court of International Trade, rather than the Federal Rules of Civil Procedure, it noted that the language of the provision corresponding to Fed. R. Civ. P. 26(c)(7) was fundamentally the same and applied the same standard.  BASF, 321 F. Supp. 2d at 1378.

797724.2

The same reasoning applies here. In the course of consulting for TIR on this litigation, Mr. Carlson would be entitled to see confidential information concerning Color Kinetics' products, including schematic diagrams of current products, and financials, including information concerning sales, profits, and margins. Color Kinetics' interest in keeping such information from the hands of its competitors in the LED marketplace is readily apparent.

A.  **According to His Resume, TIR's Proposed Consultant Works With Direct Competitors of Color Kinetics.**

Mr. Carlson's resume indicates that Genlyte Thomas is among his current clients. As explained above, Genlyte Thomas has two brands, Lightolier and Canlyte, that have partnered with TIR to sell products that include that TIR's LEXEL units, one of the products that is accused of infringement in this case. In addition, Genlyte Thomas is apparently owned by The Genlyte Group, which also owns JJI Lighting, a division of which (Ardee Lighting) is also a LEXEL partner. These LEXEL partners, much like TIR itself, are clearly parties from whom Color Kinetics would wish to prevent disclosure of its Confidential and Highly Confidential materials.

In response to Color Kinetics' expression of these concerns, TIR's counsel has represented that, despite the inclusion of "Genlyte Thomas" on Mr. Carlson's resume, Mr. Carlson does not and has never provided consultation services to Genlyte Thomas.

Instead, TIR's counsel asserts that the consultation was performed only for Strand Lighting, which was acquired by Genlyte Thomas in July of 2006, and that the work is no longer taking place. Were this actually the case, however, Mr. Carlson would not have listed <u>both</u> Genlyte Thomas and Strand Lighting on his resume, as he would have never performed consulting services for Genlyte Thomas.

Furthermore, the resume states that Mr. Carlson's "[c]lients include" Genlyte Thomas—the use of the present tense indicating that the consultation services are on-going.  Given that Mr. Carlson's resume is the only information that Color Kinetics has received directly from Mr. Carlson, the "facts available" to Color Kinetics (as opposed to the representations of TIR's counsel) clearly indicate a reasonable likelihood that Color Kinetics' Confidential and Highly Confidential information may be used by Mr. Carlson for purposes other than the preparation and/or trial of this case.

Moreover, even if it turns out to be true that Mr. Carlson is not currently working for Genlyte Thomas, it seems fair to conclude from its inclusion on his resume that he would like to work with that company, a desire that itself might result in the disclosure of Color Kinetics' confidential information.

Color Kinetics' objection is not premised on the idea that Mr. Carlson will act in bad faith.  Rather, it has been recognized (in this very context), that it is difficult for the human mind to compartmentalize and selectively suppress information once learned.  See BASF, 321 F. Supp. 2d at 1380.  Thus, due to Mr. Carlson's stated continuing relationship with Genlyte Thomas, or, at least, the apparent desire to cultivate such a relationship, the "likelihood of inadvertent disclosure of highly confidential information to a direct competitor" that was dispositive in BASF exists here.  See id. at 1381.

**B.    Color Kinetics' Objection Is Valid Whether or Not
       Mr. Carlson's Work Specifically Involved LEDs.**

TIR's litigation counsel has asserted that the "only company for which Mr. Carlson or his company have done consulting with respect to 'LEDs, lighting, entertainment lighting, solid state lighting and/or related fields' is Strand Lighting" (McNulty Declaration, Ex. G), and that Strand Lighting "comprises the complete list of companies that Mr. Carlson or his company have

consulted with in the field of lighting" (McNulty Declaration, Ex. H).[2]  From this, it appears that TIR believes that the relevant issue is the nature of the consultant's work (e.g., networking rather than LEDs), not the nature of the client's business.  In other words, TIR appears to be asserting that Mr. Carlson is not objectionable because his consulting work itself was not related to the use of LEDs in light fixtures.

TIR's attempt to draw this distinction must fail, for at least two reasons.

First, the Color Kinetics patents involved in this case are <u>networked</u> light fixtures.  For this reason, the <u>likely</u> subject of Mr. Carlson's consulting work—networking—bears a direct relationship to the issues in this case, and to the Color Kinetics' patents and products.

Second, even without the networking connection, this distinction would be insufficient to permit disclosure of Color Kinetics' confidential information to Mr. Carlson.  Given the determination by courts that knowledge once acquired cannot be unlearned, disclosure even to a consultant in an unrelated area presents a risk of inadvertent disclosure.  <u>See, e.g.,</u> <u>Digital Equipment Corp. v. Micro Tech., Inc.</u>, 142 F.R.D. 488, 492 (D. Colo. 1992).

