UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| COLOR KINETICS INCORPORATED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:03-cv-12491-MEL |
| | ) | |
| TIR SYSTEMS LTD, | ) | |
| | ) | |
| Defendant. | ) | |

**TIR'S OPPOSITION TO
COLOR KINETICS' MOTION FOR A
PROTECTIVE ORDER PREVENTING DISCLOSURE OF
CONFIDENTIAL INFORMATION TO STEVEN B. CARLSON**

**I.     INTRODUCTION**

In this patent litigation, TIR has retained and expects to offer expert testimony from

industry expert Steven B. Carlson.  Mr. Carlson was retained after a thorough search – the

second such search performed by TIR, necessitated by the fact that TIR's original expert died

unexpectedly this past summer.  Mr. Carlson is a well-known and respected lighting industry

expert, developed the DMX network protocol, mentioned in certain of the asserted CK patents,

for the United States Institute for Theatre Technology, of which he is a member.  He is a member

of, and has been actively involved in, the most prestigious worldwide engineering organization,

the Institute of Electrical and Electronic Engineers ("IEEE"), for which he has chaired several

working groups.  Through his consulting company, High Speed Design, he is a member of the

Entertainment Services and Technology Association ("ESTA"), a non-profit trade organization

representing the entertainment technology industry, and has been chair of the Advanced Control

Network Task Group, among other leading responsibilities.  He has a degree in physics and

dramatic arts. TIR retained Mr. Carlson because of his extensive experience and extraordinary professional reputation. Although Mr. Carlson consults in the lighting industry generally, his company has not consulted with **any** company with respect to the core technology of CK's patents-in-suit—LED lighting systems.

Unable to articulate any principled basis to challenge Mr. Carlson's credentials, professionalism, or ethics, CK essentially argues that no one who works in lighting can be an opposing expert in this case.  This is not the standard under either the law, or under the Protective Order entered in this case.  As one court has held, "if it was, then a litigant could successfully object to any active industry consultant in any high technology litigation, thereby giving it power of veto over its adversary's choice of experts."  *Promega* 2002 WL 32359938 (W.D.Wis. 2002) (q*uoting Advanced Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, 43 U.S.P.Q. 2d (BNA) 1381, 1384 (N.D. Cal 1996)).

Because CK has not carried its burden to demonstrate that TIR's expert Steven Carlson should be precluded form having access to confidential information, CK's motion for a protective order should be denied.

## II.    BACKGROUND

### The March 23, 2006 Protective Order

On March 23, 2006, the Court entered a Protective Order governing the production of confidential information in this case.  (Docket No. 63).  Paragraph 2 of the Protective Order allows parties or non-parties to designate documents or other information produced in this case (including deposition transcripts) "Confidential" or "Highly Confidential."  Confidential and Highly Confidential information maybe shared with "consultants as defined in Paragraph 7" of the Protective Order, provided that the consultant signs an undertaking to be bound by the terms of the Protective Order.  *Id.* at ¶¶ 5, 6, 9.  The Protective Order defines a consultant as "a person

who is <u>neither</u> an employee of a party nor anticipated to become an employee in the near future, and who is retained or employed as a bona fide consultant or expert for purposes of this litigation." *Id.* at ¶ 7 (emphasis in original).

It is undisputed that Mr. Carlson is "neither an employee of a party nor anticipated to become an employee in the near future," nor is there any dispute that he ahs been "retained . . . as a bona fide consultant or expert for purposes of this litigation."  Mr. Carlson has agreed to be bound by all terms of the Protective Order.

Paragraph 8 of the Protective Order provides the procedure approving a consultant for access to confidential information.  A party seeking to have the access to confidential information must first provide the consultant's resume "which shall include a description of past and present employers and persons or entities with whom the consultant has been engaged in any consulting relationship in the field of LEDs (light emitting devices), lighting, entertainment lighting, solid state lighting, and/or related fields in the last ten years." *Id.* at ¶ 8(a).

