UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| COLOR KINETICS INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:03-cv-12491-MEL |
| TIR SYSTEMS LTD, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN SUPPORT OF TIR'S EMERGENCY MOTION FOR AN EXTENSION OF EXPERT DISCOVERY**

**I.     INTRODUCTION**

This is a patent infringement case involving 8 patents, over 100 asserted claims, and numerous prior art references. Last September, TIR hired Mr. Steven Carlson as its technical expert, to analyze the patents, asserted claims, and prior art references, and render an opinion regarding the validity and infringement of the asserted claims. Mr. Carlson was the second expert hired by TIR, located after an extensive search; TIR's first expert passed away unexpectedly last June. Mr. Carlson signed onto the protective order in this case and was prepared to render his opinions according to the schedule set by the Court, with opening and rebuttal reports due before the end of December 2006. But, in November 2006 CK objected to Mr. Carlson as TIR's expert and moved for a protective order.

Expert discovery was stayed for more than two months, from November until February 14, 2007. At that time, the Court overruled CK's objection, allowing Mr. Carlson to resume his work as TIR's expert. Mr. Carlson began reviewing the previously withheld confidential information immediately - during the same week that the Court issued its ruling. Five days later,

Mr. Carlson's 88 year-old father suffered a stroke and was hospitalized, beginning a series of events that has prevented Mr. Carlson from finishing his opening expert report.  Since that time, Mr. Carlson's father has suffered a second stroke, requiring complicated surgery.  As the only relative living near his father, Mr. Carlson has been forced to devote his full time over the course of the last month to his father's life-threatening conditions and accompanying treatment.  During that time, Mr. Carlson himself was hospitalized for pneumonia.

Mr. Carlson has invested an enormous amount of time and effort into learning the details of this case complicated patent case, including review and analysis of all eight patents and their file histories, review of extensive prior art, review of the operation of each of the accused products, and other information not withheld by CK, and then in forming opinions regarding each asserted claim of the  patents-in-suit.   Both Mr. Carlson and TIR want and expect Mr. Carlson to finish the expert report that he has begun.

Because of the life-threatening illnesses of his father and his own recent hospitalization, Mr. Carlson has not been able to complete his expert report, or indeed to devote any significant attention to it.  The only way that Mr. Carlson can complete that task is through an extension of the current expert report schedule to work around these unfortunate circumstances.

CK, however, has refused to consent to the extension TIR requested, and insisted that TIR must complete the report within four weeks, with or without Mr. Carlson. Of course, CK has not identified to TIR, nor could it, the slightest prejudice from the extension requested by TIR – particularly since, but for CK's own overruled objection to Mr. Carlson last fall, expert reports would have been served and this motion would not have been needed, and since no trial date has been set which will be affected by the requested extension.  CK's opposition is nothing more than an unfortunate effort to obtain a litigation advantage by capitalizing on the life-threatening

illness of TIR's expert.  There is simply no justification for CK's conduct, and TIR's motion should be allowed.

## II.    FACTS

TIR retained Mr. Carlson as its technical expert in September 2006.  At that time, opening expert reports were to be exchanged on December 1, 2006.  (Carlson Decl. ¶¶ 1-2).  Mr. Carlson spent many hours learning the details of the eight patents, more than 100 asserted claims, the accused products, and numerous prior art references so that he could render an opinion regarding validity and infringement of those patents.

In November 2006 Color Kinetics ("CK") made a formal objection to Mr. Carlson as an expert, and moved the Court for a protective order.  Expert discovery was stayed until resolution of CK's motion, because Mr. Carlson was not permitted to access confidential CK information necessary for him to render a complete opinion.  (Carlson Decl. ¶ 3).  CK's objection to Mr. Carlson as an expert was that Mr. Carlson worked in the lighting industry, for potential competitors of CK, and thus could disclose confidential information to those competitors.  CK maintained its objection despite the fact that Mr. Carlson agreed to be bound by the terms of the protective order in this case, which would prevent him from disclosing CK confidential information to both TIR and third parties.  CK's objection to Mr. Carlson was overruled on February 14, 2007 (D.I. 124), and that same week Mr. Carlson began reviewing the previously withheld confidential information.  (Carlson Decl. ¶ 4)

On February 19, just 5 days after expert discovery was resumed, Mr. Carlson's 88 year old father suffered a stroke.  He was hospitalized until February 24th and Mr. Carlson, as his father's only immediate relative living in the vicinity, had to devote nearly all of his time to ensuring that his father was properly cared for in the hospital.  Following his father's discharge

from the hospital, Mr. Carlson continued to care for his father, with some assistance from his own children. (Carlson Decl. ¶ 5). Because of these circumstances, the parties moved the Court to extend the expert discovery deadlines, which the Court granted. (D.I. 128) According to the order, opening reports were to be exchanged on March 28, 2007, and rebuttal reports were to be exchanged April 30, 2007. As of February 25, the prognosis for Mr. Carlson's father was positive, and he believed he could reasonably complete his opening report by March 28th. (Carlson Decl. ¶ 6).

On March 1, 2007, Mr. Carlson's father suffered a second stroke, resulting in a fall. He was again hospitalized and underwent a complicated surgery. Mr. Carlson continued caring for his father. Then, Mr. Carlson himself was hospitalized on March 4, 2007 with pneumonia, which he contracted, in part, because of the strain caused by his father's illness. (Carlson Decl. ¶¶ 7-8).

Mr. Carlson's father remains hospitalized with an uncertain prognosis. Mr. Carlson spends every day with him in the hospital, ensuring he receives proper care. Should his father improve, he may be discharged from the hospital and able to move to a nursing home. However, Mr. Carlson would have to devote time to locating an appropriate facility and assisting his father in the transition. If he remains in the hospital, it is because his condition continues to be unstable. (Carlson Decl. ¶ 9).

