# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLOR KINETICS INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 1:03-cv-12491-MEL |
| | ) |
| TIR SYSTEMS LTD, | ) |
| | ) |
| Defendant. | ) |

### TIR'S MEMORANDUM IN SUPPORT OF ITS MOTION TO PRECLUDE COLOR KINETICS' ASSERTION OF NEW INFRINGEMENT CONTENTIONS AFTER THE CLOSE OF FACT DISCOVERY

## I.    INTRODUCTION

This is a patent case involving eight patents and, as of the close of fact discovery, nearly 100 separate patent claims asserted against seven different products built by TIR Systems Ltd. ("TIR"). Prior to the close of fact discovery on October 13, 2006, the plaintiff Color Kinetics, Inc. ("CK") provided information in response to the Court's order dated September 29, 2004, about each asserted claim, including: "(i) an identification of the claims it alleges are infringed, (ii) a preliminary identification of which TIR products are alleged to infringe the identified claims, and (iii) an element-by-element explanation why such infringement is alleged for each accused product." D.I. 26. Well after the close of fact discovery, however, CK purported to add **over 60 new claims** to its case, **none** of which had ever been identified during fact discovery. CK also purported to accuse a new TIR product, the "LightPipe," which has never been part of this case. And CK sought to assert that TIR's Destiny CW product infringed claims of one of CK's patents that had never been asserted against that product before. Because CK failed to identify these contentions before the close of fact discovery, TIR never had the opportunity to

explore these claims and allegations through document requests, interrogatories, requests for admission, claim charts, depositions, third party discovery regarding invalidity, or independent investigation.

This Court recently ordered that TIR could not rely upon any new prior art. The same rules should fairly apply to both parties. CK should not be permitted to assert 60 claims that it never identified as infringed during more than two years of litigation before the close of fact discovery.[1] CK should not be able to accuse the LightPipe of infringement when it never identified it as infringing during fact discovery. And CK should not be able to assert new infringement contentions against the Destiny CW when it never identified that product as infringing that patent during fact discovery. In short, CK should not be permitted to ambush TIR at the expert report stage with numerous new infringement contentions, the identity of which were **never** disclosed during fact discovery. Indeed, this and other courts have precluded new infringement contentions in similar circumstances. *See, e.g., Dufresne v. Microsoft Corp.,* No. 02-11779-RCL, 2006 U.S. Dist. LEXIS 57423, at *39-*42 (D. Mass. Apr. 28, 2006) (report and recommendation of discovery master John F. Sweeney, adopted by the Court on June 16, 2006) (recommending Court strike supplemental infringement report asserting two new claims and newly released accused product after close of fact discovery); *Nike, Inc. v. Adidas America Inc.,* No. 9:06-CV-43, 2007 U.S. Dist. LEXIS 22270, at *14-*17 (E.D. Tex. Mar. 21, 2007)

---

[1] This includes the following new claims asserted in CK's expert report: '011 patent claims 1-9, 12, 14, 16-17, 21, 27-32, 35, 37-39, 43, 46, 48-65, 68, 70-73, 88, 90, 92, 100-101, 112-113, 117, 199, 121, 128-129, 141-142, as well as other new infringement contentions against the LightPipe and Destiny CW set forth in Exhibit 1, Table 6 to the Declaration of Alexandra McTague In Support Of TIR's Motion To Preclude Color Kinetics' Assertion Of New Infringement Contentions After The Close Of Fact Discovery (hereinafter "McTague Decl.").

(striking late-filed infringement contentions asserting infringement under doctrine of equivalents because, *inter alia,* plaintiff did not act with diligence in amending contentions).

CK's attempt to add infringement contentions now, including 60 new claims, speaks volumes about the 100 claims it previously asserted. Perhaps recognizing that TIR has been able to develop compelling arguments of noninfringement and invalidity about each of those previously asserted 100 claims, CK is now attempting to shift the focus to new infringement contentions that TIR never had the opportunity to defend. TIR's motion should be granted, and CK precluded from asserting new infringement contentions not identified during fact discovery.

