UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLOR KINETICS INCORPORATED,

Plaintiff,

v.

TIR SYSTEMS LTD,

Defendant.

Civil Action No. 1:03-cv-12491-MEL

**TIR'S OPPOSITION TO**
**COLOR KINETICS' MOTION TO STRIKE CERTAIN PARAGRAPHS**
**FROM THE EXPERT REPORT OF STEVEN B. CARLSON**

## I. INTRODUCTION

The Court has already denied plaintiff Color Kinetics Inc.'s ("Color Kinetics") attempt to keep TIR's chosen expert, Steven B. Carlson, from receiving confidential information and testifying in this case. (*See* D.I. 124, Feb. 12, 2007 Order). Color Kinetics objected then because Mr. Carlson has a background and business in the lighting industry. Now it tries again by moving to preclude him from testifying about the "History of Light and Lighting Controls" section of his Expert Report, which is based on the facts and information *he learned through his many years of personal experience in the industry*. Particularly after the U.S. Supreme Court's decision in *KSR International Co. v. Teleflex Inc.*, 127 S. Ct. 1727 (2007) (copy attached as Exhibit A), Color Kinetics' motion is nothing more than a continued effort to shield from the jury the "state of the art" and the general knowledge of one of skill in the art at the time of the claimed inventions. Color Kinetics' latest attempt to suppress Mr. Carlson's ability to testify as an expert in this case should be denied.

Color Kinetics's present motion is based on the faulty assertion that the "History of Light and Lighting Controls" section of Mr. Carlson's Expert Report is merely an "attempt to circumvent" this Court's Order that "TIR shall not be permitted to *rely on* new prior art." (CK Memorandum, p. 1 (emphasis supplied)). Color Kinetics is wrong for at least two reasons. First, Mr. Carlson included this section in his report not to circumvent the Court's Order, but instead because he was *obligated* under Fed. R. Civ. P. 26(a)(2)(B) to provide "a complete statement of…the data or other information considered by the witness in forming [his] opinions." Mr. Carlson, as he is allowed to do, drew on his own experience and the information he learned over the years as he formed his opinions in this case and incorporated those opinions in an Expert Report. The "History of Light and Lighting Controls" section of the Report sets forth information from his own knowledge base and experience that he considered in the preparation of his Report. The Court has certainly never ordered that Mr. Carlson cannot consider such materials in forming opinions or disclose such consideration in his Report, as required by Rule 26.

Second, it is clear from a review of the "History of Light and Lighting Controls" section, and the rest of Mr. Carlson's report—which Color Kinetics did not include with its motion, but is filed under seal herewith as Exhibit B ("Carlson Report")—that Mr. Carlson *does not rely on the "newly cited" references as prior art.* At the very outset of his report, Mr. Carlson states that "[t]he specific prior art references that underlie my conclusions regarding anticipation and obviousness for each asserted claim are set out more fully *in the claim charts attached as Appendix A.*" Carlson Report ¶ 4 (emphasis added). He then lists "twelve prior art references" that anticipate most of the asserted claims (*id.*) and, thereafter, states that the remaining asserted claims are "rendered obvious by combinations of these and other prior art references, as is more

fully set forth below *and in the attached claim charts*" (*id.* ¶ 5). Neither these paragraphs nor the claim charts includes any of the sources that CK challenges on pages 4 through 6 of its motion. Indeed, the sections of Mr. Carlson's Expert Report that actually discuss prior art—sections that CK does not include with its motion, such as "Relevant Prior Art," "Anticipation of Asserted Claims by Prior Art," and "Obviousness in Light of Combinations of Prior Art"—do not even mention the sources Color Kinetics complains of, and only cite the "History of Light and Lighting Controls" section as general background.

CK's attempt to strike a general background discussion, which will give useful context to the Court and the jury, is baseless. As an expert, Mr. Carlson is allowed to draw from his experience and knowledge base and to provide context for the prior art he does rely upon to demonstrate the invalidity of Color Kinetics' claims. Color Kinetics' motion to preclude Mr. Carlson from discussing the history of the relevant technology, including recent history to which Mr. Carlson has directly contributed, should be denied.

