IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COLOR KINETICS INCORPORATED,

                    Plaintiff

v.                                                    Civil Action No.:  1:03-cv-12491 (MEL)

TIR SYSTEMS LTD.,

                    Defendant.

**COLOR KINETICS' MEMORANDUM
IN OPPOSITION TO TIR'S MOTION TO PRECLUDE
INFRINGEMENT CONTENTIONS
AND
IN SUPPORT OF COLOR KINETICS' CROSS-MOTION TO
PRECLUDE ASSERTION OF UNTIMELY INVALIDITY CONTENTIONS**

Plaintiff Color Kinetics Incorporated ("Color Kinetics") hereby opposes TIR's motion to preclude assertion of infringement of certain claims (Docket No. 139).  Should TIR's arguments be accepted, Color Kinetics moves for the same relief—to preclude TIR from relying on prior art allegations first identified at 9:45 p.m. on the last day of the discovery period, for the exact same reasons that underlie TIR's motion.

TIR's motion should be denied, on any of a number of grounds:

First, the motion is untimely.  The claims that TIR is seeking to remove from the case were identified on December 1, 2006.  TIR did nothing to address this issue in December . . . or in January . . . or in February . . . or in March . . . or in April.  Instead, TIR waited until May 23, 2007, more than five months after the claims were identified, and nearly a month after

the opening expert reports were served, to file this motion.  This extended delay operates as a waiver of any objection that TIR may have had and certainly is fatal to any claim of "prejudice."

In fact, the motion itself looks much more like an effort to re-open expert reports (after the Court has already ordered that TIR may not rely on new prior art in those reports) than a legitimate complaint about late supplementation.  Were TIR legitimately concerned about late supplementation, it would have objected last December when the supplementation was made. Instead, TIR waited until after filing its opening expert report, almost six months later.

Second, TIR does not, in fact, have a legitimate objection because Color Kinetics did not unduly delay in its identification of claims.  Virtually all of the party depositions in this case took place between the August 11, 2006 third supplemental infringement claim charts and the last deposition taken by Color Kinetics (of TIR's Ian Ashdown) on October 26, 2006, just five weeks before the December 1, 2006 supplementation.  Although Color Kinetics did take an earlier deposition where information about the LEXEL product that led to supplementation could have been uncovered, ███████████████████████████████████████.  (See Moore Decl., ¶ 3 & Ex. A.)  Hence, Color Kinetics was diligent in pursuing the discovery, was blocked by TIR, and acted promptly in supplementing once the information was made available.  It would have been literally impossible for Color Kinetics to have arrived at a final list of infringed claims before what TIR identifies as the "close of fact discovery on October 13, 2006" because TIR did not make its witnesses available before then.

Third, there is no analogy to be drawn between this issue and the issue of new prior art recently being excluded from TIR's expert report.  The new art was excluded from the TIR expert report to prevent TIR from trying to start over on its invalidity defenses by taking unfair advantage of the second extension of the expert deadline after the close of discovery, ostensibly

<u>due to the illness of Mr. Carlson's father</u>.  In fact, as the Court may recall, TIR tried to include the instant issue in the Order resulting from the second extension even after the Court had plainly prohibited it—a second bite at the apple that also was rejected by this Court.

Fourth, TIR itself has done <u>exactly</u> what it is complaining about in this motion.  In particular, TIR waited until <u>after the close of business on the last day of the discovery period</u> to serve supplemental invalidity claim charts that first showed that TIR would rely on the two pieces of prior art that now are the focus of its expert report.  The most significant difference between the parties' supplementation is that Color Kinetics supplemented promptly after finally getting discovery of TIR necessary to finalize its claim charts, while TIR was in possession of the prior art for months but waited to supplement until it knew Color Kinetics could not follow-up with discovery.  Color Kinetics was prompt in its supplementation, while TIR was not.

Fifth, TIR cannot point to any prejudice stemming from the December 1, 2006 identification of claims because the additional claims are simply different combinations of the elements already present in other claims that have been in the case since its inception.  While TIR makes conclusory assertions of "significant prejudice," it fails to explain how any specific issue would cause any actual prejudice.  In fact, there is no need for "additional discovery" because additional issues concerning infringement—if there are any—would relate to the operation of TIR's own products, a topic on which TIR does not need discovery from Color Kinetics, or anyone else.

