IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLOR KINETICS INCORPORATED,<br><br>Plaintiff<br><br>v.<br><br>TIR SYSTEMS LTD.,<br><br>Defendant. | Civil Action No.:  03-cv-12491 (MEL) |

**COLOR KINETICS' MOTION
TO EXCLUDE TIR FROM USING
THE DEPOSITION OF KEVIN FURRY**

Plaintiff Color Kinetics Incorporated ("Color Kinetics") hereby moves for an order precluding defendant TIR Systems Ltd. ("TIR") from using or relying on the deposition testimony of Kevin Furry, a non-party witness, in its expert reports, at the summary judgment stage, or at a trial of this matter.

At Mr. Furry's deposition, counsel for Color Kinetics, despite repeated requests throughout the day for an adequate amount time for cross-examination, was only left one hour to cross-examine Mr. Furry before his attorney ended the deposition at the seven hour mark.  TIR's direct examination covered six hours of questioning that included the marking of thirty-nine Exhibits, many of which had not been produced to counsel until the morning of the deposition. Mr. Furry's testimony concerned two products alleged to have been made by LED Effects, an "LED Tower" and an "LED Wheel", that TIR further alleges (by a general disclosure at 9:45 p.m. on the last day of the discovery period) invalidate numerous claims of the patents-in-suit.

One hour is not a full, substantial and meaningful opportunity to cross-examine Mr. Furry

about the technical workings of these products, their alleged status as prior art, and the thirty-nine Exhibits that were marked by TIR's counsel. Consequently, the deposition testimony should be excluded from under Federal Rule of Evidence 804(b)(1).

Although this type if issue is often addressed in pre-trial motions, it is being raised by Color Kinetics at this juncture because it constitutes a substantial portion of TIR's expert invalidity report and will surely be featured in any summary judgment motion by TIR. A substantial amount of necessary work, including deposition testimony from TIR's expert and rebuttal expert testimony, will be avoided should the material be excluded now.

## BACKGROUND

On August 1, 2006, TIR served a Subpoena and Notice of Service of Subpoena on Kevin Furry. (See Exhibit A.) This was one of five third-party depositions served by TIR in the last few weeks of the discovery period. Late in the evening of October 13, 2006, the last day of discovery in the case, TIR served a supplemental invalidity claim chart in response to Color Kinetics' Interrogatory No. 11, which for the first time identified "prior art illumination devices of Mr. Kevin Furry" as references that TIR "may rely on to invalidate" various patents-in-suit. (See Exhibit B.) Due to scheduling problems, Mr. Furry's deposition was not conducted until November 6, 2006, after the close of the fact discovery period. A copy of the deposition transcript is attached hereto as Exhibit C.

At the deposition, just prior to the lunch break, Color Kinetics' counsel, Aaron Moore, asked TIR's counsel, Wendy Verlander, whether she planned to leave Mr. Moore time at the end to cross-examine Mr. Furry, and they proceeded to have a discussion about the timing off the record. (Exhibit C, at 99:9-17.)

At about 3:00 p.m., Mr. Furry's attorney provided Mr. Moore with newly produced

documents, which Ms. Verlander then proceeded to introduce as exhibits and question the witness about in detail. (Id., at 159:25 – 161:15.)

At 3:30 p.m., Mr. Moore again inquired with Ms. Verlander about when she planned to be done so that Mr. Moore would have sufficient time to cross-examine the witness, but Mr. Verlander would only state: "Well, I have more to do" and "I can't give you a time estimate right now because there's a whole lot more to do." (Id., at 180:1-12.)

Later in the afternoon, Mr. Moore asked the videographer how much time had elapsed and was informed that four hours and fifty minutes had passed. Mr. Moore reiterated his request for time to cross-examine the witness. (Id., at 256:13-25.)

At about 5:45 p.m., Mr. Moore again asked how much time had elapsed and learned that five hours and fifteen minutes had passed, at which point Mr. Moore expressed his frustration that there was already only one hour and forty-five minutes left in the seven hours provided under Fed. R. Civ. P. 30(d)(2). Ms. Verlander would only respond: "Aaron, what can I tell you?" (Id., at 279:21-280:2.)

Mr. Moore later again asked how much time was left (id., at 284:19-23), and then again, at which point only one hour and ten minutes remained (id., at 309:2-6). Ms. Verlander did not finish her questions until 6:37 p.m., at which point five hours and fifty-six minutes of questioning had passed, leaving Mr. Moore only about one hour to conduct a cross-examination. (Id., at 314:15-22.)