In <u>Digital Equipment Corp.</u>, for example, the defendant wanted to share plaintiff's confidential information with a consultant who worked for the defendant, who (in addition to being the opponent in the litigation) was a competitor to plaintiff.  The defendant argued that the consultant's work was unrelated to matters involved in the litigation.  <u>Id.</u>  Nevertheless, the court granted a protective order preventing disclosure of the confidential information to the consultant

---

[2] The claim that Strand Lighting "comprises the complete list of companies that Mr. Carlson or his company have consulted with in the field of lighting" is peculiar, because Mr. Carlson's resume states that his company "provides product design and business consulting for <u>companies</u> in the architectural lighting/energy management and entertainment lighting industry."  On its face, the use of the plural word "companies" in the resume would seem to indicate consulting work for <u>multiple</u> companies in the lighting industry.

unless he relinquished his non-litigation consulting activities for the defendant and agreed not to undertake further such activities in the future. Id. The fact that the consultant "has a continuing nexus to an important aspect of [defendant's] business" was sufficient, even if that aspect of the business was not the specific aspect of the company's business that was involved in the litigation. Id.

Here, just as in Digital, Color Kinetics' concerns would not be obviated merely because Mr. Carlson's work with competitors of Color Kinetics relates to an area of their business other than lighting or LEDs. Once confidential information becomes part of Mr. Carlson's general base of knowledge, it cannot be unlearned or selectively applied, and the risk of that information coming into the hands of Genlyte Thomas, Lightolier, Canlyte, or Ardee by virtue of their ongoing relationship with Mr. Carlson or his company cannot be ignored. See id. at 492; BASF, 321 F. Supp. 2d at 1380-81.

**C.     Color Kinetics' Need to Prevent Disclosure Of Confidential Information to Its Competitors Is Outweighed by TIR's Interest in Selecting This Consultant.**

Color Kinetics' concerns regarding disclosure of its confidential and highly confidential information to its competitors are not outweighed by TIR's interest in using Mr. Carlson.

Given the size of the networking and lighting industries, it is apparent that TIR can draw from a relatively wide range of potential consulting experts. It does not appear that Mr. Carlson has any particular, specialized knowledge that could not be found in another expert. See BASF, 321 F. Supp. 2d at 1381 (noting that consultant did not possess qualifications that other experts would not possess). Under these circumstances, rather than risking the exposure of Color Kinetics' highly confidential commercial, technical, and financial information to its competitors, the appropriate course would be for TIR to locate an expert who does not consult for a

competitor of Color Kinetics and who does not have relationships with companies planning to sell the accused products.

Any concerns about prejudice relating to timing can be addressed by affording TIR a sufficient amount of time to locate a new expert and educate that person on the issues. At this point in the case, the parties' positions are fairly well established and bringing a new expert (who, by definition will be technically sophisticated) should not be burdensome. Of course, problems of timing would largely have been created by TIR's failure to locate and identify its proposed expert earlier in the case.

## **CONCLUSION**

Color Kinetics has produced a great deal of confidential information to TIR under the protective order in this case. Color Kinetics does not object to TIR providing that information to a consultant who is independent and whose access to that information does not pose a risk that it will be put to use by a competitor of Color Kinetics. TIR can and should identify an expert who does not consult for such a competitor. Color Kinetics' motion for a protective order preventing the disclosure of its confidential information to Steven B. Carlson should be granted.

A Proposed Order is attached hereto as Exhibit A.

                                            Respectfully submitted,

                                            COLOR KINETICS INCORPORATED

Dated: November 29, 2006        by:     /s/ Aaron W. Moore
                                            Matthew B. Lowrie, BBO No. 563,414
                                            Aaron W. Moore, BBO No. 638,076
                                            Emily A. Berger, BBO No. 650,841
                                            LOWRIE, LANDO & ANASTASI, LLP
                                            Riverfront Office Park
                                            One Main Street - 11th Floor
                                            Cambridge, MA 02142
                                            Tel : 617-395-7000
                                            Fax: 617-395-7070

797724.2

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Counsel for Color Kinetics hereby certify that we have conferred with opposing counsel and have attempted in good faith, but without success, to resolve or narrow the issues presented in this motion.

Dated:  November 29, 2006                                 /s/ Aaron W. Moore

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was filed through the ECF system today and should be sent electronically to the registered participants, including those persons listed below.

Mark G. Matuschak, Esq.
mark.matuschak@wilmerhale.com
WILMER CUTLER PICKERING HALE AND DORR LLP
60 State Street
Boston, MA 02109

Dated:  November 29, 2006                                 /s/ Aaron W. Moore

-11-

797724.2