After notification, a party may object to a proffered expert "if facts available to that party give it reason to believe that there is a reasonable likelihood that the designated person may use the information designated Confidential or Highly Confidential for purposes other than the preparation of trial in this case."  *Id.* at ¶ 8(b).  If an objection is made, the parties must hold a "meet and confer" where "the objecting party shall inform the party requesting approval of its reasons for objecting to the designated person."  *Id.* at ¶ 8(c).

### *TIR's Expert – Steven Carlson*

On November 14, 2006, counsel for TIR notified counsel for CK that TIR had retained Steven B. Carlson as a consultant, and provided a copy of Mr. Carlson's resume, as well as his undertaking to be bound by the terms of the Protective Order.  (*See* CK Exhibit D).  Mr. Carlson

is an independent expert who is not employed by TIR and does not consult with TIR (except with respect to this case). (Declaration of Steven Carlson ("Carlson Dec."), at ¶ 1). Prior to retaining Mr. Carlson, TIR had retained and had begun working with Alan Symonds, another well-known expert in the industry. Mr. Symonds died unexpectedly this past summer

Mr. Carlson has more than 32 years experience in the design and development of lighting control systems, including the development of lighting products that were the first of their type and the high speed network protocol, DMX 512, for lighting and other theatrical applications. (*Id.*, ¶¶ 2-7, 9). He is a named inventor on nine issued U.S. patents, and is the author of more than 40 technical papers, seminars and presentations relating to lighting control and computer networking. (*Id.*, ¶ 2). He has also presented (approximately 20 times) at technical conferences on technologies related to lighting control systems, lighting networks such as DMX 512, Ethernet-based lighting networks, lighting system safety, and international standards as applied to the lighting industry. (*Id.*). He has provided professional services such as serving on advisory groups and program committees, chairing conferences and technical groups, and editing and reviewing technical literature. (*Id.*). He has also served on several international standards-setting committees in the lighting and computer networking fields. (Id., ¶¶ 9-11).

Between 1976 and 1982, Mr. Carlson was Chief System Designer at Kliegl Bros. Lighting, Inc., where he led the company's design of computer-based lighting control systems. (*Id.*, ¶ 4). In 1977, he supervised the development of the Kliegl "Performance" system, which was the first microprocessor-based theatrical lighting control system. (*Id.*). In 1982, Mr. Carlson founded the lighting design and manufacturing firm, Entertainment Technology, Inc., which designed lighting control systems for theatre, television and architectural lighting. (*Id.*, ¶ 5).

In 1995, Entertainment Technology was acquired by ROSCO Labs, wherein Mr. Carlson assumed the position of Executive Vice President of Technology at the new ROSCO/Entertainment Technology ("RET").  In that position, which he held until 2000, Mr. Carlson oversaw the development of more sophisticated lighting control systems, such as the PC-based Horizon lighting console, the Horizon Playback system (controlled via an Ethernet network), and the VISTA architectural control system.  (*Id.*, ¶ 6).

In 2000, Mr. Carlson founded his own consulting firm, High Speed Design, Inc. ("HSD"), which focuses on embedded networking for industrial control applications.  (*Id.* at ¶ 7). HSD's clients include Nortel Networks, Strand Lighting, D-Link, Pathway Connectivity and the Lagrande Group.  (*Id.*).   Mr. Carlson's resume also lists Genlyte Thomas as a company for whom he has consulted.  However, as explained to CK prior to filing its motion, HSD has worked, and continues to work with Strand Lighting, which is now a subsidiary of Genlyte Thomas, but neither Mr. Carlson, nor his company has worked directly with Genlyte Thomas on any luminaire project.  (*Id.*).

Mr. Carlson has worked with Strand Lighting on the development and design of dimmer racks –devices that allow for the manual, independent control of multiple lights, to be used for example in concert lighting – as well as lighting network solutions.  Specifically, Mr. Carlson has assisted Strand Lighting in the design and development of the award winning C21 Dimmer Rack and Sinewave Dimmers.  The dimmer products and other products that Mr. Carlson has worked on with Strand Lighting are designed for high voltage applications, and as such cannot be used with LEDs.  (*Id.*, ¶ 8).  Neither Mr. Carlson, nor HSD, has consulted with any company in the last 5 years with respect to *any* LED products.