As a result of these events, Mr. Carlson has been unable to devote any meaningful amount of time to his work since February 19th, including his expert reports in this case. (Carlson Decl. ¶¶ 5-7, 10). Mr. Carlson has devoted a substantial amount of time to learning the patents, claims and prior art in this case, as well as drafting an invalidity report, and wishes to continue his work on this case. It is his understanding that within the next month, his father's

doctors will be in a better position to gauge the likely course of his father's health. At that time, Mr. Carlson will be in a better position to determine whether he can continue to serve as expert in this case. (Carlson Decl. ¶ 11).

Were it not for CK's ultimately overruled objection to Mr. Carlson as TIR's expert, expert reports would have been completed long before Mr. Carlson's father suffered a stroke. (Carlson Decl. ¶10).

### III.    ARGUMENT

#### A.    It Is Within The Court's Discretion To Adjust The Case Schedule

The Court has broad discretion in fashioning scheduling orders for the cases pending before it. *See Levin v. Dalva Brothers, Inc.*, 459 F.3d 68 (1st Cir. 2006) ("Decisions regarding the management of the trial calendar and the courtroom proceedings are particularly within the province of the trial judge. . . ."); *MacNeil v. Americold Corp.*, 735 F.Supp. 32, 37 (D. Mass 1990) ("[J]udicial officers. . . have broad discretion to fashion discovery and scheduling orders. . . ."). Thus, TIR respectfully requests that given the exigent circumstances present in this case, the Court revise the current expert discovery schedule.

#### B.    CK Is Not Prejudiced By The Extension

The circumstances giving rise to TIR's request for an extension are completely beyond TIR's control, and CK is in no way prejudiced by an extension of expert discovery. In fact, were it not for CK's ultimately overruled objection to Mr. Carlson, expert reports would have been completed before Mr. Carlson's father ever became ill. CK is aware of the situation. TIR provided CK with an unsigned version of Mr. Carlson's declaration in an attempt to persuade CK that the request for an extension is necessitated by a set of truly unfortunate events. CK's refusal

to grant the extension to allow Mr. Carlson to care for his father in a case that CK itself has delayed is unreasonable and callous.

Moreover, no trial date would be affected by the requested extension – none has been set. Indeed, given CK's lackadaisical prosecution of this 2003 case (TIR was initially forced to seek dismissal of the case after months of delay simply to prod CK into prosecuting its own case), CK should hardly be heard now to insist that time is of the essence.

### C.     The Extension Sought By TIR Is Reasonable and the Prejudice to TIR Substantial.

TIR requests a limited extension at this time of two months, with a status update after 30 days. At that time, Mr. Carlson expects that his father's doctors will have a better idea of the course of his father's health, and Mr. Carlson will be better able to decide whether it is practical for him to continue as expert in this case. If he can continue, opening reports would be due on May 28, 2007, with rebuttal reports due on June 28, 2007.

Mr. Carlson has invested substantial time in learning this case and developing his opinion, and TIR has invested substantial expense in retaining Mr. Carlson. Both Mr. Carlson and TIR wish Mr. Carlson to continue as TIR's expert, and it makes sense for him to do so. Replacing Mr. Carlson does not mean simply signing on a new expert to adopt the arguments and positions already developed by Mr. Carlson. After finding a new expert (which could take substantial time), that new expert would need to learn the case and develop his own opinions regarding infringement and validity of the asserted claims.

TIR recognizes, however, that Mr. Carlson's father may remain ill, and Mr. Carlson may come to the conclusion in one month's time that he cannot, in good faith, continue as TIR's expert. If that occurs, TIR requests the Court revisit the issue of the schedule at that time to give TIR sufficient time to find a new expert and for that expert to become familiar with the case.

**CONCLUSION**

For the foregoing reasons, TIR respectfully requests that its motion be granted.

                                        Respectfully submitted,

                                        WILMER CUTLER PICKERING
                                          HALE AND DORR LLP

Dated: March 21, 2007                  /s/ Calvin Walden
                                          Mark G. Matuschak (BBO #543873)
                                          mark.matuschak@wilmerhale.com
                                          Wendy Haller Verlander (BBO # 652943)
                                          wendy.verlander@wilmerhale.com
                                          60 State Street
                                          Boston, MA 02109
                                          Telephone: 617-526-6000

                                          S. Calvin Walden (admitted *pro hac vice*)
                                          calvin.walden@wilmerhale.com
                                          Alexandra McTague (admitted *pro hac vice*)
                                          alexandra.mctague@wilmerhale.com
                                          399 Park Avenue
                                          New York, NY 10021
                                          Telephone: 212-937-7200

                                          Attorneys for Defendant
                                          TIR SYSTEMS LTD.

**LOCAL RULE 7.1 CERTIFICATION**

I hereby certify that I have conferred with opposing counsel and have attempted in good faith, but without success, to resolve or narrow the issues presented in the motion.

Dated: March 21, 2007                                                                 /s/ Calvin Walden____

**CERTIFICATE OF SERVICE**

I hereby certify that today I caused a true and correct copy of this motion and the attached Exhibits to be served, by CM/ECF, on the following counsel of record:

>     Matthew B. Lowrie
>     Aaron W. Moore
>     Emily A. Berger
>     Lowrie, Lando & Anastasi, LLP
>     Riverfront Office Park
>     One Main Street
>     Cambridge, MA 02142

Dated March 21, 2007                                                                ____/s/ Alexandra McTague___

US1DOCS 6119204v2