## II.    BACKGROUND

On September 29, 2004, the Court ordered CK to provide TIR with "the particulars as to: (i) an identification of the claims it alleges are infringed, (ii) a preliminary identification of which TIR products are alleged to infringe the identified claims, and (iii) an element-by-element explanation why such infringement is alleged for each accused product." D.I. 26. CK provided initial infringement charts on June 14, 2005, which it supplemented three times during the course of fact discovery, including most recently on August 14, 2006. As of the close of fact discovery, CK asserted infringement of almost 100 claims of eight separate patents.

Because CK asserted so many claims, and because many of them plainly were not infringed by TIR, TIR asked CK shortly before the close of fact discovery whether CK would persist in maintaining all of the asserted claims that it had disclosed during the course of fact discovery, or whether it intended to drop at least some of them. In this way, the parties would not need to address in expert reports claims that CK realistically would not assert at trial, thus promoting efficiency and focusing the case to the benefit of both parties, the Court, and the jury. Although CK agreed to supply a final list of asserted claims by November 3, 2006, it did not do

so. TIR repeated its request on November 10, 2006, but CK again did not respond. On November 20, 2006, counsel for TIR sent counsel for CK a letter requesting a meet and confer on a variety of issues, including whether CK would narrow its asserted claims. That meet and confer occurred on November 27, 2006, during which the request for a narrowed set of claims was again repeated.

On December 1, 2006, well after the close of fact discovery, CK sent TIR a letter in which it purported to assert, for the first time, over 60 new claims. Not one of those claims had ever been identified by CK in the more than two years of litigation preceding the letter. CK also purported for the first time to accuse TIR's LightPipe product of infringement, a product never before accused in this case. And CK accused the Destiny CW of infringing CK's U.S. Patent No. 6,975,079 ("the '079 patent"), despite never having asserted this patent against the Destiny CW before (even though the CW was the first product CK accused of infringement in this case). CK did not provide "an element-by-element explanation why such infringement is alleged" for any of these new infringement allegations, as the Court had previously ordered. TIR informed CK that TIR would move to preclude any assertion of claims that had not been disclosed during fact discovery as TIR never had the opportunity to defend or investigate them. Nonetheless, CK's opening expert report, served on April 27, 2007, not only contained these additional contentions, but also contained even more contentions not previously identified at all.

In a case already involving approximately 100 claims, eight patents-in-suit, and seven accused products, CK's effort to add more than half again as many claims and an entirely new product constitutes a significant expansion of its allegations long after the close of fact discovery. CK has not offered any reason for its delay in bringing forth these allegations. On the other hand, TIR will face significant prejudice and this Court significant delay in

proceedings if TIR is required to review and respond to these additional claims and to defend an entirely new TIR product. Because CK's maneuver is an improper and unfair effort to expand its case and to deprive TIR of a meaningful opportunity to be heard, TIR moves the Court to preclude CK from relying on any infringement contentions not previously disclosed prior to the close of fact discovery on October 13, 2006.

## III.    PROCEDURAL HISTORY

CK filed its Complaint for patent infringement on December 11, 2003, alleging that TIR infringed U.S. Patent Nos. 6,340,868 ("the '868 patent"), 6,211,626 ("the '626 patent") and 6,459,919 ("the '919 patent"). D.I. 1. The complaint did not specify what patent claims were allegedly infringed or which of TIR's products supposedly infringed them. TIR filed its Answer and Counterclaims on June 7, 2004, on the grounds that, *inter alia*, the asserted patents were invalid and not infringed. D.I. 8.

CK filed an Amended Complaint on September 24, 2004, alleging infringement of an additional patent, U.S. Patent No. 6,788,011 ("the '011 patent"). D.I. 24. Again the claims infringed and the allegedly infringing product(s) were not specified. TIR filed its Answer and Counterclaims to CK's Amended Complaint on May 24, 2005, again on grounds of invalidity and non-infringement (among others). D.I. 27.