## II. ARGUMENT

### A. The Supreme Court Has Recently Made Clear in *KSR v. Teleflex* That, in Order to Determine Obviousness, the Court and Jury Need to Understand the Context in Which the Prior Art is Found

The Supreme Court has recently clarified that the invalidity analysis requires an "expansive and flexible" approach. *KSR*, 127 S. Ct. at 1739. The Supreme Court further made clear that a "combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results" (*id.*), and also that

> [o]ften, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.

*Id.* at 1740.

Thus considerations of "predictability" of results, the "design community," and the "background knowledge" of a person of ordinary skill in the art are essential. Indeed, the Supreme Court even made clear that it is *not* necessary to correlate particular pieces of prior art to particular claim limitations, because "a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.*

Mr. Carlson's "History of Light and Lighting Controls" is provided in order to aid in the understanding that the Court in *KSR* made clear is essential to the invalidity analysis – including the background knowledge of a person of ordinary skill in the art, the design community in which a person of ordinary skill in the art operates, and the inferences that a person of ordinary skill in the art is likely to employ as he or she confronts Color Kinetics patents. Mr. Carlson additionally identifies the specific prior art references that meet each of the asserted claim

limitations pursuant to 35 U.S.C. §§ 102 and 103 – but *those references are not the subject of this motion*, as they were undisputedly disclosed to Color Kinetics.

**B. Mr. Carlson's Discussion of the History of Light and Lighting Control Was Included for Background and Context and Disclosed as Required by Fed. R. Civ. P. 26(a)(2)(B)**

Mr. Carlson is allowed to rest his opinions on his own specialized experience, and the "History of Light and Lighting Controls" section of his Report is based on that experience. *See Kumho Tire Co. v. Carmichael*, 526 U.S.137, 148 ("Experts of all kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from … specialized experience." (internal citation omitted)). Mr. Carlson has spent more than 32 years working on the design and development of lighting control systems, including the development of lighting products that were the first of their type and the DMX512 high speed network protocol, which is widely used for lighting and other theatrical applications. (*See* Dec. 4, 2006 Declaration of Steven Carlson, D.I. 119 ("Carlson Dec.") ¶¶ 2-7, 9). He is a named inventor on nine issued U.S. patents, and is the author of more than 40 technical papers, seminars and presentations relating to lighting control and computer networking. (*Id.*, ¶ 2). He has also presented (approximately 20 times) at technical conferences on technologies related to lighting control systems, lighting networks such as DMX512, Ethernet-based lighting networks, lighting system safety, and international standards as applied to the lighting industry. (*Id.*). He has also served on several international standards-setting committees in the lighting and computer networking fields. (Id., ¶¶ 9-11).

Through his experience, Mr. Carlson has learned about the early history of light and lighting controls, and he has been an important part of many recent developments in lighting control in his 32-year career. Mr. Carlson naturally drew from this history as he reviewed the

claims of Color Kinetics' patents and, thus, he includes in his Expert Report a background discussion of the history of artificial light, beginning with fire, and proceeding through Thomas Edison's development of incandescent bulbs, other light sources including LEDs, and the evolution of the means and methods by which lights have been controlled. As with any expert report, such background is necessary to give the Court and the jury a context and full understanding of the technology at issue in the case.

Moreover, the background discussion in the "History of Light and Lighting Controls" section of Mr. Carlson's Report was a *requirement* under Rule 26, which provides that an expert report must contain:

> [A] complete statement of all opinions to be expressed and the basis and reasons therefor; *the data or other information considered by the witness in forming the opinions;* any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added)*; see also Pena-Crespo v. Puerto Rico*, 408 F.3d 10, 13 (1st Cir. 2005) (each expert witness "must provide a written report containing the information required under Rule 26.") If he had not included the "History of Light and Lighting Controls" section in his Expert Report, Mr. Carlson may have risked being precluded from offering the jury this important background information at trial. *See* Fed. R. Civ. P. 37(c)(1) ("A party that without substantial justification fails to disclose information required by Rule 26(a)…shall not, unless such failure is harmless be permitted to use as evidence at a trial…any witness or information not so disclosed.").