Sixth, TIR's allegations of prejudice resulting from "delay" are fatally undermined by its failure to raise this issue in a timely fashion.  TIR argues that it will be "prejudiced" because, if these claims are not removed from the case, "Mr. Carlson will have to prepare a supplemental invalidity report."  This is backwards.  If TIR was intending to ignore claims that had been

identified as infringed by Color Kinetics on December 1, 2006, <u>it should have resolved this issue</u> <u>in the many months before the expert reports were served</u>. It would be highly inappropriate to allow TIR to wait months to raise this issue, deliberately omit the material from a report, and then use that behavior to justify more delay and new contentions.

Seventh, TIR's alternative remedy, "reopening fact discovery" and "exten[ding] expert report deadlines" lays bare the true purpose of this motion. Having now completely exhausted its ability to delay this case by reason of Mr. Calson's father illness, TIR is attempting to revive an issue that it has long since abandoned in order to <u>reopen fact discovery</u> and <u>restart the expert</u> <u>report process</u>. If TIR was actually concerned about a need for discovery on alleged "new issues," it should have acted in December, not many months later.

This motion should be seen for what it is—nothing more than a newly-hatched delay tactic and another attempt to end-run this Court's ruling that TIR should be limited to the prior art that was identified before the expert report was filed (just as Color Kinetics is only asserting patent claims identified almost six months before then).

## **BACKGROUND**

TIR's recitation of the "procedural background," which is repeated at least three times in its memorandum, is incomplete and strikingly one-sided.

## A.    **COLOR KINETICS' INFRINGEMENT ALLEGATIONS**

In response to a motion by TIR seeking more particularity, Color Kinetics provided a "<u>preliminary</u>" set of infringement claim charts June 15, 2005. (<u>See</u> Declaration of Aaron W. Moore ("Moore Decl."), ¶ 2.) The charts were "preliminary," and directed only to the "Destiny CW" product, because fact discovery had not even started and the Destiny CW product was the only one Color Kinetics had obtained and reverse engineered. (<u>Id.</u>)

Even after receiving the first claim charts, TIR refused discovery on any other of its products (including other products in the Destiny line), and the forced Color Kinetics to obtain a Court Order compelling TIR to produce a witness to testify about its products so that Color Kinetics could identify the accused products.

On November 8, 2005, after taking the Court-ordered deposition, Color Kinetics provided supplemental claim charts adding other members of the "Destiny" line and the "LEXEL" product to the case.  (See Moore Decl., ¶ 3.)  Unfortunately, Color Kinetics did not have complete information about all products at the time, because TIR had not yet produced any technical documents and because ███████████████████████████████████████ ████████████████████.  (See Moore Decl., ¶ 3 & Ex. A.)

On August 11, 2006, after additional patents were added to the case, Color Kinetics provided another set of supplemental claim charts reading the newly added patents on various TIR products.  (See Moore Decl., ¶ 4.)

As a result of delays associated with the extensive electronic discovery process, the discovery schedule in this case was extended multiple times, ultimately to October 13, 2006.  Both parties waited until after the electronic discovery process was complete to begin taking their respective party depositions.  (See Moore Decl., ¶ 5.)

Among the depositions taken by Color Kinetics on the issue of infringement after the completion of the electronic discovery process were the depositions of Grant Harlow, taken on September 19, 2006; Paul Jungwirth, taken on September 29, 2006; Brent York, taken on October 11, 2006; Leonard Hordyk, taken on October 12, 2006; and Ian Ashdown, taken on October 26, 2006.  (See Moore Decl., ¶ 6.)

The York and Hordyk depositions took place within two days of the close of the
discovery period, making it impossible for Color Kinetics to review the transcripts prior to the
close of the discovery period or to incorporate the information into the infringement analysis
prior to October 13, 2006.  Indeed, the final transcripts from these depositions were not received
until October 27, 2006.  (Id.)

The Ashdown deposition was originally noticed by Color Kinetics on July 28, 2006, to
take place on August 22, 2006.  (Moore Decl., ¶ 7.)  On September 7, 2006, the parties had a
meet-and-confer during which TIR offered Mr. Ashdown for deposition on October 3, 2007.
(Id.)  Due to the number of depositions being scheduled in the first two weeks of October, TIR's
desire to staff the depositions with certain attorneys, and Mr. Ashdown's availability, the
deposition was moved to October 26, 2006, at TIR's suggestion.  (Id.)  That deposition did take
place on October 26, 2006, thirteen days after the "close" of the discovery period, as identified
by TIR.  (Id.)  Because the Canadian court reporter who transcribed Mr. Ashdown's deposition
required payment in advance, Color Kinetics did not receive the transcript until November 17,
2006, two weeks before the supplemental claim list was provided to TIR.  (Id.)