Mr. Moore conducted a brief cross-examination from 6:44 p.m. until 7:49 p.m., at which point the deposition was shut down by the attorney representing the witness:

> MR. SIEGEL: We're up. Unless anybody can point me in a good direction of why we should keep going beyond the time, I say we close with a stipulation now.
>
> MR. MOORE: Well, my reason is I don't think I had sufficient time to cross-

> examine this witness, and I'd like to keep going.
>
> MR. SIEGEL: All right. Well, I'll let counsel for your opponent address that, but as far as we're concerned, the witness has fully complied and he's put in his time today, and these laws are here to protect the witness, not just the parties in the litigation. So with that who's going to do the closing stip?

(Id., at 373:1-374:6.)

Over the course of the deposition, TIR's attorney asked 314 transcript pages of questions and introduced thirty-nine exhibits, including numerous schematics, photographs that had not been produced before the morning of the deposition, and other documents concerning the functions of LED Effects' "LED Tower" and "LED Wheel," which are now asserted by TIR as prior art references that allegedly invalidate the patents-in-suit.

Despite Color Kinetics' repeated requests made throughout the deposition for an opportunity to conduct a reasonable cross-examination, TIR's attorney also spent large portions of deposition time on issues of no or only marginal relevance, especially later in the day, including extensive questioning directed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; id., at 284-300), questions directed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (id., at 259-69; 276-84; 300-05), multiple pages of deposition transcript devoted to arguing with Mr. Furry's attorney about whether or not certain documents had been requested or produced (id., at 269-76), multiple pages of deposition transcript devoted to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (id., at 283-87), and questioning of this lay witness about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (id., at 288-90).

## **ARGUMENT**

TIR left Color Kinetics' attorney only one hour to cross-examine Mr. Furry on <u>six hours</u> of questioning by TIR's counsel encompassing 314 pages of transcript, including hours of

- 4 -

questions about highly technical aspects of two allegedly invalidating prior art products and covering thirty-nine exhibits. The effect was to deprive Color Kinetics of a full, substantial, and meaningful opportunity to cross-examine Mr. Furry. Consequently, and because Mr. Furry is beyond the subpoena power of this Court and therefore cannot be compelled to appear in this District or in another district for further deposition, TIR should be precluded from using his deposition testimony in its expert report, on summary judgment, or at trial.

Federal Rule of Evidence 804(b)(1) provides that deposition testimony is admissible as an exception to the evidentiary hearsay exclusion so long as the deposition was "taken in compliance with law" and "the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1).

The opportunity to cross examine "cannot be an empty formality; it must be 'full, substantial and meaningful in view of the realities of the situation.'" Cury v. Philip Morris USA, 93-Civ.-2395 (CSH), 1995 U.S. Dist. LEXIS 14798, *3 (S.D.N.Y. Oct. 6, 1995) (quoting United States v. Franklin, 235 F. Supp. 338, 341 (D.D.C. 1964)). See also United States v. Taplin, 954 F.2d 1256, 1258 (6th Cir. 1992) (noting that 804(b)(1) requires more than a "naked opportunity" to cross-examine); United States v. Feldman, 761 F.2d 380, 385 (7th Cir. 1985) (same); 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 804.04[3][b] (2006). Thus, even if a party is provided with some opportunity to cross-examine the witness, the deposition testimony still should be excluded if the time provided is insufficient to conduct a full and meaningful cross-examination. Cury, 1995 U.S. Dist. LEXIS 14798, at *6-19.

In a similar patent case, Cury, a key issue concerned the determination of who actually invented the patented invention, and thus the parties took the deposition of the person that the

defendant claimed to be the inventor in Korea. Id. at *1. The defendant's attorney began questioning the witness at 9:10 a.m., but did not take long, accounting for only 27 pages in the deposition transcript. Id. at *1-2. The plaintiff's attorney then questioned the witness, accounting for 109 pages in the transcript, but the deposition ended when the witness refused to answer any more questions at about 2:00 p.m. Id. at * 2. The witness apparently left because the deposition took longer than he had expected or because of the sensitive nature of some of the questions about the design of the invention. Id. at *16-17.

The Cury court found that, even though the plaintiff's attorney was able to ask some questions on key issues *and for even more time than the defendant's attorney*, the totality of the circumstances demonstrated that plaintiff's attorney did not have a full opportunity to conduct a meaningful cross-examination of the witness, and therefore the court excluded the deposition testimony from trial. Id. at *19; see also A.I.A. Holdings, S.A. v. Lehman Bros., No. 97-Civ.-4978 (LMM), 2002 U.S. Dist. LEXIS 22675 (S.D.N.Y. Nov. 25, 2002) (finding that, where the deposition was scheduled for two days and the witness failed to show up for the second day, the plaintiffs' cross-examination was not completed and thus plaintiffs did not have the requisite opportunity for cross-examination).[1]

Like in Cury, Color Kinetics' counsel was not given sufficient time to conduct a full and meaningful cross-examination of the witness, Mr. Furry.