Mr. Carlson has been retained by TIR to provide consulting services and expert testimony on, among other issues, the meaning of claim terms in CK's patents-in-suit to persons of ordinary skill in the art, whether the asserted claims are valid, and whether the accused TIR products infringe those claims.

As explained to CK prior to this motion, the CK confidential information that TIR seeks to share with Mr. Carlson is limited in scope.[1]  First, TIR seeks to provide the deposition transcripts of the named inventors of the patents-in-suit, which CK has designated Highly Confidential under the Protective Order.  Review of the inventor deposition transcripts is likely to inform Mr. Carlson's opinions on the meaning of claim terms to persons of ordinary skill in the art, as well as the facts relating to the alleged conception and/or reductions to practice of the features claimed in the patents-in-suit.

Second, TIR seeks to share with Mr. Carlson the few documents from CK's production relating to what CK has identified as "secondary indicia of non-obviousness" in response to TIR's Interrogatory No. 13.  These documents specifically relate to awards CK contends it received for its LED light systems, as well as physical samples of its products that CK sent to the Smithsonian Institution.[2]

## III.    ARGUMENT

---

[1]    TIR also seeks to share third party confidential information with Mr. Calrson, including deposition transcripts and documents received from Digitrax and from Kevin Furry of LED Effects.

[2]    TIR reserves the right to present additional CK materials to Mr. Carlson if and when CK presents new or different arguments of evidence to support its case.  Presently, however, the scope of CK confidential materials TIR wants to share with Mr. Carlson is limited to the depositions of the named inventors of the patents-in-suit, as well as documents relating to events that occurred more than five years ago.

It is well established that the party seeking a protective order bears the burden of demonstrating the "good cause" to support the issuance of such an order. *See Reliance Ins. Co. v. Barron's*, 428 F. Supp. 200, 202 (S.D.N.Y. 1977). Furthermore, when a party asserts that the discovery process will cause competitive injury because it will result in the revelation of trade secrets, the party cannot rely solely on conclusory statements, "but must present evidence of specific damage likely to result from disclosure." *Culligan v. Yamaha Motor Corp. USA*, 110 F.R.D. 122, 125 (S.D.N.Y. 1986).

It is not the case, as CK contends, that an expert's existing relationship with competitors of the producing party means automatic disqualification. For example, in *Promega Corp. v. Applera Corp.*, No. 01-C-244-C, 2002 WL 32359938 (W.D.Wis. June 7, 2002), the Court denied the patentee's motion to preclude the accused infringer's expert where the expert was president of one company and sat on the board of six other companies that competed with the patentee because the subject matter of the expert's opinion was not sufficiently related to the work the expert performed for the competitors. *Id*. at *9-10. Likewise, in *U.S. Gypsum Co. v. Lafarge North America, Inc.*, 2004 WL 816770 (N.D. Ill. March 2, 2004), the Court ruled that patentee's expert who was a current consultant in the industry to competitors of the accused infringer could have access to the accused infringer's confidential information because the accused infringer failed to make a sufficient showing of prejudice. *Id.* at *2-3.

Instead of a bright-line rule precluding or allowing experts who also consult with competitors, courts determine whether the movant has carried its burden by balancing the risk that the producing party will suffer an unfair competitive disadvantage against the burden to the opposing party of not being able to select the expert most beneficial to its case. *See Promega*, 2002 WL 32359938 at *7; *see also Advanced Semiconductor*, 43 U.S.P.Q. 2d at 1384.