On September 29, 2004, the Court ordered CK to provide TIR with "the particulars as to: (i) an identification of the claims it alleges are infringed, (ii) a preliminary identification of which TIR products are alleged to infringe the identified claims, and (iii) an element-by-element explanation why such infringement is alleged for each accused product." D.I. 26. The Court's order was "based on the fact that the bare-bones complaint provides no information whatsoever" on those subjects. *Id.*

Having received nothing from CK, on May 31, 2005, a year and a half after CK filed its initial complaint, TIR moved to dismiss the case for lack of prosecution. D.I. 28. CK opposed the motion on June 14, 2005 and, for the first time, provided claim charts setting forth the claims of the then-asserted patents that CK alleged were infringed by TIR's Destiny ColorWash ("CW") product. D.I. 31 Ex. A. According to the charts, CK asserted that the Destiny CW infringed 47 claims: two claims of the '868 patent, three claims of the '626 patent, one claim of the '919 patent, and 41 claims of the '011 patent. *See* McTague Decl. Ex. 1, tbl. 1 (summarizing the asserted claims and accused products in CK's infringement charts).

On November 8, 2005, CK served TIR with its second set of infringement charts, accusing TIR's Destiny Cove ("CV"), Color Graze ("CG"), Direct Linear ("DL"), Strip Light, ("SL"), and Spot Light ("SP") products, as well as its LEXEL device, of infringing certain of the already asserted claims of the '868, '626, '919 and '011 patents. McTague Decl. Ex. 1, tbl. 2.

CK filed a Second Amended Complaint on February 23, 2006, asserting four new patents: U.S. Patent Nos. 6,016,038, ("the '038 patent"), 6,150,774 ("the '774 patent"), 6,806,659 ("the '659 patent"), 6,975,079 ("the '079 patent"), bringing the number of asserted patents to eight. D.I. 57. The specific claims asserted and accused products were not identified in the Second Amended Complaint. TIR filed its Answer and Counterclaims to the Second Amended Complaint on April 7, 2006. (D.I. 67).

On March 10, 2006, CK served its third set of Infringement Claim Charts, which covered the patents added in the Second Amended Complaint. In these charts, CK accused the Destiny CG, CV, DL, SL, and SP of infringing 50 claims of the newly asserted patents, in addition to the 43 claims of the '626, '919, and '011 patents already asserted against those

6

products.[2]  McTague Decl. Ex. 1, tbl. 3.  The March 2006 charts did not assert any new claims against TIR's Destiny CW or LEXEL products.

On August 14, 2006 – three days after the Court extended the close of fact discovery to October 13, 2006 (D.I. 83) – CK served TIR with two additional claim charts expanding CK's case against TIR's LEXEL product.  CK asserted for the first time that the LEXEL infringed the same 50 claims of the '038, '774, '659, and '011 patents asserted against the Destiny products and also claimed that the LEXEL infringed an additional 37 claims of the '868, '626, and '011 patents.  That raised the number of claims allegedly infringed by the LEXEL from a mere three (where it had stood since November 2005) to 90.  *See* McTague Decl. Ex. 1, tbls. 2, 4.

Fact discovery officially closed on October 13, 2006, although some previously scheduled depositions did not conclude until November 16, 2006, due to scheduling issues for witnesses and attorneys on both sides.  Shortly before October 13, 2006, attorneys for TIR and CK had a teleconference in which, among other things, CK's attorneys agreed to supply TIR's attorneys with a final (narrowed) list of asserted claims and accused products by no later than November 3, 2006.  McTague Decl. ¶ 4.  On November 10, 2006, TIR's attorneys had not received CK's final list of accused products and asserted claims.  TIR accordingly sent another request, stating, "Please let us know by the close of business on Monday, November 13th, whether CK plans to maintain all of the currently asserted claims, or whether it is asserting a more narrow set of those claims going forward."  McTague Decl. Ex. 2.  CK did not respond.  On November 20, 2006, counsel for TIR sent counsel for CK a letter requesting a meet and

---

[2] The March 2006 charts also added the contentions that the Destiny SP infringed one claim of the '868 patent and an additional claim of the '626 patent.  The Destiny CG was also accused of infringing an additional claim of the '626 patent.  McTague Decl. Ex. 1, tbls. 2 & 3.

confer on a variety of issues, including whether CK would narrow its asserted claims. Walden Decl. ¶ 3 and Exhibit A. [3] That meet and confer occurred on November 27, 2006, during which the request for a narrowed set of claims was again repeated. Walden Decl. ¶ 4.