The purpose of requiring experts to provide such detail in their Expert Reports is to increase the "quality of trials by better preparing attorneys for cross-examination." *Laplace-*

*Bayard v. Batlle*, 295 F.3d 157, 161 (1st Cir. 2002). Mr. Carlson provided a detailed Expert Report in satisfaction of Rule 26. Color Kinetics will have an opportunity to seek documents or other things from Mr. Carlson if it chooses, and to depose him. Color Kinetics thus *does not even try*, at this early stage in fact discovery, to argue that it has been prejudiced by the inclusion of the references in Mr. Carlson's "History of Light and Lighting Controls" section.

Color Kinetics asserts that somehow the "History of Light and Lighting Controls" section is some sort of back-door attempt by TIR to introduce prior art that originated from Philips Lighting B.V. (*See* CK Memorandum, p. 2). This is utterly false. All of the sources Color Kinetics complains of in its brief (MC Mem., pp. 4-6) were identified by Mr. Carlson himself in preparing his report. Instead of asking TIR's counsel to confirm this, or taking the deposition of Mr. Carlson to explore the matter, Color Kinetics has instead chosen to cast baseless aspersions on both Mr. Carlson and TIR's counsel.

Each of the sources that CK lists on pages 4 through 6 of its brief was identified by Mr. Carlson himself based on personal experience. As an example, between 1976 and 1982, Mr. Carlson was Chief System Designer at Kliegl Bros. Lighting, Inc., where he led the company's design of computer-based lighting control systems. (Carlson Dec., ¶ 4). At least six of the thirty references Color Kinetics complains of are directly related to that experience and what Mr. Carlson learned while at Kliegl.[1] The remainder – including the picture of Thomas Edison's lightbulb, etc. – were likewise identified by Mr. Carlson based on his knowledge and experience

---

[1] The Kliegl references Mr. Carlson cites include Kliegl Bros., <u>Lighting Control Systems</u> (1961); Kliegl "Performance" microprocessor-based PWM control system; Kliegl Performance Sofpatch System; Kliegl K96 Digital Dimming System; Kliegl Bros., Theatrical Lighting, Catalogue No. T-6 1 (1965); Kliegl Bros., Lighing Control Systems 200-5 (1961).

in the field. Color Kinetics' suggestion that Mr. Carlson or TIR's counsel sought to evade this Court's order is baseless and wrong.

**C. Mr. Carlson Did Not Rely on the "Newly Cited" References as Prior Art**

The Court's April 4, 2007 Order states that "TIR shall not be permitted to rely on new prior art," and TIR is in strict compliance with that Order. First, it is worth noting that several of the "thirty or more" references complains of are either not "new,"[2] or would not constitute "prior art" even if TIR sought to rely on them as such.[3] Even with respect to the other references Mr. Carlson includes based on his background and experience, he *does not rely upon them as prior art to invalidate the patents-in-suit*.

Mr. Carlson identifies the "prior art" he relies on at the beginning of his report: "[t]he specific prior art references that underlie my conclusions regarding anticipation and obviousness for each asserted claim are set out more fully in the claim charts attached as Appendix A." Carlson Report ¶ 4 (emphasis added). The term "prior art" is not even mentioned in Mr. Carlson's "History of Light and Lighting Controls" section. Rather, the term is used elsewhere in his report to identify the specific references—all of which are listed in the claim charts and were previously disclosed to Color Kinetics—upon which Mr. Carlson relies to invalidate Color

---

[2] Color Kinetics claims that U.S. Patent Nos. 3,787,752 and 5,184,114 are "newly cited." (CK Mem., p. 5). But in fact *both* of these patents were cited by TIR in interrogatory responses before the close of fact discovery. *See TIR's Second Supplemental Interrogatory Responses,* relevant portions attached as Exhibit C, at pp. 16-17.

[3] The following references are dated after the latest priority date of any of the patents-in-suit: Schubert E.F., Light Emitting Diodes (2d ed. 2006); Nick Holonyak: He Saw The Lights, Business Week (May 23, 2005); upload.wikimedia.org/wikipedidcommons/ thumb/c/cb/RBG-LED.jpg/300px-RGBLED.jpg; www.tower-style.de/medidimages/produkte Aaswer-let/rgfertig.jpg; www.dvtsensors.comlshopcart/highres/IAAS-1224.jpg; Parker W. et al., Scene Design and Stage Lighting (8th Ed. 2003); www.chriskorin.com; www.neon-sionage.com; www.yourdictionary.com; www.jasons-indoor-guide-to-organic-and-hydroponics-gardening.com; content.answers.com.