In October and November, TIR indicated that it believed Color Kinetics should reduce
the number of claims being asserted in this case.  (Moore Decl., ¶ 8.)  Color Kinetics agreed to
review the list of asserted claims and to make appropriate adjustments in light of the fact
discovery that had taken place since the August 11, 2006 supplemental infringement charts.  (Id.)
Color Kinetics never agreed that it would not add claims when it finalized its list.  (Id.)

On November 27, 2006, the parties conducted a meet-and confer on a number of issues,
including the issue of the list of the claims being asserted.  (Moore Decl., ¶ 9.)  At that time,
Color Kinetics offered to provide a final list of claims being asserted within the next couple of

days. (Id.) TIR agreed to this arrangement. (Id.) Color Kinetics did not agree that it would not be adding additional claims as it finalized its lists. (Id.)

On December 1, 2006, Color Kinetics provided TIR with a final list of claims being asserted. (See Moore Decl., ¶ 10 & Exhibit C.) The list removed fifteen claims from the case entirely and dropped assertions of twelve claims against various TIR products. The list also added eight independent claims and fifty-two dependent claims in the Color Kinetics '011 patent.

The new claims do not add substantial issues to this case, as they consist almost entirely of different combinations of elements found in other claims. For example, the first added independent claim, claim 1 of the '011 patent, is reproduced below:

> 1. An illumination apparatus, comprising:
> at least one first LED adapted to output at least first radiation having a first spectrum;
> at least one second LED adapted to output second radiation having a second spectrum different than the first spectrum; and
> at least one controller coupled to the at least one first LED and the at least one second LED and configured to respond to user operation of at least one user interface in communication with the at least one controller, the at least one controller further configured to independently control at least a first intensity of the first radiation and a second intensity of the second radiation in response to the user operation,
> wherein the at least one controller is configured to implement a pulse width modulation (PWM) technique to control at least the first intensity of the first radiation and the second intensity of the second radiation.

Every single element of this claim—illumination, LEDs with different spectrums, a controller, a user interface, independent control of the LED intensities, and pulse width modulation—are found in other, previously asserted, claims. The same can be said with virtually all of the other claims that were added on December 1st.

On December 5, 2006, TIR objected to the inclusion of the additional claims. (See Moore Decl., ¶ 11.) That same day, Color Kinetics responded, pointing out that both parties had reserved the right to supplement, that the additional claims involved elements that were also included in other claims, and that this supplementation was no different than TIR's addition of new prior art references after the close of business on the last day of the discovery period. (Id.)

Even though Color Kinetics was unequivocal regarding its intent to assert the claims identified in the December 1, 2006 letter, TIR proceeded to do <u>nothing</u> on this issue until it filed the instant motion more than five months later, and nearly a month after opening expert reports were served. In particular, TIR did not move in December to exclude any claims as untimely, it did not seek leave to take discovery regarding anything that was allegedly new, and it did not even ask Color Kinetics to agree to further discovery on any particular issues.

**B.    TIR'S INVALIDITY ALLEGATIONS**

On the last day of the discovery period, Friday, October 13, 2006, Color Kinetics received an e-mail <u>at 9:45 p.m.</u> from counsel for TIR enclosing supplemental invalidity claim charts. (<u>See</u> Moore Decl., ¶ 12 & Exhibit D.) These charts for the first time identified TIR's intent to rely in this litigation on prior art associated with two companies, LED Effects and Digitrax. (<u>Id.</u>) This prior art now forms the heart of TIR's invalidity contentions in its expert report. TIR's October 13, 2006 claim charts did not include an element-by-element analysis of how the Digitrax and LED Effects prior art would apply to the asserted patents. (<u>Id.</u>)

Had Color Kinetics known of TIR's intent to focus on Digitrax and LED Effects before the close of business on the last day of the discovery period, it would have been able to issue subpoenas to these entities. Instead, TIR prevented Color Kinetics from taking discovery of its key prior art witnesses by camouflaging its intentions. TIR issued <u>five</u> third party subpoenas in the last few weeks of the discovery period, including subpoenas to Digitrax and LED Effects, as well as subpoenas to other prior art witnesses. (<u>See</u> Moore Decl., ¶ 13.) TIR waited until after the close of the discovery period, however, to identify which third parties it was intending to pursue, and deprived Color Kinetics of the opportunity to understand which of the five

subpoenas were genuine and to issue its own subpoenas or otherwise take discovery on those that

were. TIR never took the other three depositions. (Id.)