---

[1] Other circumstances that have resulted in courts holding that a party was not provided a full and meaningful opportunity to cross-examine the witness include: where the party was not provided with certain belatedly produced documents until after the deposition (see Antonucci v. Morgan Stanley Dean Witter & Co., 2005 U.S. Dist. LEXIS 1621, *9-14 (S.D.N.Y. Jan. 11, 2005); where the witness refused to answer some questions at the deposition based on an improper invocation of the physician/patient privilege (see Doolittle v. Ruffo, 88-CV-1175, 1996 U.S. Dist. LEXIS 8354, *30 (N.D.N.Y. June 12, 1996)); where a party's attorney was at the deposition but could not have asked relevant questions because discovery was closed as to his clients in the case at the time (see Doolittle, 1996 U.S. Dist. LEXIS 8354, at *30); where the predecessor in interest in a prior proceeding was barred by the administrative law judge at the deposition from impeaching the witness (see In re Complaint of Paducah Towing Co., 692 F.2d 412, 419 (6th Cir. 1982)); and where only one party was able to conduct any examination of the witness at the deposition before the witness died (see Young v. United States Postal Service, 96 Civ. 9492, 1988 U.S. Dist. LEXIS 12983, *9-13 (S.D.N.Y Nov. 11, 1988)).

TIR's counsel spent six of the seven allotted hours conducting her examination of the witness, including the introduction of 39 exhibits, and TIR's counsel engaged in this conduct despite repeated requests by Color Kinetics' counsel to leave him at least two hours for cross examination and to be mindful of the time. TIR's counsel ignored the requests and reminders about time, concerned only about having a full opportunity to ask all the questions she wanted.

As an illustration, by only leaving one hour for Color Kinetics' cross examination, even if counsel for Color Kinetics devoted his questions to nothing other than the exhibits introduced by TIR, he would have only been able to spend about 1 minute and 40 seconds on each exhibit. Of course, Color Kinetics' counsel also wanted an opportunity to probe the witness about subject matter not necessarily contained in the exhibits and ask about additional exhibits, affording him even less time to question the witness meaningfully about the exhibits that were introduced by TIR's counsel.

For the most part, the deposition of Mr. Furry concerned highly technical aspects of the LED Effects' "LED Tower" and "LED Wheel" products that are now alleged to be invalidating prior art to many claims of the patents-in-suit. TIR's counsel spent more than a hundred pages of the transcript asking detailed questions about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (See Exhibit C, pp. 102-217.) At a rate of approximately fifty transcript pages per hour,[2] this amounted to about two hours of direct examination on this one subject. While counsel for Color Kinetics was able to ask a few broad questions—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—there was no time for detailed questioning about whether or not the LED Effects products contained the various specific elements recited in the many infringed

---

[2] 350 pages of transcript divided by seven hours equals about 50 pages per hour.

claims.

TIR's counsel also devoted more than fifty pages (about an hour) to questioning concerning her efforts to establish ███████████████████████████████████ ███████████████████████████████████. There was no meaningful opportunity for Color Kinetics' to question Mr. Furry about his statements ███████████████████████ ███████████████████████████████████████████████████████████████.

Certainly, with his one hour, Color Kinetics' attorney did not waste his time and made some progress in these areas, but the questioning was necessarily rushed and incomplete.

For example, TIR's counsel spent about thirty-three pages of the transcript (about 40 minutes) asking various questions about ███████████████████████████████████ ███████████████████. (See Ex. C, at 25-30, 47-53, 60-61, 95-99, 101, 114-15, 124, 139-42; 295-99.) In contrast, Color Kinetics' counsel was only able to devote three questions to ███████████████████. (See id., at 364, 370.)

Similarly, TIR's counsel spent about 32 pages of the transcript (again, about forty minutes) asking various questions about ███████████████████████████████████ ███████████. (See id., at 37-39; 54-58; 62-71; 86-95; 120-21; 299-300.) In contrast, Color Kinetics' counsel was only able to ask essentially three questions that concerned ███████ ██████. (See id., at 352-53, 363-65.)

Moreover, Color Kinetics' counsel was also only able to very briefly address a handful of the exhibits introduced by TIR's counsel. (See id., at 342-43 (asking briefly about Exhibit 8); id., at 357-58, 361 (asking a few sweeping questions about Exhibits 6-12 in general); id., at 361-63 (asking briefly about Exhibits 19, 21, 23 and 24).)

The examination was made that much more difficult because the witness is not friendly to

Color Kinetics, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬. (See Exhibit C, at 367-68.) Plainly, an hour of questioning is insufficient to cross-examine a biased witness ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬.

While TIR may argue that Color Kinetics could have subpoenaed Mr. Furry and conducted its own deposition of him, this argument has no bearing on whether TIR's deposition of Mr. Furry is admissible at trial.