The decision from the Court of International Trade upon which CK relies so heavily, *BASF Corp. v. U.S.*, 321 F.Supp.2d 1373 (Ct. Int'l Trade 2004), conducted this balancing test and disqualified the expert. *BASF* is easily distinguished, however. First, in *BASF*, unlike the present case, the expert had a ***direct relationship*** with the competitor. *Id.* at 1376-77. In this case, CK has identified as its direct competitors the three Genlyte subsidiaries that have partnered with TIR—Lightolier, Canlyte and JJI Lighting Group. But the evidence is undisputed that neither Mr. Carlson nor his consulting firm consult with any of these three entities. Instead, Mr. Carlson consults with a separate company, Strand Lighting, that was purchased by Genlyte Thomas in June of this year.

A second distinction is that in *BASF*, the court found that the subject matter of the materials sought to be disclosed in the litigation directly overlapped with the consultant's work for competitors. *Id.* at 1380. In this case, the subject matter TIR seeks to disclose to Mr. Carlson—deposition transcripts, third party documents and documents relating to LED products more than five years old—has nothing to do with Mr. Carlson's consulting work.

Finally, the Court in *BASF* noted that the defendants had not "specified with particularity why [the expert's] expertise is critical for conducting its defense." *BASF*, 321 F.Supp.2d at 1381. In contrast, as set forth in detail above, TIR has shown that Mr. Carlson has a unique breadth and depth of experience in the lighting industry.

In sum, CK has not come close to meeting its burden to disqualify TIR's expert.

TIR has also agreed to apply a set of restrictions to Mr. Carlson in order to insure the integrity of CK's confidential information. First, Mr. Carlson has agreed to be bound by the standing Protective Order in this case and, thus, has agreed that he will "hold in confidence, will not disclose to anyone other than those person specifically authorized by the Protective Order,

and will not copy or use except for purposes of this Action, any information designated Confidential or Highly Confidential which I receive in this Action." Violation of the Protective Order risks contempt sanctions. There is no claim that Mr. Carlson is anything other than an extraordinarily qualified and respected professional in his field.

Second, although CK professes concern about the entirety of its production, TIR has made clear that it only seeks to provide Mr. Carlson with a limited set of CK confidential materials, as described above. This eliminates any potential overlap between any consulting work that Mr. Carlson undertakes and anything related to CK's technology. Indeed, the limited set of materials proposed to be provided to Mr. Carlson are largely about work that CK did a decade ago and which is the subject of its already-issued patents. In any event, because of the limited set of materials to be provided to Mr. Carlson, and because he does not directly work with an entity CK has identified as a competitor or on any technology related to LEDs, there is simply no risk of harm to CK. CK has not carried its burden of proof on this motion.[3]

## III.    CONCLUSION

For the foregoing reasons, TIR respectfully requests that the Court deny CK's Motion for Protective Order Preventing Disclosure of its Confidential Information to Steven B. Carlson.

Dated:  December 4, 2006.

---

[3]  The parties have agreed that should this motion be denied, opening expert reports will be exchanged two weeks from entry of the Court's order, with rebuttal reports due 30 days after that. The parties currently dispute when opening reports should be due if CK's motion is granted. TIR requests 90 days to find, retain and work with a new expert.

Respectfully submitted,

WILMER CUTLER PICKERING
   HALE AND DORR LLP


/s/  S. Calvin Walden
Mark G. Matuschak (BBO #543873)
mark.matuschak@wilmerhale.com
Wendy Haller Verlander (BBO # 652943)
wendy.verlander@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

S. Calvin Walden (admitted pro hac vice)
calvin.walden@wilmerhale.com
Alexandra McTague (admitted pro hac vice)
alexandra.mctague@wilmerhale.com
399 Park Avenue
New York, NY 10021
Telephone: 212-937-7200

Attorneys for Defendant
TIR SYSTEMS LTD.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that today I caused a true and correct copy of this Opposition and the attached Exhibits to be served, by CM/ECF, on the following counsel of record:

Matthew B. Lowrie

Aaron Moore

Lowrie, Lando & Anastasi, LLP

Riverfront Office Park

One Main Street – 11th Floor

Cambridge, MA 02142

Dated: December 4, 2006                           _____/s/  Alexandra McTague_____
                                                                       Alexandra McTague