On December 1, 2006 – long after the close of fact discovery and the conclusion of all depositions – counsel for TIR received a letter from counsel for CK, in which CK purported to add over 60 new claims, accuse the LightPipe product of infringement for the first time, and accuse the Destiny CW for the first time of infringing claims of the '079 patent. *See* McTague Decl. Ex. 3; McTague Decl. Ex. 1, tbl. 5.[4] CK did not provide any explanation for the delay in asserting these contentions. Counsel for TIR promptly objected to CK's effort to expand the claims and products at issue so long after the close of fact discovery. McTague Decl. Ex. 4.

Counsel for CK responded by claiming that TIR had invited CK to "supplement the list of asserted claims" (McTague Decl. Ex. 5), which is untrue; TIR had simply asked CK to inform TIR whether CK planned "to *maintain all of the currently asserted claims*, or whether it is asserting *a more narrow set* of those claims going forward." McTague Decl. Ex. 4 (emphasis added); Walden Decl. ¶¶ 3-4 and Exhibit A.

Counsel for CK then threatened that, if TIR moved to strike CK's newly-asserted contentions, CK would seek to preclude TIR's reliance for invalidity purposes on certain prior art references, even though CK admitted that TIR *had disclosed* the prior art references to CK in claim charts produced before the close of fact discovery on October 13, 2006. McTague Decl.

---

[3] "Walden Decl." refers to the Declaration of Calvin Walden In Support Of TIR's Motion To Preclude Color Kinetics' Assertion Of New Infringement Contentions After The Close Of Fact Discovery

[4] CK's letter also indicated that CK dropped 15 claims in their entirety and dropped assertions of 12 claims against some of TIR's products.

Ex. 5. CK specifically referenced two sets of prior art products—LED Effects products and Digitrax products—that, less than a month before, had been the subject of extensive discovery and deposition testimony highly damaging to CK's asserted claims. McTague Decl. ¶ 10. CK's counsel attempted to argue that, although TIR specifically disclosed the LED Effects products as invalidating references for all eight patents and the Digitrax products as invalidating references for six of the eight asserted patents, TIR's charts did not list those products as invalidating specific *claims* in those patents. But, for reasons of convenience to the witnesses and counsel for both parties, the depositions of the principals of LED Effects and Digitrax did not go forward until November 6 and 16, 2006, which made it impossible for TIR to identify specific claims invalidated by those products in TIR's invalidity charts produced on October 13, 2006. In addition, CK questioned the LED Effects and Digitrax witnesses at their depositions. At no time did CK suggest that the inability to identify specific claims invalidated by LED Effects or Digitrax products in any way prejudiced CK in the preparation of its initial expert report or the conduct of fact discovery. Counsel for CK did, however, offer to *withdraw* CK's newly asserted claims if TIR agreed to limit the prior art upon which it would rely for invalidity purposes, including not relying on the LED Effects and Digitrax products. McTague Decl. Ex. 5, ¶5. TIR declined CK's offer to compromise its defense merely to obtain CK's agreement that it would not improperly seek to expand its case after the close of fact discovery. McTague Decl. Ex. 6.

The parties exchanged initial expert reports on April 27, 2007. CK's report contained not only the 60 additional claims, the new claims against the Destiny CW, and the LightPipe product mentioned in CK's December 1, 2006 letter, but also asserted a further additional claim

against the LightPipe product and three additional claims against the Destiny CW. *See* McTague Decl. Ex. 1, tbl. 6.

## IV.    ARGUMENT

### A.    Applicable Law

A court has the inherent power to enforce its own scheduling orders. Fed. R. Civ. P. 16(f); *Levin v. Dalva Brothers, Inc.*, 459 F.3d 68, 72 (1st Cir. 2006) ("Decisions regarding the management of the trial calendar and the courtroom proceedings are particularly within the province of the trial judge . . . ."); *MacNeil v. Americold Corp.*, 735 F. Supp. 32, 37 (D. Mass. 1990) ("[J]udicial officers . . . have broad discretion to fashion discovery and scheduling orders . . . .").

Deciding whether to allow late-filed infringement contentions is akin to deciding whether to extend scheduling order deadlines for amending pleadings. *See Nike, Inc. v. Adidas America Inc.,* No. 9:06-CV-43, 2007 U.S. Dist. LEXIS 22270, at *10-11 (E.D. Tex. Mar. 21, 2007). Once a scheduling order is in place, a plaintiff must show "good cause" to amend the complaint. *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004). Factors to consider in deciding whether to grant leave to amend a pleading include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B.    CK Unduly And Unjustifiably Delayed In Asserting Additional Infringement Contentions Weeks After The Close Of Discovery.