Kinetics' asserted claims. Mr. Carlson's Expert Report details the "Relevant Prior Art" in a separate section—which Color Kinetics does not include or discuss—that does not even mention the "newly cited" references Color Kinetics complains of. (Carlson Report § III(C)). The "Relevant Prior Art" includes *only* art that was disclosed prior to the close of fact discovery – i.e., art that is not "new" to Color Kinetics. Mr. Carlson's Report further includes a section describing the "Common Lighting Features in Prior Art" where he groups the prior art into various categories according to common elements, such as "Color LED Prior Art," "PWM Prior Art," *etc.* (*Id.* § III.D). In *none* of these categories does Mr. Carlson include any references not previously disclosed to Color Kinetics. Mr. Carlson then includes a 45-page section detailing how the prior art anticipates and renders obvious the asserted claims (*Id.*, § V). *Not once* in this section are the challenged sources from the "History of Light and Lighting Controls" even mentioned; indeed, the entire background section is cross-referenced only briefly as providing general context. Most importantly, the *324 pages* of claim charts Mr. Carlson attaches as appendices to his Report—which set out "[t]he specific prior art references that underlie [Mr. Carlson's] conclusions regarding anticipation and obviousness for each asserted claim" (*id.* ¶ 4)—do not even mention the sources to which Color Kinetics objects, much less rely on them. TIR is not in violation of the Court's Order for submitting an expert report containing a background section that is not relied on as prior art.

In its brief and proposed Order, Color Kinetics implies that not only should the Court exclude the new references Mr. Carlson included based on his experience in the "History of Light and Lighting Controls" section, but also *all* information included in that section, and *all references* cited therein, whether previously disclosed or not. This attempt to preclude information and disclosed art stretches far beyond the Court's Order that "TIR is not allowed to

*rely on* new art." (emphasis supplied). As such, if the Court is inclined to grant any portion of Color Kinetics' motion, then it should limit any preclusion to the "new" references cited in Mr. Carlson's "History of Light and Lighting Controls" section – rather than all the information contained therein, including information about references that had been previously disclosed.

## III. CONCLUSION

TIR understands that this motion is the first of three that will be filed by Color Kinetics seeking to exclude portions of Mr. Carlson's Invalidity Report. Color Kinetics is clearly concerned about the content of Mr. Carlson's Report, and that is understandable, given that Mr. Carlson has assembled a devastating set of *previously-disclosed* prior art that is fatal to the asserted claims. Mr. Carlson has also provided the general background of a person of ordinary skill in the art, and the other necessary context to understand how the prior art that he does rely upon invalidates every asserted claim. Because Mr. Carlson and TIR have adhered to the Court's rules, Color Kinetics should stop seeking to interfere with TIR's defense and instead prepare to defend its patents based on *all* the relevant evidence.

For the foregoing reasons, TIR respectfully requests that the Court deny CK's Motion to Strike Certain Paragraphs From the Expert Report of Steven B. Carlson in its entirety.

Dated: June 1, 2007.

Respectfully submitted,

WILMER CUTLER PICKERING
HALE AND DORR LLP

/s/ S. Calvin Walden ___________
Mark G. Matuschak (BBO #543873)
mark.matuschak@wilmerhale.com
Wendy Haller Verlander (BBO # 652943)
wendy.verlander@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

S. Calvin Walden (admitted pro hac vice)
calvin.walden@wilmerhale.com
Alexandra McTague (admitted pro hac vice)
alexandra.mctague@wilmerhale.com
399 Park Avenue
New York, NY 10021
Telephone: 212-937-7200

Attorneys for Defendant
TIR SYSTEMS LTD.

**CERTIFICATE OF SERVICE**

I hereby certify that today I caused a true and correct copy of this Opposition and the attached Exhibits to be served, by CM/ECF, on the following counsel of record:

Matthew B. Lowrie
Aaron Moore
Lowrie, Lando & Anastasi, LLP
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142

Dated: June 1, 2007

/s/ S. Calvin Walden
S. Calvin Walden



US1DOCS 6220916v1