There is no question that TIR had been aware of the Digitrax and LED Effects prior art

long before including it in the untimely supplemental claim charts. With respect to the Digitrax

material, for example, ██████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████ This means that TIR's assertion

that it was "impossible for TIR to identify specific claims invalidated by these products in TIR's

invalidity charts produced on October 13, 2006" (TIR Mem., at 9) is demonstrably false. TIR

already had the analysis, but it chose to keep its contentions secret until it was too late for Color

Kinetics to do much about them.

Documents describing the LED Effects device were produced to TIR in 2005, as they had

been relied on by another infringer, Super Vision International,[1] in an earlier litigation. (See

Moore Decl., ¶ 15.) Despite having had this material for at least a year, however, TIR waited

until 9:45 p.m. on the Friday that was the last day of the discovery period to disclose its intent to

rely on it. Color Kinetics did attend the November 16, 2006 deposition of LED Effects, but

prevented from conducting a complete cross examination because TIR used six hours of the

seven hours that the witness was willing to sit for the deposition for its direct examination, even

---

[1] Following its unsuccessful litigation against Color Kinetics, Super Vision licensed the Color Kinetics patents, changed its name to Nexxus Lighting, Inc., and moved its corporate headquarters from Orlando, Florida to Charlotte, North Carolina. (See http://www.nexxuslighting.com/news/pressReleases/ news_NexxusLighting.html.)

in the face of protests by Color Kinetics.  (That conduct will be the focus of the separate motion to preclude reliance on LED Effects as prior art.)  Had Color Kinetics been aware that TIR would focus on LED Effects during the discovery period, it could have issued a subpoena to LED Effects and taken other discovery about it.

Even though TIR took the Digitrax and LED Effects depositions in November, Color Kinetics did not receive supplemental claim charts applying the Digitrax and LED Effects materials to the Color Kinetics patents until it was served with a copy of Mr. Carlson's opening expert report on April 27, 2007.  (See Moore Decl., ¶ 16.)

TIR's behavior with respect to its supplemental claims charts is, in fact, much worse than what it is attacking Color Kinetics for doing—the careful timing of TIR's disclosure shows that it actually did attempt an "ambush."  (TIR Mem, at 2.)

## ARGUMENT

TIR's motion must be denied because:  (a) it was not timely filed and is intended only to delay this case again, or is a desperate effort to bring in new prior art that this Court has already excluded; (b) Color Kinetics was indisputably diligent, when all of the facts are presented; (c) TIR has done the same thing (actually much worse) with its claim charts; and (d) TIR does not stand to suffer any prejudice that is not its own doing.

## I.    THIS MOTION IS UNTIMELY

The most obvious reason to deny TIR's motion is that it was not timely filed.  The claims that TIR is seeking to remove from the case were identified on December 1, 2006.  There has been no question since that time that Color Kinetics intends to press these claims.

Yet TIR did nothing to address this issue in December or any other time during the next five months.  Instead, TIR waited until May 23, 2007, nearly a month after the opening expert

reports were served, to file this motion. Even if TIR did once have a legitimate objection to these claims (although, as explained below, it never did) this extended and unexcused delay would operate as a waiver. Indeed, it would appear that TIR is more interested in using this motion as an improper vehicle to re-open the expert reports, rather than a legitimate complaint about late supplementation. Were there a legitimate complaint to be made, it would have been raised in December, rather than after the filing of opening expert reports six months later.

This unreasonable delay also operates to vitiate any argument that TIR can make about "prejudice." (See supra Section V.)

## II.    THERE HAS BEEN NO UNDUE DELAY BY COLOR KINETICS

The complete recitation of the relevant "procedural history" makes plain that there was no unreasonable delay on the part of the Color Kinetics in finalizing its list of asserted claims.