First, Color Kinetics had no reason to issue its own subpoena until too late; TIR did not disclose LED Effects' LED Tower and LED Wheel as alleged invalidating prior art until 9:45 p.m. on the last day of the discovery period, October 13, 2006[3] – Color Kinetics could not issue a subpoena.

Second, a party must seek leave of court to conduct a second deposition of a person that has already been deposed in the case (see Fed. R. Civ. P. 30(a)(2)(B)) and/or to compel a witness to appear for more than seven hours of testimony (see Fed. R. Civ. P. 30(d)(2)). Color Kinetics would have had to seek leave of this Court (which Color Kinetics could only have done after the deposition occurred after the close of discovery and long after TIR's subpoena), and even if leave was granted, would have at that point needed to issue a subpoena, which may have been quashed by the California court. See Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 192 (1st Cir. 2001) (finding that a second Rule 30(b)(6) subpoena issued under the authority of the District Court of Massachusetts was invalid because the party had not previously

---

[3] For the timing of TIR's disclosure of reliance on LED Effects, see Color Kinetics' Memorandum in Opposition to TIR's Motion to Preclude Infringement Contentions and in Support of Color Kinetics' Cross-Motion to Preclude Assertion of Untimely Invalidity Contentions; Docket No. 147 at 3, 8-10, 15-16.

sought leave of the Texas District Court where the case was pending to re-depose the witness and that even if the party had sought leave, it had been denied, making it not plainly wrong for the District of Massachusetts Court to quash the subpoena); see also Malec v. Trustees of Boston College, 208 F.R.D. 23, 24 (D. Mass. 2002) (holding that if a party seeks time beyond the seven hours to take a deposition, such relief should be sought after the seven hours have passed); Graebner v. James River Corp., 130 F.R.D. 440, 441 (N.D. Cal. 1989) ("repeat depositions are disfavored."); Miller v. Federal Express Corp., 186 F.R.D. 376,389 (W.D. Tenn. 1999) ("the re-opening of depositions is disfavored as a general rule"); Lohmann & Rauscher, Inc. v. YKK (U.S.A.), Inc., No. 05-2369-JWL-GLR, 2066 U.S. Dist. LEXIS 82721, * (D. Kan. Nov. 13, 2006) ("[c]ourts generally disfavor repeat depositions." (quoting Dixon v. The Certified Corp., 164 F.R.D. 685, 690 (D. Kan. 1996))).

Finally, Color Kinetics had no reason to issue a new subpoena, because it had no reason to believe that it would not be afforded a meaningful opportunity to cross-examine Mr. Furry at his deposition on November 7, 2006. Ordinarily, counsel are solicitous to preserve a meaningful opportunity to cross-examine, as this is required for admissibility.

In short, Color Kinetics never had an opportunity to cross-examine a biased witness who offered lengthy-detailed testimony. Color Kinetics' opportunity to explore the various issues raised in the direct examination and test the witness' credibility plainly was not "full, substantial and meaningful in view of the realities of the situation." Cury, 1995 U.S. Dist. LEXIS 14798, at *3.

## CONCLUSION

Color Kinetics was not afforded a full and meaningful opportunity to cross examine Mr. Furry, and TIR should be precluded from using the deposition testimony of Mr. Furry in its expert reports, on summary judgment, or at trial. Because TIR was warned repeatedly throughout Mr. Furry's deposition that Color Kinetics needed time for its cross-examination, and deliberately used six hours for its direct examination, including a substantial amount of questioning or irrelevant topics, this remedy is not unreasonable.

## REQUEST FOR ORAL ARGUMENT

Color Kinetics requests a hearing on this motion, to be held as soon as convenient for the Court.

Respectfully submitted,

COLOR KINETICS INCORPORATED

Dated: June 6, 2006            by:    _____/s/ Aaron W. Moore_____
                                      Matthew B. Lowrie, BBO No. 563,414
                                      Aaron W. Moore, BBO No. 638,076
                                      Emily A. Berger, BBO No. 650,841
                                      Lowrie, Lando & Anastasi, LLP
                                      Riverfront Office Park
                                      One Main Street - 11th Floor
                                      Cambridge, MA 02142
                                      Tel : 617-395-7000
                                      Fax: 617-395-7070

## **LOCAL RULE 7.1(a)(2) CERTIFICATION**

     I hereby certify that I have conferred with opposing counsel and have attempted in good faith, but without success, to resolve or narrow the issues presented in the motion.


Dated: June 6, 2006                                /s/ Aaron W. Moore
                                                                     Aaron W. Moore

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that today I caused a true and correct copy of this motion and the attached Exhibits to be served, by CM/ECF, on the following counsel of record:

Mark G. Matuschak, Esq.
Alexandra B. McTague, Esq.
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109

Dated:  June 6, 2006                              /s/ Aaron W. Moore
                                                          Aaron W. Moore