CK initiated this lawsuit in December 2003. On September 29, 2004, the Court ordered CK to provide TIR with "the particulars as to: (i) an identification of the claims it alleges are infringed, (ii) a preliminary identification of which TIR products are alleged to infringe the

10

identified claims, and (iii) an element-by-element explanation why such infringement is alleged for each accused product." D.I. 26. CK repeatedly amended its infringement contentions during fact discovery, providing TIR with infringement charts on no fewer than four separate occasions. CK's last infringement charts were served on August 14, 2006, two months before the close of fact discovery. At no point during that time did CK assert the over 60 new claims contained in its December 1, 2006 letter, nor did it indicate that TIR's LightPipe product infringed any patent, nor did it indicate that TIR's Destiny CW product infringed the '079 patent.

Nothing prevented CK from asserting its contentions in a timely manner. Obviously, CK is well aware of the claims in its own patents. CK was aware of the Destiny CW, having accused it of infringing other patents in its original complaint. TIR's LightPipe product had been available since 2005 and was described on TIR's website. CK's decision to wait until December 1, 2006 – six weeks after discovery had closed – even to mention these contentions is unexplained and unjustifiable.

Because there is no legitimate reason for CK's delayed assertion of its new infringement contentions, the appropriate course is to strike them from the infringement report of CK's expert, Malvin C. Teich, and to preclude CK from offering any evidence regarding such claims. *See, e.g., Dufresne*, 2006 U.S. Dist. LEXIS 57423, at *39-*42 (recommending that the Court strike a supplemental infringement report asserting two new claims and a newly released accused product after close of fact discovery); *Nike,* 2007 U.S. Dist. LEXIS 22270, at *14-*17 (striking late-filed infringement contentions because, *inter alia,* plaintiff did not act with diligence in amending contentions); *cf. Q2 Micro Int'l Ltd. V. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1362-63 (Fed. Cir. 2006) (enforcing local court rule prohibiting late amendments to

infringement contentions where plaintiff was not diligent in seeking amendment); *Regent Nat. Bank v. Dealers Choice Automotive Planning, Inc.*, No. 96-7930, 1998 WL 961377 at *4-*5 (E.D. Pa. Dec. 15, 1998) (striking post-discovery answer that expanded scope of case by adding new counterclaims and allegations that would cause prejudice and necessitate additional discovery). Similarly, to the extent CK's damages report relies upon sales of the LightPipe product in its damages calculation, that too should be stricken. *Dufresne*, 2006 U.S. Dist. LEXIS 57423, at *42-*44 (recommending supplemental damages report stricken because plaintiff was not entitled to damages for product accused after close of fact discovery).

### C. Unless Stricken, CK's Additional Infringement Allegations Will Delay The Proceedings And Cause Significant Prejudice To TIR.

In addition to CK's unexplained and unjustifiable delay, the new infringement contentions will significantly delay these already complex proceedings and cause significant prejudice to TIR. TIR's opening expert report regarding invalidity, served on April 27, 2007, addressed only those claims that CK had identified prior to the close of fact discovery. Should CK's new infringement contentions be permitted, TIR's expert, Mr. Carlson, will have to prepare a supplemental invalidity report for the newly asserted claims. That would require Mr. Carlson to review the claims; identify the different limitations or combinations of limitations present in those claims; compare the claims with the prior art to determine which prior art references anticipate and/or render obvious those claims; form an opinion as to any new claim construction issues raised by the new claims; and then draft a report, with claim charts, setting forth his opinions. Mr. Carlson's opening invalidity report consisted of over 150 pages of text and over 300 pages of invalidity claim charts. A supplemental report analyzing an additional 60 claims would also be substantial in length. TIR would require a substantial extension of expert discovery to complete this task.