There is no dispute that Color Kinetics repeatedly updated and amended its infringement contentions throughout this case, providing detailed claim charts on June 15, 2005, November 8, 2006, and August 11, 2006.

The only reason that the list of claims was not finalized earlier than December 1st was that the parties, by agreement, delayed key party depositions until after the completion of the e-mail discovery process, meaning that the TIR fact witnesses on the infringement issue were not deposed until September 19, 2006; September 29, 2006; October 11, 2006; October 12, 2006; and October 26, 2006. The last deposition in this case was taken on November 16, 2006.

In addition, the reason that Color Kinetics did not have information about the LEXEL product earlier was that ███████████████████████████████████████ ████████████. (See Moore Decl, ¶ 3 & Ex. A.)

The supplemental list of claims that TIR is complaining about was served only a few weeks after the completion of the TIR depositions, and very shortly after the final transcripts were received. This is not an unreasonable amount of time in which to complete an analysis of hundreds of pages of deposition transcripts and hundreds of deposition exhibits, and to compare more than half a dozen accused products to the hundreds of claims in the eight patents-in-suit.

Moreover, TIR's argument appears to be that any contentions offered after October 13, 2007 must be barred. This cannot be the case, for at least two reasons.

First, it would have been impossible for Color Kinetics to have finalized its list of claims before October 13, 2006, because the parties, by agreement, took depositions after that date. Color Kinetics could not have finalized its contentions until after deposing all of the fact witnesses on this issue, including a TIR witness (Mr. Ashdown) who was not made available— due to his and Wilmer Hale's scheduling issues—until two weeks after the "close" of discovery. To the extent that TIR is demanding exclusion of any claim not identified as infringed before October 13, 2007, its arguments must be disregarded because the parties agreed to complete fact depositions after that date. By agreeing to finish the depositions after the formal close of discovery, TIR necessarily waived the argument that all fact contentions would need to be completed earlier. It would be grossly unfair to allow TIR to use its refusal to produce a party witness earlier as a reason to preclude claims based on that witnesses' knowledge.

Second, TIR itself is relying on contentions that were not provided during the discovery period, as the element-by-element claim charts for Digitrax and LED Effects were not provided to Color Kinetics until it received Mr. Carlson's expert report on April 27, 2006. Because TIR justifies the absence of detail in its own claim charts with the fact that some of the depositions

took place after the close of discovery (TIR Mem., at 9), it cannot fault Color Kinetics for its contentions being delayed for the exact same reason.

Because TIR cannot argue that all contentions disclosed after the close of the discovery period must be barred, it is left to argue that Color Kinetics' list of claims, provided a matter of weeks after the close of the discovery period, was not served sufficiently close to the last of the depositions. But TIR cannot make this argument with a straight face because, again, its own contentions were not actually made until the expert report was served, many months after the close of the discovery period. There also was no subsequent deadline that was compromised by the December 1, 2006 supplementation, because nothing of consequence in this case happened until the expert reports were served more than five months later.

When this situation is viewed in its entirety, and particularly where TIR's conduct is taken into account, it is apparent that Color Kinetics was diligent in asserting its claims.

## III.    THE ISSUE OF NEW PRIOR ART IN TIR'S EXPERT REPORT HAS NOTHING TO DO WITH THE SUPPLEMENTAL CLAIM CHARTS

There is no analogy to be drawn between this issue and the issue of new prior art recently being excluded from TIR's expert report. In January, TIR asked to delay the serving of the expert reports in this case by eight weeks due to illness of the father of its expert. The parties compromised on a four week extension. Near the end of the first extension, TIR asked for agreement on another extension, this one of an essentially unlimited duration.

Because Philips had just informed Color Kinetics that it was acquiring TIR, was assuming control of this case, and had new prior art (which it refused to disclose), Color Kinetics was concerned that TIR was seeking this second delay for the purpose of rewriting the expert report to rely on entirely new evidence. (See Docket No. 133, Exhibit B.) For this reason, Color Kinetics proposed that it would agree to some additional time, provided that TIR did not use that

time to try to locate or introduce new prior art. (See Docket No. 133, Exhibit C.) TIR refused

this offer and filed a motion seeking additional time. (Docket No. 129.) Following briefing and

a hearing, the Court resolved the issue by allowing four weeks of additional time for TIR's

opening expert report, with the condition that TIR not introduce new prior art. (See 3/26/07

Clerk's Notes.) Thus, the Order prohibiting new prior art in the TIR expert report is solely a

result of the multiple extensions of time that TIR sought on the expert reports; it has nothing to

do with the issue of whether the parties' respective claim charts and claim identifications, served

months earlier, were timely or not.