Moreover, because TIR tailored its prior art searches, document requests, and depositions to the specific claims that CK had asserted prior to the close of fact discovery, it would be necessary to reopen fact discovery to permit TIR to identify the basis for these new allegations; to question CK's witnesses regarding the prosecution history, background and meaning of the new claims; to redepose third-party witnesses in light of the new claims; and to identify and depose any additional third parties whose input might bear on the invalidity of these new claims. Needless to say, the protraction of fact and expert discovery that would be needed for TIR to respond to CK's belatedly-asserted claims would also result in significant added cost to both parties.

The delay in resolution of the case and the corresponding increase in costs weigh heavily against allowing the new contentions. *See Nike,* 2007 U.S. Dist. LEXIS 22270, at *16 ("At this stage of the proceedings, allowing these amended contentions would require the court at the very least to extend the expert report deadlines and discovery deadlines. Invariably, this will result in increased costs and more delays….These factors weigh against allowing new contentions."). Indeed, even in the context of amendments to pleadings, where leave to amend is often "freely granted" (Fed. R. Civ. P. 15), amendments are rejected if they would create cost, delay, or prejudice. *Cf. Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (upholding district court's denial of motion to amend to add new claim) ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy."(citations omitted)); *Executive Leasing Corp. v. Banco Popular de Puerto Rico*, 48 F.3d 66, 71 (1st Cir. 1995) (affirming district court's denial of motion to amend complaint to add new claim) ("The further along a case is toward trial, the

13

greater the threat of prejudice and delay when new claims are belatedly added."); *King v. King*, 922 F. Supp. 700, 703-4 (D.N.H. 1996) (denying plaintiffs motion to amend to add new claims after discovery had closed because it would require additional discovery and because there was no valid reason for the plaintiff's delay); *Unicomp, Inc. v. Elements Pigments, Inc.*, No. CIV97-55-P-H, 1999 WL 1995401, at *2-*4 (D. Me. Feb. 16, 1999) (denying motion to amend complaint to add cross claims where amendment would cause undue delay and prejudice).

TIR also would be prejudiced because, under the Court's order dated April 4, 2007, TIR may not rely on any new prior art to respond to CK's claims. But the prior art that TIR previously located and disclosed during fact discovery focused on the claims asserted by CK during fact discovery. TIR did not search for prior art to invalidate all 405 claims of the eight asserted patents. The newly added claims have at least one limitation not found in any of the previously asserted claims – a sensor. Without prior art specific to the newly asserted claims and the limitations thereof, and without the time and ability to search for and adduce evidence of such prior art, TIR will be severely prejudiced in its ability to defend itself against CK's new claims of infringement. Indeed, such a result would deprive TIR of a meaningful and fair opportunity to defend itself.

## CONCLUSION

For the foregoing reasons, the Court should preclude CK from making any infringement contentions not identified prior to the close of fact discovery on October 13, 2006, as set forth in Attachment A hereto. The Court should also preclude CK from relying on sales of the LightPipe product to determine damages.

In the alternative, should the Court not preclude CK's assertion of its new contentions, TIR respectfully requests that the Court set a scheduling conference to address the reopening of fact discovery and extension of expert report deadlines to accommodate CK's new assertions.

Respectfully submitted,

WILMER CUTLER PICKERING
  HALE AND DORR LLP

Dated:  May 23, 2007

/s/ Calvin Walden
Mark G. Matuschak (BBO #543873)
mark.matuschak@wilmerhale.com
Wendy Haller Verlander (BBO # 652943)
wendy.verlander@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

S. Calvin Walden (admitted *pro hac vice*)
calvin.walden@wilmerhale.com
Alexandra McTague (admitted *pro hac vice*)
alexandra.mctague@wilmerhale.com
399 Park Avenue
New York, NY 10021
Telephone: 212-937-7200

Attorneys for Defendant
TIR SYSTEMS LTD.

**LOCAL RULE 7.1 CERTIFICATION**

I hereby certify that I have conferred with opposing counsel and have attempted in good faith, but without success, to resolve or narrow the issues presented in the motion.


Dated:  May  ___, 2007                                    /s/ Alexandra McTague_____




**CERTIFICATE OF SERVICE**


I hereby certify that today I caused a true and correct copy of this motion and the attached Exhibits to be served, by CM/ECF, on the following counsel of record:


Matthew B. Lowrie
Aaron W. Moore
Emily A. Berger
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street
Cambridge, MA 02142


Dated: May ___ 2007                                    ____/s/ Alexandra McTague___