In fact, TIR has already tried, unsuccessfully, to tie the infringement contentions issue

presented here to the Order barring new prior art in the TIR expert report. After resolving the

expert report motion, the Court asked the parties to submit a proposed order. (Id.) Color

Kinetics and TIR were unable to agree on a proposal because TIR insisted on trying to interject

the infringement contention issue into its proposal. Specifically, TIR's proposed order (Docket

No. 134) sought to preclude Color Kinetics from "assert[ing] infringement of any claims or by

any products not identified as infringed prior to November 16, 2006." As the Court can now

appreciate, this was intended to achieve the result TIR is seeking in this motion, but without any

discussion of or argument on this issue, and without any indication that TIR was trying to use the

Order concerning the expert reports for an entirely different purpose.

Color Kinetics objected to TIR's proposed order, pointing out that the infringement was

raised during the hearing and properly set aside (because it had nothing at all do with the timing

of the expert reports), and that TIR was engaging in an improper attempt to seek a procedural

advantage without a full disclosure of the relevant facts and issues. (See Docket No. 135.) The

Court rejected TIR's proposed order and signed that offered by Color Kinetics. (See Docket No.

136.)  Therefore, although TIR did not actually explain to the Court what it was trying to accomplish with its proposed order (on a motion that it lost, on a different issue), it has already tried unsuccessfully to achieve the end that it is now seeking with this motion.

New prior art was excluded from the TIR expert report only to make sure that TIR could not take unfair advantage of the second extension of the expert deadline that it was seeking, ostensibly due to the illness of Mr. Carlson's father.  This has nothing at all to do with the Color Kinetics claim identification in December (several months before), and it is disingenuous for TIR to argue that it does.

The only analogy that might be drawn here is that between the Color Kinetics' December 1, 2006 supplemental list of asserted claims and TIR's October 13, 2006 supplemental invalidity claim charts.  If the Color Kinetics claims are excluded, the TIR claim charts (and the Digitrax and LED Effects prior art) must be excluded as well.

## IV.  TIR HAS DONE EXACTLY WHAT IT IS COMPLAINING ABOUT

TIR itself has done exactly what it is complaining about in this motion.  In particular, TIR waited until after the close of business on the last day of the discovery period to serve supplemental invalidity claim charts that first showed that TIR would rely on the two pieces of prior art that now are the focus of its expert report.  This prevented Color Kinetics from serving subpoenas on these prior art witnesses and prevented Color Kinetics from having an opportunity to conduct a complete cross-examination of the LED Effects witness.  If Color Kinetics' supplemental claim charts are untimely, then TIR's are untimely as well.

TIR attempts to distinguish its behavior on the grounds that it needed to finish depositions after the close of the discovery period on October 13, 2006.  As explained above, however, Color Kinetics was confronted with the exact same problem, as the depositions relating to issues underlying the infringement contentions had to be scheduled after the formal close of

discovery. Moreover, as already noted, TIR did not make a detailed supplementation of its invalidity contentions until it served its opening expert report. The deposition scheduling issues do not distinguish TIR's supplementation from that of Color Kinetics.

The premise underlying TIR's motion is that it is acceptable for a party to serve supplemental discovery responses late in the evening on the last day of the discovery period, but not acceptable for them to be served even a day later. This cannot be true. If the purpose of the supplemental discovery is to allow the other party to take discovery, than the supplementation must be made with some amount of time left in the discovery period. On other hand, if the purpose of the supplementation is other than to allow the other party to take further discovery, than there is no meaningful difference between serving at night on the last day of the discovery period and serving a few days, or weeks, later, provided that no other case deadlines are adversely affected.

Thus, even without the respective depositions taken after October 13th, there is no difference of any consequence between what TIR did, supplementing at 9:45 p.m. on the last day of the discovery period, and what Color Kinetics did, supplementing a few weeks later.

## V.     THERE IS NO PREJUDICE DUE TO THE ADDITIONAL CLAIMS

TIR is not able to point to any actual prejudice stemming from the December 1, 2006 list of asserted claims because the additional claims are almost exclusively different combinations of the elements already present in other claims that have been in the case since its inception. TIR concedes as much by arguing generally about "significant prejudice," but failing to describe how any specific "new' issue would cause it undue suffering. This is because there are none.

**A.      There Are No New Infringement Issues that Could Create Any Prejudice**

As a general matter, any "new" infringement issues raised by the claim supplementation would concern the structure and operation of TIR's own products. Naturally, TIR is in the best position to evaluate whether its products do or do not include any of the claimed features; there is no additional or third party discovery that TIR would require in order to determine whether or not its own products infringe. Indeed, TIR did not take any significant amount of discovery on infringement issues for the claims that were identified prior art December 1st. Moreover, TIR had more than <u>five months</u> to evaluate these claims before filing its opening expert report.

TIR complains that Color Kinetics has "added a new TIR product, the 'LightPipe' which has never been part of this case." (TIR Mem, at 1.) TIR calls this product the "LightPipe" in its brief, rather than "Destiny LP," but doing so can hardly distinguish it from the other accused members of the Destiny product line. What TIR fails to mention is that <u>the Destiny LP is based on the exact same circuitry as most of the other members of the Destiny line</u>. The only reason that it was not accused of infringing the other patents-in-suit is that it is a "display," not an "illumination device." The claims of the '079 patent, however, are broad enough to cover both displays and illumination devices, and therefore cover this product, where the patents are that are directed only to illumination devices do not. Because the Destiny LP product is exactly the same from at the circuit level as the other Destiny products, it infringes for exactly the same reasons as the other Destiny products and <u>cannot be a source of any new issues</u>.

TIR's complaints about additional allegations that the Destiny CW product infringes the '079 patent are similarly overblown. To the extent that allegation raises a "new" issue about whether the CW product uses non-linear scaling, this is because early evidence from TIR on this issue was conflicting, as the early 30(b)(6) witness testified that it did use non-linear scaling, but

documents authored by Mr. Ashdown indicated that it did not. It was only at Mr. Ashdown's

October 26, 2006 deposition that Color Kinetics was able to conclude that the CW product did

indeed use non-liner scaling. The allegations that the Destiny CW product infringed the '079

patent were made within two weeks of the receipt by counsel of the Ashdown transcript. (Of

course, TIR's counsel was present at the deposition and would have been aware of the issue at

that time.) Again, TIR is trying to take improper advantage of the fact that it delayed the

Ashdown deposition. And again, if TIR needed to conduct additional analysis of its own

products in response to this "new" allegation, it had plenty of time to do so.

Moreover, as with the Destiny LP product, the "new" issue of infringement by the

Destiny CW product is actually not new at all, because this product infringes the '079 patent for

the same reasons, and in the same way, as the other TIR products infringe the '079 patent.

So, even assuming there are "new" infringement issues (an assumption that must be made

because TIR does not actually identify any), TIR is best positioned to evaluate them, does not

require additional discovery of others, and it has had nearly half a year to perform its analysis.

**B.    There Are No New Validity Issues that Could Create Any Prejudice**

TIR identifies only <u>one</u> element of the "new" claims, a "sensor," as being something on

which it would want to take discovery. TIR's infringement of these claims first came to light

during the September 26, 2006 deposition on Paul Jungwith (<u>see</u> Moore Decl, ¶ 6), at which

point <u>both</u> parties would have known this was an issue.

Indeed, TIR knew (or should have known) that this was an issue for the LEXEL product

long before then, because TIR knew the structure of its LEXEL product and that it included a

sensor. In 2005, when Color Kinetics asked about the design of the product at a deposition,

however, ███████████████████████████████████ (<u>Id.</u>) There were no privilege

issues—just a TIR desire to hide the ball.  It was not until September 2006 that Color Kinetics

learned what TIR knew all along—that LEXEL product included a sensor as described in Color

Kinetics' patent.  TIR could have taken discovery on this subject between the time of the first

deposition or even the September 2006 deposition and October 13, 2006.  It did not.  And even if

TIR did not appreciate that the sensors were an issue at the time of the deposition, it certainly

could have asked for more time in December.  But it did not do this either.  Having not actually

sought any discovery on this issue, TIR's claim that it will be "prejudiced" rings hollow.

TIR waited more than <u>five</u> months (as measured from December 1st), more than <u>six</u>

months (as measured from October 13th), or even more than <u>seven</u> months (as measured from

the Jungwirth deposition) to raise this issue.  It would be inequitable to allow TIR any relief after

sitting on its claim for so long; any "prejudice" is TIR's own creation.

### C.    TIR's Failure to Address these Claims in its Expert Report Does not Create Any Prejudice

TIR also argues that it will be "prejudiced" because, if these claims are not removed from

the case, "Mr. Carlson will have to prepare a supplemental invalidity report."  (TIR Mem., at 12.)

This cannot be recognizable prejudice to TIR because TIR could have avoided it by acting

promptly.  TIR has known about these claims since the first day of December.  As such, if TIR

was intending to not address claims that had been identified as infringed by Color Kinetics, <u>it</u>

<u>should have resolved this issue in the many months before the expert reports were served, rather</u>

<u>than waiting and using this as an argument to prevent supplementation</u>.  It would be unjust to

allow TIR to use <u>its own delay</u> as a source of "prejudice" to justify even more delay.

## VI.    THE CASES CITED BY TIR PRESENTED CIRCUMSTANCES THAT WERE VERY DIFFERENT THAN THOSE OF THIS CASE

TIR cites four cases in support of its assertion that exclusion of the December 1, 2006

claims from this case would be appropriate.  None is even remotely similar to this one.

DuFresne v. Microsoft Corp., 2006 U.S. Dist. LEXIS 57423 (D. Mass. 2006), is a report by a Discovery Master appointed by Judge Lindsay recommending that a supplemental infringement expert report be stricken because is was submitted after the close of the discovery period and included new claims being asserted against entirely new products. See id., at *39-42. That this not analogous to what is happening here, at least because the December 1, 2006 claims were asserted against products already in the case, as soon as reasonably possible given the agreed deposition schedule, and because TIR's counsel actually refused to allow its witness to answer questions about the LEXEL product in 2005. In addition, in this case, TIR knew these claims were being asserted for nearly six months before it filed its opening expert report.

Neither Nike, Inc. v. Adidas Am., Inc., 2007 U.S. Dist. LEXIS 22270 (D. Tex. 2007), nor O2 Micro Int'l, Ltd. v. Monolithic Power Sys., 467 F.3d 1355 (Fed. Cir. 2006), has any bearing on this case, as each deals with Local Patent Rules that have no counterpart in this District. See Nike, 2007 U.S. Dist. LEXIS 22270, at *1 ("Adidas argues that these amended infringement contentions should be struck under the Local Patent Rules."); O2 Micro, 467 F.3d at 1362 ("This case primarily presents questions concerning the interpretation and application of the Northern District of California's local rules for patent cases."). In addition, and as would be expected, there are a multitude of other significant factual differences between those cases and this one.

Finally, in Regent Nat'l Bank v. Dealers Choice Auto. Planning, 1998 U.S. Dist. LEXIS 20122 (D. Pa. 1998), a case arising from an insurance dispute, the Court refused to permit post-discovery pleadings, an issue that has not application to this case.

None of these cases presented anything approaching "similar circumstances" (TIR Mem., at 2) to those in this case.

## CONCLUSION

For these reasons, Color Kinetics respectfully requests that TIR's motion be DENIED. In the alternative, Color Kinetics requests that it be afforded commensurate relief, and that TIR be precluded from relying on prior art and contentions first identified at 9:45 p.m. on the last day of the discovery period, for the exact same reasons that underlie TIR's motion

Respectfully submitted,

COLOR KINETICS INCORPORATED

Dated: June 1, 2007          by:          /s/ Aaron W. Moore
                                          Matthew B. Lowrie, BBO No. 563,414
                                          Aaron W. Moore, BBO No. 638,076
                                          Thomas P. McNulty, BBO No. 654,564
                                          LOWRIE, LANDO & ANASTASI, LLP
                                          Riverfront Office Park
                                          One Main Street - 11th Floor
                                          Cambridge, MA 02142
                                          Tel : 617-395-7000
                                          Fax: 617-395-7070

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document was filed through the ECF system today and should be sent electronically to the registered participants, including those persons listed below.

Mark G. Matuschak, Esq.
mark.matuschak@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Dated: June 1, 2007          by:          /s/ Aaron W. Moore